Thomas E. Loeser (#202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Dean Kawamoto (#232032)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| EUGENIO AND ROSA CONTRERAS, WILLIAM AND MELVA PHILLIPS, TERESA BARNEY, KEITH AND TERESA MARCEL, SHERLIE CHARLOT, COLLEEN ANN O'HALLORAN, JENNIE MILLER, and EDWARD YAGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR LLC, a Delaware Limited Liability Company; SOLUTIONSTAR, LLC, a Delaware Limited Liability Company; and DOES 1 THROUGH 1000,<br><br>Defendants. | No. 2:16-cv-00302-MCE-EFB<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: July 28, 2016<br>Time: 2:00 P.M.<br>Location: Courtroom 7<br>Judge: Hon. Morrison C. England<br><br>Action Filed: February 12, 2016<br>Trial Date: TBD |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

III.    PLAINTIFFS' CLAIMS ARE ADEQUATELY PLEADED .................................2

    A.      Nationstar's Notice and Cure Arguments Fail ...........................................2

        1.      The notice and cure provision is inapplicable to claims against Nationstar, or any other Loan Servicer.....................................3

        2.      The notice and cure provision is inapplicable to most claims.........................4

        3.      Nationstar's cases are distinguishable. ...........................5

    B.      Defendants' Attacks on Plaintiffs' Consumer Protection Act Claims Fail ...............6

        1.      Barney adequately alleges violations of Oregon's Unfair Trade Practices Act............6

            a.      Or. Rev. Stat. § 646.605, et seq., governs the servicing of Barney's loan............6

            b.      Violations of Or. Rev. Stat. § 646.608. ..............7

            c.      Violations of Or. Rev. Stat. § 646.607. ..............8

        2.      California Plaintiffs have properly pleaded violations of the UCL................9

            a.      Plaintiffs have properly pleaded that both schemes are "unlawful," and thus violate the UCL. ..............9

            b.      Plaintiffs have properly pleaded that both schemes are "fraudulent," and thus violate the UCL. ..............9

            c.      Plaintiffs have properly pleaded that both schemes are "unfair," and thus violate the UCL. ..............10

        3.      California Plaintiffs have properly pleaded violations of the Rosenthal Act. ..............11

            a.      *Dey*, *Benner*, and *Vega* do not support Defendants' argument. ........12

            b.      Plaintiff Yager's loan falls within the scope of the Rosenthal Act. ..............13

            c.      Plaintiff Yager has properly pleaded equitable tolling.....................13

            d.      Courts routinely sustain at the pleading stage violations similar to those alleged here. ..............13

4. The Phillips have properly pleaded Arizona Consumer Fraud Act claims............................................................................14

5. O'Halloran sufficiently alleges violations of the Massachusetts Consumer Protection Act. ..................................................15

    a. Condition precedent........................................................15

    b. "Breach of contract" claim. .............................................16

6. Plaintiffs have properly pleaded violations of the FDUTPA. ..................17

7. Miller sufficiently alleges violations of the ICFA..............................18

    a. Misrepresentation, concealment, suppression, or omission of any material fact. ........................................................18

    b. Fraudulent intent...........................................................18

    c. Lack of meaningful choice. .............................................19

IV. CONCLUSION ....................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

**CASES**

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014)........................................................... 17, 18

*Allen v. JPMorgan Chase Bank, N.A.*,
   2016 WL 1029334 (S.D. Miss. Mar. 14, 2016) ............................................ 5

*Arazi v. Saxon Mortg. Servs., Inc.*,
   2011 WL 5519914 (D. Mass. Nov. 14, 2011) ............................................ 16

*Baldin v. Wells Fargo Bank, N.A.*,
   2013 WL 794086 (D. Or. Feb. 12, 2013) ...................................................... 8

*Benjamin v. CitiMortgage, Inc.*,
   2013 WL 1891284 (S.D. Fla. May 6, 2013) ................................................ 17

*Benner v. Bank of Am.*,
   917 F. Supp. 2d 338 (E.D. Pa. 2013)........................................................... 12

*Beyer v. Countrywide Home Loans Servicing LP*,
   2008 WL 1791506 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 F. App'x 701
   (9th Cir. 2009) ............................................................................................ 4, 7

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013)........................................................ 9, 11

*Bottoni v. Sallie Mae, Inc.*,
   2011 WL 635272 (N.D. Cal. Feb. 11, 2011) .............................................. 11

*Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*,
   384 F. Supp. 2d 442 (D. Mass. 2005)......................................................... 16

*Campbell v. MBI Assocs., Inc.*,
   98 F. Supp. 3d 568 (E.D.N.Y. 2015)........................................................... 14

*Celex Grp., Inc. v. Exec. Gallery, Inc.*,
   877 F. Supp. 1114 (N.D. Ill.1995).............................................................. 19

*Charles v. Deutsche Bank Nat'l Tr. Co.*,
   2016 WL 950968 (S.D. Fla. Mar. 14, 2016) .............................................. 6

*Chow v. Aegis Mortg. Corp.*,
   286 F. Supp. 2d 956 (N.D. Ill. 2003)......................................................... 19

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*,
    217 F.3d 33 (1st Cir. 2000) ........................................................................................ 16

*Cullen v. Inv. Strategies, Inc.*,
    139 Or. App. 119, 911 P.2d 936 (1996) ..................................................................... 7

*Daniel v. Select Portfolio Servicing, LLC*,
    2016 WL 518721 (S.D. Fla. Jan. 28, 2016) ............................................................. 13

*Davis v. Bank of Am. Corp.*,
    2012 WL 3637903 (D. Ariz. Aug. 23, 2012) ........................................................... 15

*Dey v. Cont'l Cent. Credit*,
    170 Cal. App. 4th 721, 88 Cal. Rptr. 3d 241 (2008) ............................................... 12

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................................................... 9, 11

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*,
    959 P.2d 265 (Cal. 1998), *as modified* (Sept. 23, 1998) ........................................ 3, 6

*Gerber v. First Horizon Home Loans Corp.*,
    2006 WL 581082 (W.D. Wash. Mar. 8, 2006) .......................................................... 5

*Giotta v. Ocwen Fin. Corp.*,
    2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) .............................................. 1, 2, 4, 6

*Gueyffier v. Ann Summers, Ltd.*,
    184 P.3d 739 (Cal. 2008) ........................................................................................... 5

*Guerrero v. RJM Acquisitions LLC*,
    499 F.3d 926 (9th Cir. 2007) ................................................................................... 12

*Hawthorne v. Umpqua Bank*,
    2013 WL 5781608 (N.D. Cal. Oct. 25, 2013) ......................................................... 11

*Hill v. Nationstar Mortg. LLC*,
    2015 WL 4478061 (S.D. Fla. July 6, 2015) ............................................................... 6

*Hirsch v. Bank of Am.*,
    107 Cal. App. 4th 708 (2003) .................................................................................. 11

*Holeman v. Neils*,
    803 F. Supp. 237 (D. Ariz. 1992) ........................................................................... 14

*Hollowell v. All. Bancorp, Inc.*,
    2011 WL 2884801 (N.D. Cal. July 19, 2011) ........................................................... 5

*Indoor Billboard Nw., Inc. v. M2 Sys. Corp.*,
    922 F. Supp. 2d 1154 (D. Or. 2013) .......................................................................... 6

*Jackson v. Atl. Sav. of Am.*,
    2014 WL 4802879 (N.D. Cal. Sept. 26, 2014).................................................5

*Jessup v. Progressive Funding*,
    35 F. Supp. 3d 25 (D.D.C. 2014)...........................................................5

