1  Dean Kawamoto (Bar No. 232032)
   dkawamoto@kellerrohrback.com
2  Derek W. Loeser, admitted *pro hac vice*
   dloeser@kellerrohrback.com
3  **KELLER ROHRBACK L.L.P.**
4  1201 Third Avenue, Suite 3200
   Seattle, WA 98101-3052
5  Tel.: (206) 623-1900
   Fax: (206) 623-3384
6
7  Thomas E. Loeser (Bar No. 202724)
   toml@hbsslaw.com
8  **HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
   1918 Eighth Avenue, Suite 3300
9  Seattle, WA 98101
   Tel.: (206) 623-7292
10 Fax: (206) 623-0594

11 **Attorneys for Plaintiffs**
12 *(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| EUGENIO AND ROSA CONTRERAS, WILLIAM AND MELVA PHILLIPS, TERESA BARNEY, KEITH AND TERESA MARCEL, SHERLIE CHARLOT, JENNIE MILLER, AND EDWIN YAGER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, A DELAWARE LIMITED LIABILITY COMPANY; SOLUTIONSTAR, LLC (N/K/A XOME HOLDINGS LLC), A DELAWARE LIMITED LIABILITY COMPANY; AND DOES 1 THROUGH 1000,<br><br>Defendants. | No. 2:16-cv-00302-MCE-EFB<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

The parties in the above-captioned litigation, by and through their undersigned counsel, have proposed this Order governing the production of hard copy documents and electronically stored information ("ESI"), which is intended to incorporate or otherwise supplement the Federal Rules of Civil Procedure. The parties' stipulation is hereby approved and adopted as the Court's order.

**I.  GENERAL**

A.  Pursuant to Fed. R. Civ. P. 34, this Order sets forth the specifications that shall govern the form of producing documents and ESI in this action. This Order does not govern the scope of production of documents and ESI in the litigation and all parties reserve their rights with respect to the scope of the production of documents.

B.  This Order does not alter the parties' respective responsibilities to comply with the Federal Rules of Civil Procedure and the Local Rules of this district.

C.  Nothing in this Order shall be interpreted to require production of information protected from disclosure by the attorney-client privilege, work-product privilege, or any other applicable protection or privilege.

**II.  DEFINITIONS[1]**

A.  **"Documents"** means any designated hard copy or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

B.  **"Embedded data"** typically refers to draft language, editorial comments, and other deleted or linked matter retained by computer programs.

C.  **"Electronically Stored Information"** or **"ESI"** means all information that is stored

---

[1] These definitions shall be read and applied in the most expansive manner possible and are not intended to restrict or otherwise narrow and explanations set forth in The Sedona Conference® Glossary. https://thesedonaconference.org/publication/The%20Sedona%20Conference%C2%AE%20Glossary.

STIPULATION AND [PROPOSED] ORDER
GOVERNING THE PRODUCTION OF DOCUMENTS - 1
80001.0042/11115658.2

electronically, regardless of the media or whether it is the original format in which it was created.

D. **"Hard Copy Documents"** means all writings that are physical, tangible, paper originals or copies.

E. **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, flash drive, server, cloud based storage, virtual machine, or other device on which data is or was stored.

F. **"Metadata"** means information about information or data about data and typically refers to information or data describing the history, tracking, or management of an electronic file. Metadata includes, without limitations: (1) embedded data or information that is embedded in or associated with a Native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native file and/or (2) information generated automatically by the operation of a computer or other information technology system when a Native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

G. "**Native**", "**Native Format**" or "**Native Data Format**" means the format of ESI in which it was created or is ordinarily maintained in the usual course of business.

H. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing and creating a file containing visible text within an image.

## III. PRODUCTION FORMAT

A. **Hard Copy Documents.** Hard Copy Documents and their attachments will be produced as follows:

1. **Single page Group IV TIFF format (300 dpi).** Each image should have a unique file name, which is the Bates number of the page. Where possible, original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape) and the Bates number and confidentiality legend (if any) shall be outside of the margins of the imaged pages. All

documents shall be scanned and produced as black and white 1-bit TIFF images with the exception of all photographs, charts, and graphs which should be produced as single page JPGs with jpeg compression at 300 dpi. The parties reserve the right after initial production to specially request specific documents in color or in higher resolution or without compression.

  2. **OCR Text Files.** OCR shall be provided in multi-page text files. Text files shall be encoded in UTF-8. Text files shall be named for the beginning Bates number of the first page of the document it contains the text for.