*Ji v. Bose Corp.*,
    647 F. Supp. 2d 77 (D. Mass. 2009)...............................................16, 17

*Kerns v. United States*,
    2012 WL 5877479 (E.D. Va. Nov. 20, 2012) ................................5

*Kitner v. CTW Transp., Inc.*,
    53 Mass. App. Ct. 741, 762 N.E.2d 867 (2002) ...........................17

*Leist v. Acad. Mortg. Corp.*,
    2016 WL 1593815 (D. Ariz. Apr. 20, 2016) ................................14

*Lemus v. Cty. of Merced*,
    2016 WL 2930523 (E.D. Cal. May 19, 2016) ...............................13

*Lindblom v. Santander Consumer USA, Inc.*,
    2016 WL 2841495 (E.D. Cal. May 9, 2016) .................................14

*Lund v. Arbonne Int'l, Inc.*,
    132 Or. App. 87, 887 P.2d 817 (1994) ..........................................7

*Manrique v. Wells Fargo Bank N.A.*,
    116 F. Supp. 3d 1320 (S.D. Fla. 2015) .........................................14

*Mass. Emp'rs Ins. Exch. v. Propac-Mass, Inc.*,
    420 Mass. 39, 648 N.E.2d 435 (1995).........................................17

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) .....................................................11

*Moronta v. Nationstar Mortg., LLC*,
    88 Mass. App. Ct. 621, 41 N.E.3d 311 (2015) ............................16

*Muhammad v. PNC Bank, N.A.*,
    2016 WL 815289 (S.D.W. Va. Feb. 29, 2016) ............................14

*Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*,
    2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ................................14

*Patrick v. Teays Valley Trs., LLC*,
    2012 WL 5993163 (N.D.W. Va. Nov. 30, 2012) ...........................4

*Pearson v. Caterpillar Fin. Servs. Corp.*,
    60 So. 3d 1168 (Fla. Dist. Ct. App. 2011).....................................6

*Quinteros v. MBI Assocs., Inc.*,
   999 F. Supp. 2d 434 (E.D.N.Y. 2014) ...................................................... 14

*Rich v. BAC Home Loans Servicing LP*,
   2014 WL 7671615 (D. Ariz. Oct. 9, 2014) ............................................... 15

*Roche v. Bank of Am., N.A.*,
   2013 WL 3450016 (S.D. Cal. July 9, 2013) .............................................. 13

*Rodriguez v. Seterus, Inc.*,
   2015 WL 5677182 (S.D. Fla. Sep. 28, 2015) ............................................ 14

*Sanders v. Cty. of Santa Cruz*,
   2014 WL 4773992 (N.D. Cal. Sept. 19, 2014) ............................................ 4

*Schmidt v. Wells Fargo Home Mortg.*,
   2011 WL 1597658 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x 868
   (4th Cir. 2012) ....................................................................................... 4, 5

*Shami v. Nat'l Enter. Sys.*,
   2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010) ........................................... 14

*Shattuck v. Precision-Toyota, Inc.*,
   115 Ariz. 586, 566 P.2d 1332 (1977) ......................................................... 6

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................................... 9

*Stern v. Nw. Mortg., Inc.*,
   179 Ill. 2d 160, 688 N.E.2d 99 (1997) ...................................................... 19

*Stitt v. Citibank, N.A.*,
   942 F. Supp. 2d 944 (N.D. Cal. 2013) ......................................................... 9

*Sumner v. Mortg. Elec. Registration Sys., Inc.*,
   2012 WL 3059429 (D. Mass. July 26, 2012) ............................................. 16

*Torrance v. Aames Funding Corp.*,
   242 F. Supp. 2d 862 (D. Or. 2002) .......................................................... 7, 8

*Trachsel v. Litton Loan Servicing, LP*,
   2011 WL 5439215 (D. Or. Nov. 9, 2011) .................................................. 7, 8

*Trevathan v. Select Portfolio Servicing, Inc.*,
   2015 WL 6913144 (S.D. Fla. Nov. 6, 2015) ................................................ 5

*Tysenn v. Select Portfolio Servicing, Inc.*,
   2015 U.S. Dist. LEXIS 97696 (S.D. Fla. May 14, 2015) ........................... 14

*Vega v. Ocwen Fin. Corp.*,
    2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ........................... 12

*Walker v. Countrywide Home Loans, Inc.*,
    98 Cal. App. 4th 1158 (2002) ........................................ 10, 11

*Walker v. Gallegos*,
    167 F. Supp. 2d 1105 (D. Ariz. 2001) ................................. 15

*Weast v. Rockport Fin., LLC*,
    115 F. Supp. 3d 1018 (E.D. Mo. July 17, 2015) ....................... 14

*Webb v. Bank of Am., N.A.*,
    2013 WL 6839501 (E.D. Cal. Dec. 23, 2013) ........................... 11

*Weiner v. Ocwen Fin. Corp.*,
    2015 WL 4599427 (E.D. Cal. July 29, 2015) ......................... 1, 9, 11

*White v. Aurora Loan Servs. LLC*,
    2014 WL 5080904 (D. Ariz. Oct. 9, 2014) ............................. 15

*Wittman v. CB1, Inc.*,
    2016 WL 1411348 (D. Mont. Apr. 8, 2016) ............................. 14

*Young v. Wells Fargo & Co.*,
    671 F. Supp. 2d 1006 (S.D. Iowa 2009) ............................... 11

## STATUTES

15 U.S.C. § 1692e ........................................................ 12

15 U.S.C. § 1692f(1) ..................................................... 12

Cal. Civ. Code § 1788.2 .................................................. 13

Cal. Civ. Code § 1788.17 ................................................. 12

Fla. Stat. § 501.203 ..................................................... 17

815 Ill. Comp. Stat. 505/2 ............................................... 18

Mass. Gen. Laws ch. 93A, § 9 .......................................... 15, 16

Or. Rev. Stat. § 646.605 .................................................. 6

Or. Rev. Stat. § 646.605(9)(b) ........................................... 8

Or. Rev. Stat. § 646.607 .................................................. 8

Or. Rev. Stat. § 646.608 .................................................. 7

Or. Rev. Stat. § 646.608(1)(u) ............................................................................................. 7

**OTHER AUTHORITIES**

85 Cal. Op. Att'y Gen. 215, 2002 WL 31440180 (2002) .................................................. 13

Or. Admin. R. 137-020-0805(6) .......................................................................................... 7

# I.    INTRODUCTION

This is a case about greed and abuse. Defendant Nationstar, in conjunction with its affiliate, Defendant Solutionstar,[1] banks on defaulted borrowers' fear of losing their homes to charge and collect marked up, abusive, and unfair fees for services that no one orders, needs, or wants. Completely removing the human aspect of "servicing," to the extent it once existed in the mortgage relationship, Nationstar uses an automated default servicing platform to charge borrowers for multiple, repetitive "property inspections" as much and as often as it possibly can, irrespective of any reasonable basis or genuine need. These cursory, repetitive, and redundant property inspections conducted by Solutionstar are unnecessary and unreasonable—they are not required by lenders, not permitted by lender guidelines, and in many cases not allowed under state and federal regulations and guidelines. The fees are abusive—and Nationstar charges them to drive up profits at defaulted borrowers' expense and because it believes it can get away with doing so. To add insult to injury, for borrowers in default—the very individuals who need the most assistance with making timely payments—Nationstar imposes an additional unauthorized and wholly inappropriate fee for online payments.