  3. **Coding Fields**. The following information shall be produced with the Hard Copy Documents:

    a. Beginning Document Bates Number;

    b. Ending Document Bates Number;

    c. Attachment Beginning Bates Number;

    d. Attachment Ending Bates Number;

    e. Custodian or source;

    f. Page Count;

    g. Redaction (Y/N);

    h. Confidential Designation

    i. Relative path to OCR Text File;

  4. **Database Load Files/Cross-Reference Files.** Each production of Hard Copy Documents shall be accompanied by both a Concordance delimited file (.dat) and an Opticon delimited image load file (.opt), as detailed in Exhibit B.

  5. **Bates Numbering.** All images must be assigned a Bates/control number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces;

(4) be sequential within a given document.

6. **Unitizing of Documents.** In scanning Hard Copy Documents, such documents are to be produced as they are kept in the normal course of business. For Hard Copy Documents found in file folders and other containers that have labels or tabs or other identifying information, such labels and all sides of such file folders and tabs shall be scanned. In the case of an organized compilation of separate Hard Copy Documents— for example, a binder containing several separate Hard Copy Documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Hard Copy Documents will be unitized at the lowest possible level and attachment information preserved. For example, if a folder contains two Hard Copy Documents, the folder and each document will constitute a separate document, but they will have the same attachment start and end.

B. **Electronically Stored Information ("ESI").** ESI and their attachments will be produced as follows:

1. **Native Format.** Native format production shall be used for non-standard files including audio and video files, presentation files that include or are similar to Microsoft PowerPoint, spreadsheet files that include or are similar to Microsoft Excel, .csv files, database files that include or are similar to Microsoft Access, Google Sheets, and any other such files according to specifications in Sections III.B.2.j through III.B.2.n. A single page TIFF Slipsheet/Placeholder document that contains the Native File name and a Production/Bates number shall be produced in its place. Each party shall also produce in the load file(s) a link in the "NativeLink" field, along with all extracted text and applicable Metadata fields available at the time of collection and processing set forth in Exhibit A.

2.  **Images**. All ESI documents other than those identified above in Section III.B.2.i will be produced in single page black and white 1-bit Group IV TIFF format (300 dpi) with extracted text, along with the Metadata available at the time of collection and processing set forth in Exhibit A that exist for a particular item, in both a Concordance delimited file (.dat) and an Opticon delimited file (.opt), as detailed in Exhibit B. Each image should have a unique file name, which is the Bates number of the page. Where possible, original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape) and the Bates number and confidentiality legend (if any) shall be outside of the margins of the imaged pages. All documents shall be scanned and produced as black and white 1-bit TIFF images with the exception of all photographs, charts, and graphs which should be produced as single page JPGs with jpeg compression at 300 dpi. Hidden content, tracked changes or edits, comments, notes (including presentation speaker/slide notes), and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image. The parties reserve the right after initial production to specially request specific documents in color or in higher resolution or without compression.

3.  **OCR.** If a document contains no extracted text, OCR text shall be provided. Extracted text shall always be used when available. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape) when possible.

4.  **Text Files.** For each document, the text of Native files will be extracted and provided as a single text file for each document. Text files will be encoded in UTF-8. All text files should match the name of the first page of the document (EX_0000001). However, if a document has been redacted, OCR of the redacted text will suffice.

5.  **System Files.** All documents shall pass through a DeNISTing process before being produced. Common system and program files need not be processed, reviewed, or

STIPULATION AND [PROPOSED] ORDER
GOVERNING THE PRODUCTION OF DOCUMENTS - 5
80001.0042/11115658.2

produced.

6. **De-Duplication.** All parties shall de-duplicate (based on MD5 hash values at the family level) globally across custodians. De-duplication shall not break apart families. To the extent the parties agree to add new custodians after initial productions of documents, the parties shall meet and confer to discuss a method by which to provide updated .DAT file to identify the new custodians on any newly-collected documents that are de-duplicated against previously-produced documents.

7. **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved and properly populated as attachment ranges in the load file.

8. **Family Groups.** A document and all other documents in its attachment range constitute a family group. If one document within a family is non-responsive it will be produced along with the responsive documents in the same family group. If a document is withheld on privilege grounds, all non-privileged documents within the family will be produced. Each individual document will be treated separately even if it they are part of the same family and placed individually on a privilege log.

9. **Database Load Files/Cross-Reference Files.** Documents should be accompanied by both a Concordance delimited file (.dat) and an Opticon delimited file (.opt), as detailed in Exhibit B.

10. **Bates Numbering.** All images must be assigned a Bates/control number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

11. **Embedded Objects.** The parties agree to meet and confer over the inclusion or exclusion of embedded files from the production.