Though they try, Defendants cannot dispute any of these facts on a motion to dismiss. Moreover, Defendants argue that many—but not all—of the Plaintiffs are contractually prohibited from asserting their claims, and that the above practices are outside the scope of state unfair competition laws. The case law directly refutes both of these arguments. Defendants' contractual argument was recently rejected by the Northern District of California in *Giotta v. Ocwen Financial Corp.*, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015). And numerous courts, including this Court in *Weiner v. Ocwen Financial Corp.*, 2015 WL 4599427 (E.D. Cal. July 29, 2015), have held that practices similar to the ones at issue here are within the scope of state unfair competition laws. *See infra* nn. 12, 14, 15 and 17(collecting cases). Thus, Defendants' motion to dismiss is without merit and should be denied.

---

[1] Defendants have filed a joint motion. Plaintiffs respond in kind, referring to Defendants where a claim is brought and challenged by both Defendants, and Nationstar where the claim relates solely to that one Defendant.

## II.    STATEMENT OF FACTS

Despite Defendants' mischaracterization of this case as a "sprawling putative class action," in fact, Plaintiffs are suing Defendants over two related schemes: an Inspection Fee Scheme and a Pay to Pay Scheme (collectively "Schemes"). The Inspection Fee Scheme involves Nationstar's loan servicing platform automatically—without human intervention—ordering and charging borrowers for property inspections routed through Defendant Solutionstar, without regard to investor guidelines or actual need. Complaint ("Compl.") ¶¶ 10-12. In fact, certain borrowers—such as the Marcel and O'Halloran Plaintiffs—are charged for inspections regardless of whether they occur. *Id.* ¶¶ 107-113 (Marcel Plaintiffs), 124-129 (Plaintiff O'Halloran). These inspections are ordered through Solutionstar in order to obtain otherwise unavailable mark-ups. The result is a process in which Nationstar and Solutionstar profit improperly at the borrower's expense.

The Pay to Pay Scheme involves Nationstar charging defaulting borrowers extra to pay their mortgages. *Id.* ¶¶ 19-21. Perversely, this fee is only imposed on distressed (defaulting) borrowers, without providing any additional service or benefit to the borrower. *Id.* ¶ 20. As this fee is imposed without any notice, it often results in automatic online payments being rejected, which results in further late fees (and additional direct revenue and profits for Nationstar). *Id.* ¶ 21. Contrary to Defendants' motion, neither of these Schemes are contractually authorized.

## III.    PLAINTIFFS' CLAIMS ARE ADEQUATELY PLEADED[2]

### A.    Nationstar's Notice and Cure Arguments Fail[3]

Nationstar argues that the Fannie/Freddie Plaintiffs'[4] claims are barred because they "failed to give pre-suit notice of their claims as required by their security instruments." Mot. at 5. This same argument was rejected in *Giotta*. There, the court held that: (a) the notice and cure provision was

---

[2] Should the Court determine that any claim is not adequately pleaded, Plaintiffs respectfully request leave to amend.

[3] Based on Defendants' motion and memorandum, Defendant Solutionstar does not assert a "notice and cure" argument, and thus waives it. To the extent Solutionstar seeks to make such an argument, Plaintiffs' response applies with equal force to Solutionstar.

[4] "Fannie/Freddie Plaintiffs" refers to those Plaintiffs with the standardized deed of trust created by Fannie Mae & Freddie Mac. These are the Contreras Plaintiffs, the Phillips Plaintiffs, Plaintiff Barney, the Marcel Plaintiffs, Plaintiff O'Halloran, and Plaintiff Yager.

PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO DISMISS                  - 2 -
010492-11  880013 V1

inapplicable to a claim against loan servicers, like Ocwen in that case, and Nationstar here; (b) the provision was categorically inapplicable to the majority of the claims—specifically unjust enrichment and statutory consumer protection claims—which Plaintiffs plead here; and (c) the case-law cited by Ocwen was distinguishable. This reasoning applies with equal force here.

### 1. The notice and cure provision is inapplicable to claims against Nationstar, or any other Loan Servicer.

The "notice and cure" provision that Nationstar attempts to invoke is found within the second paragraph of the deed of trusts' Section 20. In pertinent part, Section 20 provides: "Neither *Borrower* nor *Lender* may commence . . . any judicial action . . . until such *Borrower* or *Lender* has notified the other party." *See* Compl., Ex. 1, § 20 (emphasis added).

The deeds of trust at issue clearly define the "Borrower" and the "Lender." With respect to the Contreras Plaintiffs, Plaintiff Barney, the Marcel Plaintiffs, and Plaintiff O'Halloran,[5] Nationstar is not the "Borrower" or the "Lender" and, as such, the "notice and cure" provision of Section 20, which binds only the "Borrower" and the "Lender," is plainly inapplicable to claims against Nationstar, which, by its own admission, is only the *Loan Servicer*.

The text of Section 20 itself also puts to rest any question about whether the terms "Lender" and "Loan Servicer" are interchangeable. They are not. Section 20 defines "Loan Servicer" differently from "Lender." The "Loan Servicer" is defined as the "entity . . . that collects Periodic Payments due under the Note and this Security Instrument." *Id.* Given Section 20's careful and differentiated use of the terms "Lender" and "Loan Servicer," and given that the definition of the term "Loan Servicer" appears in the very same section of the instrument in which the "notice and cure" requirement excluding Loan Servicers from its scope is found, Nationstar's effort to categorically conflate itself with the "Lender" to invoke the "notice and cure" provision contradicts basic principles of contract interpretation. "If contractual language is clear and explicit, it governs." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 272 (Cal. 1998), *as modified*

---

[5] The Phillips Plaintiffs are the *only* named plaintiffs whose security instrument lists Nationstar as the "Lender." But the Phillips Plaintiffs are suing Nationstar qua Loan Servicer, not qua Lender. That Nationstar occupies both roles does not make the notice and cure provision apply to the "Loan Servicer" any more than it would when the two are different entities. It is Nationstar's role as Loan Servicer that underpins this case, and in that capacity, it is not entitled to pre-suit notice.

1   (Sept. 23, 1998). Moreover, contractual definitions of a term "must be followed." *Sanders v. Cty. of*

2   *Santa Cruz*, 2014 WL 4773992, at *5 (N.D. Cal. Sept. 19, 2014) (quoting Cal. Civ. Code § 1644).

3          Thus, based on the contract's plain language, there can be no doubt that the "notice and cure"

4   requirement does not apply to claims against Nationstar, which is the Loan Servicer. Numerous

5   courts reviewing the same or similar provisions have recognized this basic distinction between the

6   Lender, which is entitled to the protections of the "notice and cure" provision, and the Loan Servicer,

7   which is not. *See, e.g.*, *Giotta*, 2015 WL 8527520, at *5 ("[T]he plain contract language limits the

8   'notice and cure' requirement to judicial actions brought by the borrower against the lender or vice

9   versa. Here, Plaintiffs—the borrowers—sue the loan servicer and related entities, none of which is

10  the lender."); *Patrick v. Teays Valley Trs., LLC*, 2012 WL 5993163, at *9 (N.D.W. Va. Nov. 30,

11  2012) ("[T]he Notice-and-Cure Provision in the Plaintiffs' Deed of Trust expressly bind the

12  borrower and the lender—not the borrower and a loan service provider or substitute trustee.");

13  *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011), *aff'd*, 482

14  F. App'x 868 (4th Cir. 2012) ("The 'notice and cure' provisions in the deeds of trust bind the

15  borrower and the lender, not the borrower and the loan servicer.").