12. **Spreadsheets**, including Microsoft Excel Spreadsheets, Microsoft Access, and Google Sheets, shall be produced in native format with a single page TIFF Slipsheet/Placeholder document that contain the Native File name and a Bates number in its place. Each party shall also produce with a link to the native file in the "NativeLink" field, along with all extracted text and applicable Metadata fields set forth in Exhibit A. If a spreadsheet requires redactions, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

13. **Audio and video files** in any form including but not limited to VCR, DVD, or Blu-ray, and including any such files as may be contained in any other produced file or document, shall be produced as Native files with the source file path and applicable Metadata fields set forth in Exhibit A.

14. **Non-Standard Files.** To the extent their contents can be determined to be responsive and not privileged, files that are not reasonably amenable to conversion into TIFF format shall be represented in the form of a placeholder TIFF image as well as being produced in native format along with all extracted text and applicable Metadata fields set forth in Exhibit A. If production in native format is not practicable, the parties will meet and confer regarding an appropriate form of production.

15. **Native Format Documents.** The file name for documents produced in Native format will match the Bates number of the placeholder/slipsheet. A single-page TIFF Bates-numbered placeholder will be inserted in production sets for documents produced in Native format.

16. **Color.** All charts, photographs, graphs, and presentation materials, such as PowerPoint and Google Slides, will be produced in color as single-page 300 DPI JPGs. For any other color documents for which the black and white TIFF image affects the ability to interpret

the document, the Producing Party shall honor reasonable requests for production of a color image of the document.

17. **Time Zone.** UTC should be selected as the time zone.

18. **Databases.** To the extent a response to a discovery request requires production of discoverable ESI contained in a database, the parties will meet and confer to reach agreement on a production format. The production methodology and format may include querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or .CSV format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. The parties will also discuss at the meet and confer obligations to provide a supplemental report for records, and information post-dating the extraction of the Structured Data Report.

19. **Compressed files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files. The parent/child relationship of these files shall be preserved and reflected in the applicable attachment metadata fields listed in Exhibit A.

20. **Production Media.** A Producing Party shall produce documents on an external hard drive, DVD, CD-ROM, FTP (if under 10 GBs), or such other readily accessible computer or electronic media (the "Production Media"). Information that shall be identified on the face of the Production Media shall include (1) the production date and (2) the confidentiality notation required by the Protective Order entered in this case, if the Media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates number range(s) of the documents on the Production Media, and where not

practicable to do so, may be provided in an accompanying letter.  If the Producing Party encrypts the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

21. **Resolution of Production Issues.** Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party.  The Producing Party and the Receiving Party shall have their designated discovery liaisons attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

C. **Privilege Logs.**  Where a document is withheld from production because of an asserted privilege or work product claim, whether entirely or in part by redaction, the Producing Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data.  The privilege log must identify by date, author (name, employer, job title), recipient(s) (name, employer, job title), subject, Bates number range, description of the document, and the privilege asserted.  A Producing Party will produce a separate privilege log for each production within 60 days after the production of documents for which a privilege is asserted.  If the document withheld is a chain of privileged emails, the Producing Party need only include one entry on the privilege log for the entire e-mail chain.  The privilege log entry for the e-mail chain will provide the date, the author, and the recipient(s) of the last in time e-mail, and if there is any deviation in the participants or the dates of the earlier email in the chain, the log will also identify the date, the authors, and the recipient(s) of each of the other e-mails in the chain, individually, below the last in time email. The Producing Party does not need to include on its privilege logs the reasons for redactions from produced documents, provided the reason for the redaction appears on the document itself with a redaction label (e.g. A/C Privileged, Work Product, etc.).  To the extent possible, the production of a privilege log for a custodian shall be not less than 30 days prior to that custodian's deposition.  The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by

written agreement. The parties shall not redact any document based upon any objection related to the relevance or non-responsiveness of a document without seeking further relief from the Court pursuant to Rule 26(c).

D. **Inadvertent Disclosure.** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Specifically, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

In the event a Producing Party gives notice to the Receiving Party that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

E. **Miscellaneous Provisions**

1. Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

2. The parties understand that this protocol contemplates the production of large volumes of documents and that productions will be made on a rolling basis.

3. The parties' discovery liaisons shall discuss and, if necessary, shall meet and confer and endeavor to resolve any disputes arising hereunder before submitting such disputes to the Court for determination. Any such meet and confers are not limited to the parties' discovery liaisons.

4. Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

5. **Search Methodology.** The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms, and protocols. Before any search methodology is used, the parties agree to meet and confer to discuss and agree upon a search methodology, search terms and protocols, and disclosures related thereto.

**IT IS SO ORDERED.**

Dated: May 9, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

DATED this 9th day of May, 2018.