16         **2.      The notice and cure provision is inapplicable to most claims.**

17         Even if Section 20 could be construed to include a "notice and cure" requirement for claims

18  against a *Loan Servicer*, as opposed to a *Lender*, Nationstar concedes that neither Plaintiff Charlot's

19  nor Plaintiff Miller's deeds of trust include a "notice and cure" provision. As such, they may pursue

20  their claims for breach of contract and unjust enrichment, without providing notice. *See* Mot. at 5 n.2

21  ("Plaintiffs . . . Charlot and . . . Miller do not have this provision in their security instruments and this

22  argument is thus not directed at either Charlot or Miller.").

23         Moreover, even for the Plaintiffs whose instruments include this provision, of the courts that

24  have credited the "notice and cure" argument at all, most have held that nearly identical "notice and

25  cure" provisions apply *only* to claims for breach of contract, not unjust enrichment claims or

26  statutory claims of deceptive business practices. *See, e.g.*, *Beyer v. Countrywide Home Loans*

27  *Servicing LP*, 2008 WL 1791506 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 F. App'x 701 (9th Cir.

28  2009) (the "Court concludes that the notice provision does not bar Plaintiff's unjust enrichment and

[state law statutory] claims"); *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082 (W.D. Wash. Mar. 8, 2006) (same); *Schmidt*, 2011 WL 1597658 (same). As indicted by the table below, the majority of Plaintiffs' claims are unaffected in any event.[6]

| | Breach of Contract | Unjust Enrichment | Statutory Claims |
|---|---|---|---|
| **Charlot & Miller** | **Unaffected** (No Notice and Cure Provision) | **Unaffected** (No Notice and Cure Provision) | **Unaffected** (No Notice and Cure Provision) |
| **Contreras, Barney, Marcels, Phillips, Yager & O'Halloran** | *Notice and Cure Provision included in Plaintiffs' deeds of trust* | **Unaffected** (Notice and Cure Inapplicable) | **Unaffected** (Notice and Cure Inapplicable) |

**3.    Nationstar's cases are distinguishable.**

Nationstar cites a number of cases, but none on point. First, Nationstar relies on inapposite case law assessing the applicability of Section 20 to *Lenders*, not Servicers. *See Jackson v. Atl. Sav. of Am.*, 2014 WL 4802879, at *2, 6 (N.D. Cal. Sept. 26, 2014) (suit against note holder and its assigns surrounding an alleged wrongful foreclosure, not a servicer); *Hollowell v. All. Bancorp, Inc.*, 2011 WL 2884801, at *1 (N.D. Cal. July 19, 2011) (rejecting only claim against Lender but not claim against Servicer).[7] Second, Nationstar cites to *Allen v. JPMorgan Chase Bank, N.A.*, 2016 WL 1029334, at *2 (S.D. Miss. Mar. 14, 2016), and *Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 36 (D.D.C. 2014), for the proposition that an assignee may assert the rights contained in Section 20. But both *Allen* and *Jessup* concerned bank-defendants who were *assigned* a Plaintiff's note and deed of

---

[6] In addition, even assuming, *arguendo*, that the "notice and cure" provision is applicable to any of Plaintiffs' claims, Plaintiffs are excused from compliance with the provision because performance with the condition would be futile. *See, e.g.*, *Gueyffier v. Ann Summers, Ltd.*, 184 P.3d 739, 744 (Cal. 2008) (holding that the non-performance of a contractual provision may be excused for a number of legally recognized reasons, including where performance would be futile). Plaintiffs have repeatedly complained to Nationstar about unnecessary fees or fees for services that have not been performed, providing Defendants with ample opportunity to address the practices at issue. However, Defendants have failed to take any remedial action. *See, e.g.*, Compl. ¶¶ 98, 103, 110, 119, 127.

[7] *See also Kerns v. United States*, 2012 WL 5877479, at *1, 4 (E.D. Va. Nov. 20, 2012) (suit against holder of note and trustee); *Trevathan v. Select Portfolio Servicing, Inc.*, 2015 WL 6913144, at *5 (S.D. Fla. Nov. 6, 2015) (concerning a servicer that was *also* a lender and owned the plaintiff's note).

trust.[8] As such, these cases are inapplicable as well. Indeed, the only cases involving claims asserted against a servicer included in Nationstar's motion are two from the Southern District of Florida: *Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *4 (S.D. Fla. Mar. 14, 2016); and *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *1 (S.D. Fla. July 6, 2015). The reasoning in *Hill*—and *Charles*, which relies on it—however, violates basic principles of contract interpretation. *See, e.g.*, *Foster-Gardner, Inc.*, 959 P.2d at 272 ("If contractual language is clear and explicit, it governs.") (citation omitted);[9] *Giotta*, 2015 WL 8527520, at *5-6 (rejecting argument that "notice and cure" provision applies to servicers on this basis). While Nationstar complains that the *Giotta* court relied on an "unduly restrictive reading of the deed of trust," Mot. at 7 n.5, in fact, that court applied a basic and fundamental principle of contract law—contracts mean what they say.

**B.  Defendants' Attacks on Plaintiffs' Consumer Protection Act Claims Fail**

**1.  Barney adequately alleges violations of Oregon's Unfair Trade Practices Act.**

**a.  Or. Rev. Stat. § 646.605, et seq., governs the servicing of Barney's loan.**

Defendants[10] argue that since the Oregon Unfair Trade Practices Act ("UTPA") was amended to apply to "loans and extensions of credit" in 2010, Barney's 2005 loan is outside the scope of the UTPA. Mot. at 8 (citing *Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1108 (D. Or. 2013)). But, unlike the plaintiff in *Roisland*, Barney does not assert any claim arising out of the *origination*

---

[8] Nationstar suggests that it is an "assignee" under the deed of trust. Nationstar provides no support for this assertion, and nothing "on the face of the complaint or in the deed of trust itself suggests that the lender has transferred property rights" to the loan servicer. *Giotta*, 2015 WL 8527520, at *6. Moreover, the "assignee" language cited by Nationstar specifically excepts from its scope Section 20, the "notice and cure" provision that forms the basis for Nationstar's contractual argument. *Id.*

[9] *See also, e.g.*, *Pearson v. Caterpillar Fin. Servs. Corp.*, 60 So. 3d 1168, 1172 (Fla. Dist. Ct. App. 2011) ("If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute.") (citation omitted); *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977) ("a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive") (citation omitted); *Indoor Billboard Nw., Inc. v. M2 Sys. Corp.*, 922 F. Supp. 2d 1154, 1161 (D. Or. 2013) ("[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear") (citation omitted).

[10] Defendants appear to respond to Barney's UTPA claim on behalf of Nationstar only and at other times on behalf of "Defendants" generally. Plaintiffs' arguments in response apply to Nationstar and Solutionstar with equal force.

of her loan. She objects only to the unlawful *servicing* practices of Nationstar, which took place *after* 2010.[11] Moreover, even prior to 2010, loan servicing fell squarely within the UTPA's applicability. *See, e.g.*, *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 865 (D. Or. 2002) ("Oregon law allows claims under the UTPA for loan services"); *Cullen v. Inv. Strategies, Inc.*, 139 Or. App. 119, 911 P.2d 936 (1996) ("professional services rendered to borrower by nonlender in connection with nonbusiness loan fell within UTPA, even though loan itself did not"). Mortgage servicing misrepresentations and nondisclosures, specifically, were actionable under the UTPA, even prior to the amendment. *Trachsel v. Litton Loan Servicing, LP*, 2011 WL 5439215, at *4 (D. Or. Nov. 9, 2011).