By /s/ Ian Mensher
Dean Kawamoto, Bar No. 232032
dkawamoto@kellerrohrback.com
Derek W. Loeser, admitted *pro hac vice*
dloeser@kellerrohrback.com
Gretchen S. Obrist, admitted *pro hac vice*
gobrist@kellerrohrback.com
Ian Mensher, admitted *pro hac vice*
imensher@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Ave, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

Thomas E. Loeser (Bar No. 202724)
toml@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594

*Attorneys for Plaintiffs*

By /s/ Mary Kate Kamka    (as authorized on 5/3/18)
John B. Sullivan (Bar No. 96742)
jbs@severson.com
Erik Kemp (Bar No. 246196)
ek@severson.com
Mary Kate Kamka (Bar No. 282911)
mkk@severson.com

SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 398-3344
Fax: (415) 956-0439

*Attorneys for Defendants*

STIPULATION AND [PROPOSED] ORDER
GOVERNING THE PRODUCTION OF DOCUMENTS - 12
80001.0042/11115658.2

# EXHIBIT A[2]

| Field Name | Populated For (Email, Edoc or Both) | Field Description |
|---|---|---|
| ProdBeg | Both | First production Bates number of the document |
| ProdEnd | Both | Last production Bates number of the document |
| BegAttach | Both | First production Bates number of the first document of the family |
| EndAttach | Both | Last production Bates number of the last document of the family |
| PgCount | Both | Page Count |
| Custodian | Both | Custodian name (Last Name, First Name) |
| NativeFile | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent – Format: (mm/dd/yyyy) |
| TimeSent | Email | Time email was sent – Format: (hh:mm AM) |
| DateMod | Edoc | Date the document was last modified – Format: (mm/dd/yyyy |
| TimeMod | Both | The time the document was last modified – Format: (hh:mm AM) |

---

[2] For ESI other than email and e-docs, such as text messages, Yahoo Messenger, iMessage, BlackBerry Messenger, Yahoo Chat, Google Chat, Bloomberg chats, text messages, intranet chat, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

| Field Name | Populated For (Email, Edoc or Both) | Field Description |
|---|---|---|
| To | Email | All recipients (separated by a semicolon) that were included on the "To" line of the email or calendar entry |
| From | Email | The name and email address of the sender of the email or calendar entry |
| CC | Email | All recipients (separated by a semicolon) that were included on the "CC" line of the email |
| BCC | Email | All recipients (separated by a semicolon) that were included on the "BCC" line of the email |
| Attach | Email | The file name(s) of the attached documents (separated by a semicolon) |
| DateCreated | Edoc | Date document was created – Format: (mm/dd/yyyy) |
| TimeCreated | Both | Time document was created- Format: (hh:mm AM) |
| FileName | Edoc | File name of the edoc |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |

STIPULATION AND [PROPOSED] ORDER
GOVERNING THE PRODUCTION OF DOCUMENTS - 2
80001.0042/11115658.2

| Field Name | Populated For (Email, Edoc or Both) | Field Description |
|---|---|---|
| Text Path | Both | Relative path to the text extracted from the email or edoc or text as created by OCR for documents that do not have any embedded text |
| FileSize | Both | File size |
| Filepath | Both | Folder location where e-document / email was stored. |
| AttachCount | Email | Number of email attachments |
| DateReceived | Email | Date received - Format: (mm/dd/yyyy) |
| TimeReceived | Email | Time an email was received – Format: (hh:mm AM) |
| HashValue | Both | MD5 value |
| LastModBy | Edoc | Last person who modified a document |
| DocumentType | Both | Descriptor for the type of document: "E-document" for electronic documents not attached to emails; "Emails" for all e-mails. "Hard Copy" hard copy physical documents that have been scanned and converted to an electronic image from paper. |
| Redacted | Both | "Yes" if document was redacted |
| OtherCustodians | Both | Names of any other custodians whose copy of the document was not produced – format: (last name, first names) with each name delimited by semicolons |

| **Field Name** | **Populated For (Email, Edoc or Both)** | **Field Description** |
|---|---|---|
| OtherCustodiansFilePaths | Both | Folder locations of documents held by other custodians whose copy of the document was not produced. Folder names shall be delimited by semicolons. |

# EXHIBIT B

## File Formats

### Image Load Files

1. The name of the image load file should mirror the name of the delivery volume, and should have an .opt (i.e., ABC001.opt)
2. The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)
3. There should be one row in the .opt load file per TIFF image.
4. Every image in the delivery volume should be contained in the .opt load file.
5. The image key should be named the same as Bates number of the page.
6. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

### Concordance Delimited Files:

7. The data load file should use standard Concordance delimiters:
   - Comma – ¶ (ASCII 20)
   - Quote – þ (ASCII 254)
   - Newline – ® (ASCII174)

8. The first line should contain the field names in the order of the data
9. All date fields should be produced in mm/dd/yyyy format;
10. Use carriage-return line-feed to indicate the start of the next record;
11. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;
12. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT);
13. The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)