### b. Violations of Or. Rev. Stat. § 646.608.

Section 646.608(1)(u) prohibits "unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1)(u). And, a loan servicer engages in unfair conduct if it "fails to deal with a borrower in good faith." Or. Admin. R. 137-020-0805(6). Defendants acted in bad faith by charging fees for services that were unauthorized, duplicative, and/or never performed. *See, e.g.*, Compl. ¶ 209. Nevertheless, relying on *Lund v. Arbonne Int'l, Inc.*, 132 Or. App. 87, 94, 887 P.2d 817, 822 (1994), Defendants allege that Barney fails to plead any "misleading or deceptive statement . . . in the sale . . . of . . . goods or services." *See* Mot. at 9. Defendants' argument fails on a number of grounds. First, § 608 does not require an unfair *statement*; it also prohibits unfair *conduct*, which Defendants do not dispute has been alleged. *See* Or. Rev. Stat. § 646.608(1)(u); *see, e.g.*, Compl. ¶ 209. Second, Plaintiffs do allege a number of unfair *statements*; specifically, Defendants misrepresented that they are authorized to issue fees for duplicative and/or unperformed property inspections. *See, e.g.*, Compl. ¶ 209. Third, Defendants' reliance on *Lund* is misplaced. *Lund*, which assessed whether a distributor may terminate an open-ended agreement with an independent contractor, turned on the conclusion that the UTPA applies to consumer transactions, and does not protect business entities in their commercial dealings. *See Lund*, 132 Or. App. at 93, 887 P.2d at 822 ("the UTPA is intended to regulate consumer transactions, not business or commercial

---

[11] *See* Compl. ¶¶ 102-104 ("On or about June 15, 2012, Nationstar bought the servicing rights to Barney's mortgage . . . . Nationstar charged Barney over $120 in fees for Properties Inspections.").

transactions"). Here, Barney is a consumer and loan servicing is a consumer transaction that falls within the scope of the UTPA. *See, e.g.*, *Torrance*, 242 F. Supp. 2d at 865; *Trachsel*, 2011 WL 5439215.

Defendants further argue that Barney's claim should be dismissed because it fails to allege "any new 'transaction' with Barney in assessing fees," relying on *Baldin v. Wells Fargo Bank, N.A.*, 2013 WL 794086, at *9 (D. Or. Feb. 12, 2013). But, § 608 does not require that Plaintiffs plead a "new transaction," Mot. at 9, and *Baldin* is distinguishable. In *Baldin*, the court noted that, unlike here, "all of the purportedly unconscionable actions . . . appear to be authorized by the trust deeds." *Baldin*, 2013 WL 794086, at *9.

### c.    Violations of Or. Rev. Stat. § 646.607.

Defendants argue, without citation to authority, that Defendants' practice of automatically ordering multiple property inspections is not "unconscionable" because the inspections provide a "material benefit" by "identifying vacant properties." Mot. at 9. But, as alleged in the Complaint, Defendants inspect properties that they know are inhabited. *See, e.g.*, Compl. ¶¶ 103, 110, 119, 127, 179. And Defendants' practice of charging for inspections that never took place clearly provide no benefit to the lender or the borrower, only the *servicer* that collects the fees. *See, e.g.*, *id.* ¶ 209. Moreover, factual disputes regarding the "value" of Defendants' property inspections are inappropriately raised in a motion to dismiss.

Defendants also argue, again without authority, that because Barney is not in default, her fees could be "reasonably repaid" within the meaning of § 646.605(9)(b). But as alleged in the Complaint, the very purpose of imposing "Distressed Mortgage Fees," is to drive borrowers into default and foreclosure. *See, e.g.*, Compl. ¶ 14 ("Nationstar counts on the bogus inspection charges going unpaid . . . causing a debt spiral, rendering it . . . impossible for the defaulted borrower to come current."). The fact that Barney is not in default is only because she pays more than her contracts require in anticipation of Defendants' bogus fees. *See* Compl. ¶ 106.

### 2. California Plaintiffs have properly pleaded violations of the UCL.

#### a. Plaintiffs have properly pleaded that both schemes are "unlawful," and thus violate the UCL.

Plaintiffs have properly pleaded that both Schemes violate California statutes, including the Rosenthal Act, as well as the California common law of unjust enrichment. *See* Compl. ¶ 220. Both of these violations are predicates for Plaintiffs' UCL "unlawful" claim. Plaintiffs have alleged that through their schemes, Defendants have unjustly retained the benefits of inspection fees and Pay-to-Pay fees at the expense of the respective Classes. *See* Compl. ¶¶ 220, 227-234. *See, e.g.*, *Weiner*, 2015 WL 4599427, at *1 (denying motion to dismiss claim alleging practices including "improperly assess[ing] marked-up fees for default related services on [] mortgage accounts"); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 923 (N.D. Cal. 2013) (denying motion to dismiss claim alleging that a mortgage servicer "unlawfully mark[ed] up default-related fees charged by third parties[,] and assess[ed] them against borrowers' accounts for an undisclosed profit").[12]

Defendants read *Shroyer* far more broadly than it permits. *Shroyer* only applies to common law violations "such as breach of contract," not unjust enrichment. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Furthermore, Plaintiffs' common law claims do not "stand alone," but are buttressed by alleged violations of the Rosenthal Act. As *Shroyer* notes, "a violation of common law can support a § 17200 claim." *Id.* (citations omitted).

#### b. Plaintiffs have properly pleaded that both schemes are "fraudulent," and thus violate the UCL.

"A plaintiff must plead allegations of fraud and those that 'sound in fraud' with particularity," and thus "must plead the 'who, what, when, where, and how' of the alleged fraud." *Weiner*, 2015 WL 4599427, at *4 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Here, Plaintiffs allege the "who" are Nationstar in the Pay-to-Pay Fee Scheme and

---

[12] *See also Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1084, 1093 (N.D. Cal. 2013) (denying motion to dismiss claim alleging that a mortgage servicer "assessed fees for default-related services, including . . . inspection fees" that were "automatically" charged and "inflated"); *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 949 (N.D. Cal. 2013) (denying motion to dismiss claim alleging that a mortgage servicer "assessed fees for default-related services, including property inspections" that were "automatically ordered regardless of whether the inspections were necessary" and "marked-up").

Nationstar and Solutionstar in the Inspection Fee Scheme. *See* Compl. ¶¶ 10-22. The "what" are

schemes to increase the debt of delinquent borrowers. *See id.* The "how" of the Inspection Fee

Scheme is acting contrary to the Contrerases' deed of trust, which requires Nationstar to only charge

"reasonable" inspection fees during default. *See id.*, Ex. 1. The "how" of the Pay-to-Pay Scheme is in

Yager's transaction statements, which misrepresented Pay-to-Pay fees—which were in fact penalties

for delinquency—as "E-PAY" fees-for-service. *See id.*, Ex. 31. The "when" is, for the Contrerases,

the period between November 1, 2012, and the present. *Id.* ¶¶ 94-96. For Plaintiff Yager, it is early

2013. *Id.* ¶¶ 138-140. Finally, the "where" is where Defendants operate and execute Nationstar's

automated loan servicing system, and Plaintiffs homes in California. *See id.* ¶¶ 92-93, 140-141.

Contrary to Defendants' contentions, Plaintiffs have separately informed Nationstar and

Solutionstar of their roles in the Inspection Fee Scheme.[13] Nationstar "orders property inspections

that are excessive in frequency and price," while Solutionstar "automatically generates orders for

inspections" that are cursory or "fabricated." *Id.* ¶ 11. Nationstar pays Solutionstar, then "charges

borrowers' accounts for inspections" and "adds additional late fees and associated charges." *Id*.

Nationstar "profits through fees at the expense of borrowers," while Solutionstar "profits by adding

service/referral charges to the amounts actually paid" to the inspectors. *Id.*

### c. Plaintiffs have properly pleaded that both schemes are "unfair," and thus violate the UCL.

Plaintiffs have pleaded a violation of the UCL's "unfair" prong. Defendants' Schemes

produced "substantial" consumer injury, not outweighed by any benefits to consumers or

competition and "could not reasonably have been avoided." Compl. ¶ 221. *Walker* fails to support

Defendants' argument that the Inspection Fee Scheme is "fair," because *Walker* addressed fees

assessed *during* delinquency and in a manner authorized by contract. *Walker v. Countrywide Home

Loans, Inc.*, 98 Cal. App. 4th 1158, 1166, 1172 (2002). Here, the inspection fees were unauthorized,

inflated, and for inspections that did not occur or were unnecessary and duplicative. As the Court

noted recently:

---

[13] Plaintiff Yager did not need to separately inform Defendants of their roles in the Pay-to-Pay Scheme because Solutionstar did not play a role in that Scheme.

> *Walker*'s recognition that a loan servicer can charge a delinquent
> borrower a property inspection fee [generally] does not mean that
> Defendants can charge marked-up default-related service fees, an issue
> not addressed in *Walker*.

*Weiner*, 2015 WL 4599427, at *12; *see also id.* at *1-2 (denying motion to dismiss UCL claims alleging that a mortgage servicer "improperly assessed default-related service fees that contained substantial, undisclosed mark-ups which violated the terms of [the] mortgage contract").[14]

Defendants' argument that the Pay-to-Pay Scheme is not "unfair" rests on a misinterpretation of the Complaint. Yager argues that Pay-to-Pay fees are not "convenience fees" because if fees were charged to recoup the cost of alternative payment systems, they would be charged to *every* Nationstar customer who used such services. Instead, the fees are *only* charged when "a borrower misses a loan payment, or otherwise appears to be in risk of default." Compl. ¶ 20. As such, the Pay-to-Pay fees are penalties that exist solely to extract profit from borrowers at risk of default, and have no utility other than making it more difficult for those borrowers to come current while enriching Nationstar. Furthermore, numerous courts have denied motions to dismiss similar claims. *See, e.g.*, *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003) (denying lender's motion to dismiss UCL claims alleging the bank had imposed excessive and unjustified fees on customers).[15]

### 3. California Plaintiffs have properly pleaded violations of the Rosenthal Act.

The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." *Webb v. Bank of Am., N.A.*, 2013 WL 6839501, at *5 (E.D. Cal. Dec. 23, 2013) (citing Cal. Civ. Code § 1788.1(b)). The Rosenthal Act's standard of "deception" is quite low: whether the "least sophisticated debtor" would be

---

[14] *See also Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1024 (S.D. Iowa 2009) (denying motion to dismiss similar case because "unlike in *Walker*, Plaintiffs do not challenge the imposition of property inspection fees in general, but rather, Plaintiffs assert that the manner in which [a mortgage servicer] charged the property inspection fees is unreasonable"); *Bias*, 942 F. Supp. 2d at 923 (denying motion to dismiss similar claims); *Ellis*, 950 F. Supp. 2d at 1084, 1093 (same); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) (same).

[15] *See also Hawthorne v. Umpqua Bank*, 2013 WL 5781608, at *1-3, 9 (N.D. Cal. Oct. 25, 2013) (denying bank's motion to dismiss UCL claims alleging that overdraft fees were charged unnecessarily and improperly); *Bottoni v. Sallie Mae, Inc.*, 2011 WL 635272, at *11-12 (N.D. Cal. Feb. 11, 2011) (denying lender's motion to dismiss UCL claims alleging that the imposition of a fee on defaulting borrowers did not reflect actual costs and were unreasonable).

deceived by the communication in question. *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). The Rosenthal Act incorporates the substantive provisions of the federal Fair Debt Collection Practices Act ("FDCPA"), including 15 U.S.C. §§ 1692e and 1692f(1). Cal. Civ. Code § 1788.17.

Defendants' Schemes violate 15 U.S.C. § 1692f(1) by assessing "charges" that are not "expressly authorized by the agreement creating the debt or permitted by law." The Inspection Fee Scheme involved inspections that were so cursory and unnecessary, and fees that were so inflated, that they weren't authorized by the "reasonable" language in the Contrerases' deed of trust. *See* Compl. ¶¶ 227-234. Similarly, the Pay-to-Pay Fee Scheme imposed debt payment fees on Yager that were not authorized in his mortgage documents. *See id.* ¶¶ 232-233. Defendants cannot point to any California law or any contractual text that expressly permits the imposition of the fees in either Scheme. *See id.* ¶¶ 232-233.

Both Schemes also violate 15 U.S.C. § 1692e by creating "misleading representation[s] . . . in connection with the collection of any debt." Defendants misled the Contrerases by charging fees not allowed by the deed of trust, while Nationstar misled Yager through the Pay-to-Pay Fee Scheme by repeatedly calling the Pay-to-Pay fee an "E-PAY FEE" on Yager's transaction statement. *See* Compl., Ex. 31. The "least sophisticated debtor" would interpret this as a convenience fee for utilizing an online/phone payment system—not as a penalty for attempting to a pay a fee while being at risk of default.

a.      ***Dey, Benner*, and *Vega* do not support Defendants' argument.**

Defendants incorrectly state that *Dey*, *Benner*, and *Vega* are cases where a court dismissed claims "similar" to those pleaded by the Contrerases. Mot. at 13-14 (citing *Dey v. Cont'l Cent. Credit*, 170 Cal. App. 4th 721, 730, 88 Cal. Rptr. 3d 241, 248 (2008); *Benner v. Bank of Am.*, 917 F. Supp. 2d 338, 354 (E.D. Pa. 2013); and *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *14 (C.D. Cal. Mar. 24, 2015)). *Dey* is inapposite because it concerned fees expressly permitted by statute. And *Benner* and *Vega* concerned the automatic assessment of inspection fees: (1) at monthly intervals, (2) *solely* during the duration of a borrower's delinquency, (3) for actually conducted inspections, and (4) without improper mark ups. These cases are distinguishable because here, Plaintiffs challenge the

automatic assessment of inspection fees: (1) *multiple times within* a 30-day period, (2) even *after* a borrower's delinquency is cured, and (3) for cursory or fabricated inspections. *See* Compl. ¶ 91.

### b. Plaintiff Yager's loan falls within the scope of the Rosenthal Act.

Defendants' attempt to disqualify Plaintiff Yager's claims by reading the word "delinquent" into the Rosenthal Act borders on the absurd. The Act does *not* define "debt" as obligations that are *delinquent*, but as "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2. The Attorney General's opinion cited by Defendants states that "owing" means "that is *yet* to be paid." 85 Cal. Op. Att'y Gen. 215, 2002 WL 31440180 (2002) (emphasis added) (internal quotation marks omitted). A mortgage is thus a debt under the Rosenthal Act because it is "money owing to a person." *Roche v. Bank of Am., N.A.*, 2013 WL 3450016, at *6 (S.D. Cal. July 9, 2013).[16]

### c. Plaintiff Yager has properly pleaded equitable tolling.

Yager has alleged facts that, when accepted as "true and construed in the light most favorable" to him, *Lemus v. Cty. of Merced*, 2016 WL 2930523 (E.D. Cal. May 19, 2016), demonstrate that a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period. *See* Compl. ¶¶ 143-144. Yager incurred "E-PAY FEE" charges in early 2013. *Id.*, Ex. 31. This would indicate to a "reasonable plaintiff" that these charges were a fee-for-service for making an "e-payment." A "reasonable plaintiff" could not have known that this "E-PAY FEE" was *not* a fee-for-service, but rather a penalty applied *only* to borrowers at risk of default. Yager only became of aware of the Scheme just before he filed the Complaint. Yager has thus pleaded a permissible basis to toll the Rosenthal Act's statute of limitations.

### d. Courts routinely sustain at the pleading stage violations similar to those alleged here.

Courts have found that allegations similar to those here assert an FCDPA claim, even when a mortgage permits inspection fee charges. *See, e.g.*, *Daniel v. Select Portfolio Servicing, LLC*, 2016 WL 518721, at *2 (S.D. Fla. Jan. 28, 2016) (refusing to dismiss similar FDCPA claim because "the

---

[16] Defendants' argument is unavailing even under their definition of "debt" because Yager *was* delinquent at the time he was charged Pay-to-Pay fees in 2013. *See* Compl., Ex. 31.

gravamen of [plaintiff's] claims is that the property inspection charges were marked up and that an additional fee was charged, for which no services were rendered"); *Tysenn v. Select Portfolio Servicing, Inc.*, 2015 U.S. Dist. LEXIS 97696, at *9 (S.D. Fla. May 14, 2015) (denying motion to dismiss similar claims).[17]

### 4. The Phillips have properly pleaded Arizona Consumer Fraud Act claims.

The elements of an ACFA claim are "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). Defendants contend that the Phillips have not alleged a violation of the ACFA because "ordering property inspections under the preexisting contract did not result in the sale or advertisement of any new merchandise." Mot. at 16.

Defendants misunderstand the Phillips' ACFA claim. The "merchandise" at issue is *not* the "new" inspections themselves, but rather the "old" deed of trust that the Phillips entered into with Nationstar. *See* Compl. ¶¶ 235-238. The origination of a deed of trust falls within the scope of the ACFA because "money constitutes 'merchandise' under the ACFA [and] a loan constitutes a 'sale' under the ACFA." *Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*, 2010 WL 1759453, at *4 (D. Ariz. Apr. 30, 2010).[18] The Phillips' deed of trust promised that Nationstar would only

---

[17] *See also Manrique v. Wells Fargo Bank N.A.*, 116 F. Supp. 3d 1320, 1322 (S.D. Fla. 2015) (denying motion to dismiss similar claims); *Rodriguez v. Seterus, Inc.*, 2015 WL 5677182, at *4 (S.D. Fla. Sep. 28, 2015) (same); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016) ("Following the lead of the overwhelming majority of other courts, the Court finds that Plaintiff has properly pleaded [defendants'] collecting a [convenience] fee violated § 1692f(1)."); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1018-21 (E.D. Mo. July 17, 2015) (denying motion on similar grounds); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 580-83 (E.D.N.Y. 2015) (denying motion on similar grounds); *Muhammad v. PNC Bank, N.A.*, 2016 WL 815289, at *3 (S.D.W. Va. Feb. 29, 2016) (denying motion on similar grounds); *see also Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439-40 (E.D.N.Y. 2014) ("[I]f collection of a payment processing fee is unlawful under § 1692f(1), then the Processing Fee Statement is also 'false, deceptive, or misleading' under § 1692e(2), insofar as the statement implies the fee may be lawfully received."); *Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010) (accord); *Wittman v. CB1, Inc.*, 2016 WL 1411348, at *2 (D. Mont. Apr. 8, 2016) (accord).

[18] *See also Leist v. Acad. Mortg. Corp.*, 2016 WL 1593815, at *4-5 (D. Ariz. Apr. 20, 2016) (denying mortgage originator's motion to dismiss an ACFA claim alleging misrepresentations regarding a mortgage); *White v. Aurora Loan Servs. LLC*, 2014 WL 5080904, at *5 (D. Ariz. Oct. 9, 2014) (same).

make "reasonable" inspections. *See* Compl., Ex. 2. When Nationstar charged the Phillips for *un*reasonable inspections, it broke that promise—making it "false" and actionable under the ACFA.

Defendants' contention that Nationstar did not "sell" anything to the Phillips, Mot. at 16, is based on an obvious error. Nationstar *is*, in fact, the originator of the Phillips' loan. The Phillips' deed of trust states that Nationstar both prepared the deed and signed the deed as the "lender." *See* Compl., Ex. 2. Thus, Defendants' arguments regarding the limited application of ACFA to non-originating parties are irrelevant.

Defendants' contention that the ACFA "does not apply to actions a lender or servicer may take after a loan is originated that do not result in the sale or advertisement of any new merchandise," Mot. at 15-16, is nonsense. A "promise" in the sale of merchandise only becomes "false" when an action occurring *after* the sale breaks that promise. Such a promise-breaking action regarding the "old" sale does *not* need to result in a "new" sale for it to be actionable.

Defendants' cases are unavailing. The plaintiffs in those cases did not allege a "false promise" regarding their *original* mortgage; rather, they alleged a "false promise" within a *subsequent* offer to modify or collect on that loan.[19] Defendants' contentions find no support in these cases, or elsewhere, and are unavailing.

**5.    O'Halloran sufficiently alleges violations of the Massachusetts Consumer Protection Act.**

**a.    Condition precedent.**

Defendants first allege that Plaintiff O'Halloran failed to issue a demand letter pursuant to Mass. Gen. Laws ch. 93A, § 9. But a demand letter is not required if "the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." *Id.* Defendants concede that they do not "maintain a place of business" in Massachusetts, and instead argue that Plaintiff's "loan is an asset kept within Massachusetts." Mot. at 17. But, as correctly noted

---

[19] *See Rich v. BAC Home Loans Servicing LP*, 2014 WL 7671615, at *10 (D. Ariz. Oct. 9, 2014) (noting that alleged ACFA violation concerned "potential offers to modify an *already existing* debt") (emphasis added); *Davis v. Bank of Am. Corp.*, 2012 WL 3637903, at *5-6 (D. Ariz. Aug. 23, 2012) (noting that alleged ACFA violation concerned statements made regarding offer to modify existing debt); *Walker v. Gallegos*, 167 F. Supp. 2d 1105, 1107-08 (D. Ariz. 2001) (noting that while "the underlying consumer loan transaction" fell within the ambit of the ACFA, a complaint to repossess collateral did not).

by Defendants, *id.* n.11, that precise argument was rejected by the Massachusetts courts. *See Moronta v. Nationstar Mortg., LLC*, 88 Mass. App. Ct. 621, 626, 41 N.E.3d 311, 315 (2015) ("We reject Nationstar's argument that the borrower cannot proceed . . . because he failed to serve a demand letter pursuant to c. 93A, § 9"). *Moronta* makes clear that because Chapter 93A is written in the disjunctive, plaintiffs are excused from the notice requirement if a defendant fails to maintain a place of business **_or_** fails to maintain assets in Massachusetts. *Id.* As such, by failing to maintain a place of business in Massachusetts, Defendants excluded themselves from Chapter 93A, § 9's protections.

But, even ignoring *Moronta*, Defendants are not entitled to notice based upon the theory that they maintain "assets" in the state because Defendants do not own the alleged "asset" (O'Halloran's loan). *See, e.g.*, Compl. ¶ 5 ("Nationstar is not the owner of a mortgage note"). And every case cited by Defendants for the proposition that Plaintiffs' loan might constitute an "asset" within the meaning of Chapter 93A, § 9 concern suits brought against the *owner* of the loan in question, not the servicer.[20] Therefore, Defendants were not entitled to a pre-suit demand letter.[21]

### b. "Breach of contract" claim.

Second, Defendants assert that O'Halloran alleges only a "breach of contract" claim, not a breach of Chapter 93A. *See* Mot. at 17. "Chapter 93A proscribes '[u]nfair methods of competition and unfair or deceptive acts or practices in . . . trade or commerce.'" *Ji v. Bose Corp.*, 647 F. Supp. 2d 77, 79 (D. Mass. 2009). What constitutes "unfairness [is] . . . notably imprecise." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000). But, in general, a practice is "unfair" if it "would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F. Supp. 2d 442, 446 (D. Mass. 2005) (citation omitted). O'Hallaran alleges that she was charged for property

---

[20] *See Sumner v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 3059429, at *7 (D. Mass. July 26, 2012) ("Morgan Stanley's ownership of the Plaintiffs' mortgage constitutes an asset located in Massachusetts."); *Arazi v. Saxon Mortg. Servs., Inc.*, 2011 WL 5519914, at *3 (D. Mass. Nov. 14, 2011) ("Saxon holds the mortgage on the disputed Property.").

[21] To resolve any doubt, however, a demand letter was issued on June 1, 2016.

inspections that did not, and, indeed, *could not* have occurred.[22] Charging fees for a service that was not provided or requested would "raise an eyebrow" of the most "rough and tumble" businessperson and, as such, constitutes an unfair practice under Chapter 93A. *See Ji*, 647 F. Supp. 2d at 79. Nevertheless, Defendants argue that because O'Halloran asserts that the inspections at issue are not authorized by her deed of trust, she asserts only a contract claim. But unfair and/or deceptive conduct is not rendered outside the scope of Chapter 93A merely because a contract is in place.[23] Moreover, because this argument presents only a factual dispute, it is inappropriate for determination on a motion to dismiss. *See, e.g.*, *Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 747-48, 762 N.E.2d 867, 873 (2002) (the "determination that a defendant engaged in an unfair or deceptive act in violation of c. 93A is a factual finding.").

**6.    Plaintiffs have properly pleaded violations of the FDUTPA.**

"To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) (citation omitted). For the purposes of FDUTPA, "trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property." Fla. Stat. § 501.203.

Defendants argue that FDUTPA does not apply here because loan servicing "does not constitute 'trade or commerce' under the statute." Mot. at 18. When Nationstar last made this exact argument in *Alhassid*, it was unavailing. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1302 (S.D. Fla. 2014). There, Nationstar "argu[ed] that neither loan servicing or debt collection qualify as 'trade or commerce' under FDUTPA." *Id.* at 1323. The *Alhassid* court noted a "split of authority" on

---

[22] *See* Compl. ¶¶ 5, 128 ("O'Halloran was charged for property inspections that appear to never have occurred. Due to the layout of O'Halloran's building and community, her property cannot be observed from the street, which would prevent Defendants from conducting an inspection without her permission.").

[23] *See, e.g.*, *Mass. Emp'rs Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 43, 648 N.E.2d 435, 438 (1995) ("While it is correct that breach of contract alone does not amount to an unfair act or practice under G.L. c. 93A, § 2 . . . , conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect . . . has a coercive quality that, with the other facts, warranted a finding of unfair acts or practices.").

whether loan servicing and debt collection qualified *directly* as "trade or commerce," but declined to address the split. *Id*. Instead, the court found that inspection and appraisal fees could "be construed as the separate offer or provision of services within the meaning of FDUTPA." *Id*. On those grounds, the *Alhassid* court denied Nationstar's motion to dismiss. *Id*. The facts of *Alhassid* are indistinguishable from the instant case, and the FDUTPA claim here should likewise be allowed to proceed.

### 7. Miller sufficiently alleges violations of the ICFA.

#### a. Misrepresentation, concealment, suppression, or omission of any material fact.

Nationstar[24] asserts that Plaintiff Miller fails to "point to any particular [mis]representation" regarding convenience ['pay-to-pay'] fees." Mot. at 19. But the Complaint specifically alleges:

> As early as August 9, 2013, Nationstar began to charge Miller a $9.95 fee for making or scheduling online payments, totaling more than $129.00, all of which she paid [and that] . . . Miller was not made aware of the fact that she was being charged an additional fee for online payment.

*See* Compl. ¶¶ 133-134.[25] Miller also includes a "Transaction History" with the date of each undisclosed fee. *Id.*, Ex. 29. As such, Miller has pleaded, with particularly, the "concealment, suppression or omission of a . . . material fact"; specifically, *the existence of the fee itself*, as required by 815 Ill. Comp. Stat. 505/2. And, even if Nationstar is correct, dismissal is not warranted. 815 Ill. Comp. Stat. 505/2 also prohibits, as "unfair and deceptive," any practice enumerated in 815 Ill. Comp. Stat. 510/2, including "any other conduct which . . . creates a likelihood of confusion or misunderstanding," regardless of whether it is attached to a specific misrepresentation.

#### b. Fraudulent intent.

Relying on *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 169, 688 N.E.2d 99, 104 (1997), Nationstar asserts that Miller failed to plead fraudulent intent. But, "[t]he [mens rea] requirements of

---

[24] Defendants' motion responds to Miller's ICFA claim on behalf of Nationstar only. To the extent that Solutionstar has not waived the argument, and also challenges this claim, Plaintiffs' response applies with equal force to Solutionstar.

[25] *See also* Compl. ¶ 21 ("[B]orrowers are not notified when the Pay-to-Pay requirement has been implemented with respect to their accounts and, as a result, automatic monthly payments by borrowers are often rejected, causing them to incur further fees and risk default.").

an ICFA claim [is] not as strict as [it] sound[s] . . . . The . . . intent requirements can be satisfied by [even] *innocent* misrepresentations." *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003).[26] Moreover, a Rule 12 motion is "a particularly inappropriate vehicle" for resolving disputes regarding the intent of a party accused of ICFA violations. *Celex Grp., Inc. v. Exec. Gallery, Inc.*, 877 F. Supp. 1114, 1131 (N.D. Ill.1995). And, throughout the Complaint, Plaintiffs *do*, in fact, plead fraudulent intent on the part of Defendants.[27]

### c.     Lack of meaningful choice.

Finally, Nationstar argues that when an optional fee is disclosed to and accepted by a consumer, it does not show a "lack of meaningful choice." *See* Mot. at 20 n.14. But Miller affirmatively asserts that Defendants' "pay-to-pay" fees were *not* disclosed to her, and she did not accept them.[28]

## IV.     CONCLUSION

Every argument Defendants make falls into at least one of three categories: (1) a factual dispute regarding Plaintiffs' state law consumer protection claims that is inappropriate for resolution on a motion to dismiss; (2) a misconstruction of applicable law; and/or (3) an improper assertion of a "notice and cure" provision that applies to *lenders*, not servicers like Nationstar here, which is manifestly inapplicable to the majority of Plaintiffs' common-law and statutory claims even if it could apply here. As such, Defendants' motion should be denied in its entirety. To the extent the Court determines that any claim is insufficient, Plaintiffs respectfully request leave to amend such claim.

---

[26] *Stern* does not disturb the "general rule" that "innocent misrepresentations" are actionable under the ICFA. *Chow*, 286 F. Supp. 2d at 963 (limiting *Stern* to its facts).

[27] *See, e.g.*, Compl. ¶ 217 ("Through . . . the Pay to Pay Scheme, Defendants have . . . employed a scheme . . . to defraud and mislead borrowers . . . .").

[28] *See* Compl. ¶ 134. ("Miller was not made aware of the fact that she was being charged an additional fee for online payment.").

DATED: June 16, 2016    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Thomas E. Loeser*
    Thomas E. Loeser (#202724)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

KELLER ROHRBACK L.L.P

Derek W. Loeser (*pro hac vice*)
Dean Kawamoto (#232032)
Gretchen S. Obrist (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Attorneys for Plaintiffs*