Derek W. Loeser, admitted *pro hac vice*
dloeser@kellerrohrback.com
Dean Kawamoto (Bar No. 232032)
dkawamoto@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900, Fax (206) 623-3384

Thomas E. Loeser (Bar No. 202724)
toml@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292, Fax (206) 623-0594

**Attorneys for Plaintiffs**
*(Additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| EUGENIO AND ROSA CONTRERAS, WILLIAM PHILLIPS, TERESA BARNEY, KEITH AND TERESA MARCEL, SHERLIE CHARLOT, JENNIE MILLER, and EDWIN YAGER, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; SOLUTIONSTAR, LLC (N/K/A XOME HOLDINGS LLC), a Delaware Limited Liability Company; and DOES 1 through 1000,<br><br>       Defendants. | No. 2:16-cv-00302-MCE-EFB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT IN PART**<br><br>Date:  December 13, 2018<br>Time:  2:00 p.m.<br>Ctrm.:  7<br>Judge:  Hon. Morrison C. England, Jr. |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 1

     A.   Defendants' property inspection practices constitute racketeering in violation of RICO. ........................................................................ 1

     B.   Plaintiffs have provided Defendants notice and an opportunity to cure—Defendants have done nothing ..................................................... 2

     C.   Plaintiff Yager provides allegations demonstrating the timeliness of his California claim. ................................................................... 3

III.  LEGAL STANDARD ................................................................................ 3

IV.  ARGUMENT ............................................................................................. 3

     A.   Defendants' illegal property inspection scheme constitutes racketeering activity that has and continues to harm Plaintiffs and the classes. .................. 3

          1.   Plaintiffs sufficiently allege that the property inspection scheme constitutes racketeering activity. ............................................. 4

          2.   Plaintiffs' detailed allegations establish the existence of the enterprise. ...................................................................... 8

          3.   Defendants' racketeering activity has proximately caused injury to Plaintiffs and the proposed nationwide class. ................... 10

          4.   Plaintiffs have sufficiently alleged a claim for conspiracy. ................ 11

     B.   Plaintiffs Contreras and Phillips have provided adequate pre-filing notice which Nationstar has ignored. ......................................... 11

     C.   As the Court has already held, Plaintiffs Barney, Marcel, and Yager need not provide Nationstar pre-suit notice. ........................................ 13

     D.   Phillips has properly alleged a claim under the Arizona Consumer Fraud Act. ................................................................................. 15

     E.   Yager timely filed his Rosenthal Act claim linked to his Pay-to-Pay fee scheme claims. ................................................................... 18

V.   CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ................................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 3, 11, 12

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ........................................................ 4, 5, 6, 7

*Boyle v. United States*,
    556 U.S. 938 (2009) ................................................................................................ 8

*Castle v. Barrett-Jackson Auction Co.*,
    229 Ariz. 471 (Ct. App. 2012) ............................................................................. 17

*Cedric Kushner Promotions, Ltd. v. King* (*Kushner*),
    533 U.S. 158 (2001) ............................................................................................ 9, 10

*Cooper v. Pickett*,
    137 F.3d 616, 627 (oth Cir. 1997) .......................................................................... 3

*Davis v. Bank of Am. Corp.*,
    No. 12-1059, 2012 WL 3637903 (D. Ariz. Aug. 23, 2012) ............................... 17

*Devore v. Nationstar Mortg. LLC*,
    No. 14-8063, 2015 WL 12426151 (D. Ariz. Mar. 11, 2015) .............................. 17

*Dunlap v. Jimmy GMC of Tucson, Inc.*,
    136 Ariz. 338 (Ct. App. 1983) ....................................................................... 15, 16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    750 F.3d 990, 997 (9th Cir. 2014) .......................................................................... 7

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089, 1092 (9th Cir. 2015) ...................................................................... 4

*Ellis v. JPMorgan Chase & Co.*,
    No. 16-17005, 2018 WL 4090102 (9th Cir. Aug. 28, 2018) ............................... 9

*Fitzgerald v. Chrysler Corp.*,
    116 F.3d 225 (7th Cir. 1997) .............................................................................. 10

*Fleck v. American Home Mortg. Servicing, Inc.*,
   No. CV–10–8256–PCT–DGC, 2012 WL 1622649 (D. Ariz. May 9, 2012) .................................... 17

*Giotta v. Ocwen Fin. Corp.*,
   No. 15-CV-00620-BLF, 2016 WL 4447150 (N.D. Cal. Aug. 24, 2016) ............................... 13, 14, 15

*Giotta v. Ocwen Loan Servicing, LLC*,
   706 F. App'x 421 (9th Cir. 2017) ........................................................................................ 13, 14

*Hill v. Nationstar Mortg. LLC*,
   No. 15-60106, 2016 WL 3950029 (S.D. Fla. Feb. 11, 2016) ..................................................... 12, 13

*Hollowell v. All. Bancorp, Inc.*,
   No. 10-1658, 2011 WL 2884801 (N.D. Cal. July 19, 2011) ........................................................ 13

*Jackson v. Atl. Sav. of Am.*,
   No. 13-5755, 2014 WL 4802879 (N.D. Cal. Sept. 26, 2014) ...................................................... 13

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
   46 F.3d 258 (3d Cir. 1995) ................................................................................................... 10

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ........................................................................................................ 18

*Komarova v. Nat'l Credit Acceptance, Inc.*,
   175 Cal. App. 4th 324 (2009) ............................................................................................... 19

*Leist v. Acad. Mortg. Corp.*,
   No. 16-314, 2016 WL 1593815 (D. Ariz. Apr. 20, 2016) ........................................................... 17

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ................................................................................................... 5

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ......................................................................................... 1, 2, 3, 6

*Mangum v. Action Collection Serv., Inc.*,
   575 F.3d 935 (9th Cir. 2009) ................................................................................................. 18

*Nelson v. Indevus Pharm., Inc.*,
   142 Cal. App. 4th 1202 (2006) .............................................................................................. 10

*Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*,
   No. 09-2079, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ......................................................... 16

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ........................................................................................................... 6

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ......................................................................7, 8, 9

*Parker v. Title & Tr. Co.*,
   233 F. 2d 505 (9th Cir. 1956) ............................................................................ 5

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014).............................................................. 5

*Rich v. BAC Home Loans Servicing LP*,
   No. 11-511, 2014 WL 7671615 (D. Ariz. Oct. 9, 2016) *aff'd sub nom. Rich v. Bank of Am., N.A.*, 666 F. App'x 635 (9th Cir. 2016) ................................................. 17

*Scott v. Cont'l Ins. Co.*,
   44 Cal. App. 4th 24 (1996) ............................................................................ 11

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ......................................................................................... 3

*Smith v. Flagstar Bank, FSB*,
   No. 18-2350, 2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) .......................... 14

*State of Ariz. ex rel. Woods v. Sgrillo*,
   176 Ariz. 148 (Ct. App. 1993) ....................................................................... 15

*Stitt v. Citibank, N.A.*,
   No. 16-17008, 2018 WL 4090104 (9th Cir. Aug. 28, 2018) ............................ 9

*United States v. Ali*,
   620 F.3d 1062 (9th Cir. 2010) ......................................................................... 6

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ....................................................................... 11

*United States v. Munoz*,
   233 F.3d 1117 (9th Cir. 2000) ......................................................................... 4

*United States v. Philip Morris Inc.*,
   304 F. Supp. 2d 60 (D.D.C. 2004) ................................................................... 4

*United States v. Reid*,
   533, F.2d 1255, 1263 (D.C. Cir. (1976) ........................................................... 4

*United States v. Turkette*,
   452 U.S. 576, 583 (1981) ............................................................................ 7, 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................... 3

*Villegas v. Transamerica Fin. Servs., Inc.*,
    147 Ariz. 100 (Ct. App. 1985) ...................................................................15, 16

*Volckmann v. Edwards*,
    642 F. Supp. 109 (N.D. Cal. 1986) ............................................................... 6

*Walker v. Gallegos*,
    167 F. Supp. 2d 1105 (D. Ariz. 2001) .......................................................... 17

*Weiner v. Ocwen Fin. Corp.*,
    No. 14-2597-MCE-DAD, 2015 WL 4599427 (E.D. Cal. July 29, 2015) ..............4, 5, 6, 7

*Wilson v. Gordon & Wong Law Group, P.C.*,
    No. 2:13-cv-00609, 2013 WL 6858975 (E.D. Cal. Dec. 24, 2013) ................................ 18

*Young v. Wells Fargo & Co.*,
    671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...................................................... 6

**Statutes**

Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 *et seq.*.................................... *passim*

Racketeer Influenced and Corrupt Orgnaizations Act, 18 U.S.C. § 1961, *et seq.*........................... *passim*

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et sq.*............................3, 17, 19, 20

**Other Authorities**

9th Cir. R. 36-3(a) ....................................................................................... 9, 13

*American Heritage Dictionary* (5th ed. 2017)....................................................... 11

*Black's Law Dictionary* (10th ed. 2014) ............................................................. 11

## I.     INTRODUCTION

Plaintiffs challenge Defendants' predatory practice of charging vulnerable borrowers fees for unnecessary and fraudulent property inspections and online or telephonic mortgage payments. The Court already upheld the core of Plaintiffs' case, even under the rigors of Rule 9 of the Federal Rules of Civil Procedure. Mem. & Order ("MTD Order"), ECF No. 19. The Court found just two sets of claims required amendment, which Plaintiffs have now addressed. And the Court has now permitted Plaintiffs to allege claims that Defendants' fraudulent property inspection scheme violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants challenge these amendments and improvidently seek reconsideration of one issue the Court has already put to rest. Their attack stumbles at each step and their latest attempt to avoid repaying fees they unfairly collected from putative class members should be rejected in its entirety.

## II.     FACTUAL BACKGROUND

### A.     Defendants' property inspection practices constitute racketeering in violation of RICO.

Plaintiffs' RICO claim concerns the same property inspection fee scheme alleged in the initial Complaint. *Compare* Compl. ¶¶ 10-18, 35-129, ECF No. 1, *with* Second Am. Compl. ("SAC") ¶¶ 11-19, 60-160, ECF No. 50. Plaintiffs allege that Nationstar uses a computerized loan servicing platform to automatically order property inspections on those borrowers in or at risk of default. SAC ¶ 12. The inspections are serially ordered without regard to their actual need. *Id.* Rather than order the inspections from third-party inspectors directly, Nationstar uses its affiliate, Solutionstar, to order and mark up the inspections conducted by third parties, profiting them both. *Id.* ¶¶ 12, 14, 16-18. This scheme also manufactures an otherwise unavailable mark-up on the true cost of the excessive and unneeded inspections. *Id.*

As alleged, the property inspection fee scheme constitutes racketeering activity under RICO, which requires allegations of an "enterprise" engaged in a "pattern of racketeering activity." *See Living*

*Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted). Nationstar, Solutionstar, and a variety of third-party property inspectors have created an enterprise distinct from each company's affairs to improperly charge and deceive a vulnerable class of borrowers by means of the unnecessary, inflated and fraudulent property inspections. *See* SAC ¶¶ 24-25, 322-61. The members of the enterprise coordinate and work together to facilitate the imposition and collection of illegal property inspection fees. *See id.* ¶¶ 25-34, 322-36, 337-61. They hide the fraudulent nature of the property inspections at every step and pass them off as legitimate and necessary expenses on the misleading bills sent to Plaintiffs. *Id.* ¶¶ 35-41, 322-36. In so doing, each member of the enterprise improperly collects unearned, fraudulent, and marked-up fees in the process, facilitated through use of mail or wire communications. *Id.* ¶¶ 42, 327-61. These racketeering acts have harmed Plaintiffs and the proposed class. *See id.* ¶¶ 184, 355, 359-60, 362-63.

**B.    Plaintiffs have provided Defendants notice and an opportunity to cure—Defendants have done nothing.**

In response to the Court's MTD Order, Plaintiffs have provided Nationstar with notice and an opportunity to cure as to Plaintiffs Contreras and Phillips.[1] *See* MTD Order at 6-8, 11; SAC ¶¶ 123, 128, Exs. 32-33 (notices). Plaintiffs sent their notices well over a year ago on August 15, 2017, incorporating the complaint and identifying specific allegations that had already put Nationstar on notice when it accepted service of the Complaint more than a year before that on March 17, 2016. SAC ¶¶ 123, 128, Exs. 32-33; Waivers of the Service of Summons, ECF Nos. 8-9. Plaintiffs also filed their First Amended Complaint ("FAC") on August 30, 2017. ECF No. 22. Despite being given an opportunity to cure, Defendants have done nothing. *See* SAC ¶¶ 124, 129.

---

[1] Plaintiffs' SAC also clarifies that Plaintiffs do not allege that Solutionstar participated in the Pay-to-Pay fee scheme.

**C.      Plaintiff Yager provides allegations demonstrating the timeliness of his California claim.**

The Court granted Plaintiff Yager leave "to sufficiently plead a basis for tolling the statute of limitations" as to his Rosenthal Act Pay-to-Pay fee scheme claim. MTD Order at 10-11. Yager added allegations that he was unaware at the time of being charged that these fees are only assessed to borrowers at risk of or in default. SAC ¶¶ 20-23, 172-75, 223, 234. As the Court has noted, "Plaintiff has adequately alleged a scheme to mislead borrowers by way of a Pay-to-Pay fee scheme that was not disclosed to those borrowers." MTD Order at 13; *see* SAC ¶¶ 172-73. So while Yager knew he paid a "convenience" fee in 2013, he did not and could not have reasonably learned it was a deceptive practice until late 2015 after obtaining detailed records and consulting with counsel. SAC ¶¶ 174-75, 182-87. He then filed his Complaint within the year—on February 12, 2016.

### III.      LEGAL STANDARD

Rule 8's notice pleading standard requires Plaintiffs to provide plausible grounds for relief, beyond simply "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must meet Rule 9's particularity requirements for claims grounded in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Averments of fraud must be "accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### IV.      ARGUMENT

**A.      Defendants' illegal property inspection scheme constitutes racketeering activity that has and continues to harm Plaintiffs and the classes.**

RICO is to "be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) (citation omitted). The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs*, 431

F.3d at 361 (citation omitted). Defendants attack just three of these elements: the racketeering activity,

enterprise, and proximate causation. But Defendants' arguments do not demonstrate any failures in

pleading. In fact, as set forth below, as to each element, the SAC provides plausible grounds for relief

and Defendants' motion should be denied.

      **1.**     **Plaintiffs sufficiently allege that the property inspection scheme constitutes racketeering activity.**

     RICO requires evidence of racketeering activity,[2] also known as "predicate acts." *See Agency*

*Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987). Congress has defined

"racketeering activity" to include both mail and wire fraud. 18 U.S.C. § 1961(1). "Mail fraud occurs

whenever a person, having devised or intending to devise any scheme or artifice to defraud, uses the

mail for the purpose of executing such scheme or artifice or attempting so to do." *Bias v. Wells Fargo &*

*Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal. 2013) (citation omitted).[3] As Defendants admit, "[m]ail and

wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation." Defs.' Mem

in Supp. of Mot. to Dismiss ("Mot.") at 10, ECF No. 53-1 (quoting *Eller v. EquiTrust Life Ins. Co.*, 778

F.3d 1089, 1092 (9th Cir. 2015)). But mail or wire fraud offenses do not necessarily require proof of any

misrepresentation of fact or affirmative false statement, so long as "'the matter mailed is utilized in

furtherance of or pursuant to the scheme to defraud.'" *See United States v. Philip Morris Inc.*, 304 F.

Supp. 2d 60, 70 (D.D.C. 2004) (quoting *United States v. Reid*, 533, F.2d 1255, 1263 (D.C. Cir. 1976));

*see also United States v. Munoz*, 233 F.3d 1117, 1131 (9th Cir. 2000) (same). As this Court has held,

racketeering activity may involve a fraudulent scheme to increase revenue for the members of the

---

[2] Though Plaintiffs must allege a pattern of predicate acts, Defendants do not challenge the alleged pattern of racketeering activity. This is not surprising given that Plaintiffs' allegations of the pattern of mail and wire fraud are substantial and detailed. *See* SAC ¶¶ 338-50, 356-58, 361.

[3] "The elements for wire fraud under [18 U.S.C. §] 1343 are substantively the same as mail fraud." *Bias*, 942 F. Supp. 2d at 937.

enterprise by imposing and collecting artificially inflated fees related to loan servicing. *See Weiner v. Ocwen Fin. Corp.*, No. 14-2597-MCE-DAD, 2015 WL 4599427, at *10 (E.D. Cal. July 29, 2015).

Defendants' use of the mail and wires to transmit mortgage statements demanding payment for marked-up and unreasonable property inspection fees constitute mail and wire fraud. SAC ¶¶ 290, 337-61. Each time Defendants transmit such demands, they affirmatively misrepresent and omit material information concerning inflated and fraudulent nature of the property inspection services, as well as the true nature of the relationship between and among the Defendants. *Id.* ¶¶ 353, 359-60.[4] And Defendants do so to deceive Plaintiffs and all members of the proposed class and to profit from the ongoing illegal exploitation of distressed borrowers. *See id.* ¶¶ 355, 359-61. These allegations are sufficient to demonstrate racketeering activity under Rule 9. *See Weiner*, 2015 WL 4599427, at *10 (finding similar allegations concerning monthly mortgage statements demanding payment for allegedly marked-up inspection fees sufficient to establish a RICO predicate act under Rule 9(b)); *Bias*, 942 F. Supp. 2d. at 938-39 (finding similar allegations of Wells Fargo's demands for reimbursement of marked-up and fraudulent property inspections constituted racketeering activity).

Defendants assert that fraud claims premised upon material omissions should be dismissed absent the existence of an independent duty to disclose the omitted information or a separate fiduciary relationship. Mot. at 11. But no fiduciary relationship is necessary to give rise to a claim for fraud: omissions are actionable so long as there is "'some relationship between the parties which gives rise to a duty to disclose such known facts.'" *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (citation omitted).[5] This includes the relationship between a borrower and the company servicing her/his loan.

---

[4] Ignoring these allegations, Defendants wrongly claim "Plaintiffs do not and cannot allege that [D]efendants made any affirmative misrepresentations." Mot. at 10.

[5] *See also Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) (concluding that a claim of fraud by omission may be pursued even in the absence of an independent or fiduciary duty to disclose information when a defendant voluntarily provides plaintiff with some information; by doing

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
SECOND AM. COMPL. IN PART - 5

*See Weiner*, 2015 WL 4599427, at \*10 (finding fraud allegations within a RICO claim sufficiently alleged against a mortgage servicer based upon nearly the same omissions alleged here); *Bias*, 942 F. Supp. 2d at 938-39 (same). And in addition to omissions, Plaintiffs allege that Defendants have made affirmative misrepresentations that are separately actionable as fraudulent racketeering activity. *See Volckmann v. Edwards*, 642 F. Supp. 109, 114-15 (N.D. Cal. 1986). Defendants affirmatively represented to consumers that certain "Distressed Mortgage Fees" including property inspections were authorized by their lender, actually occurred, and/or were appropriately priced. *See, e.g.*, SAC ¶¶ 251, 265, 290, 346, 350; *but see* Mot. at 10-11 (ignoring these allegations). But the fees were inflated because of Defendants' self-dealing, and were unauthorized, duplicative, unnecessary, and/or were never performed. *See, e.g.*, SAC ¶¶ 143 (noting that inspection fees have been charged for inspections that appear never to have occurred), 251, 265, 290, 346, 350. These allegations are sufficient to establish actionable, affirmative misrepresentations. *See, e.g.*, *Volckmann*, 642 F. Supp. at 115 (finding both affirmative misrepresentations and omissions sufficient to state a claim under RICO).

Defendants also claim the wire and mail fraud amount to nothing more than claims for breach of contract. Mot. at 12-13. But the mere fact that Plaintiffs have *also* pleaded a breach of contract claim does not preclude them from pursuing a RICO claim, whose elements are distinct from those of a breach of contract.[6] *See, e.g.*, *United States v. Ali*, 620 F.3d 1062, 1071 (9th Cir. 2010). Defendants' same argument has been rejected in similar cases. *See Bias*, 942 F. Supp. 2d at 938 n.18; *Weiner*, 2015 WL 4599427, at \*7; *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1033 (S.D. Iowa 2009). In *Bias*, the

---

so defendant imposes a duty upon itself); *Parker v. Title & Tr. Co.*, 233 F. 2d 505, 510 (9th Cir. 1956) (same).

[6] *Compare Living Designs*, 431 F.3d at 361 (The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'") (citation omitted), *with Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.").

court was "not persuaded by Wells Fargo's arguments that the [property inspection] fees were overall 'reasonable' and that the alleged conduct [including inflated property inspection fees] simply amounts to breach of contract." 942 F. Supp. 2d at 938 n.18. Similarly, in *Weiner*, this Court cited *Bias* and agreed that RICO allegations of "marked-up BPO fees on the accounts of borrowers in default" should be sustained against a mortgage servicer's challenge that "its conduct amounted, at most, to breach of contract." *Weiner*, 2015 WL 4599427, at *7 (citing *Bias*, 942 F. Supp. 2d at 938 n.18). The same result should be reached here.

Finally, Defendants wrongly claim that Plaintiffs have failed to allege fraudulent intent. Mot. at 12. As Defendants concede, to allege an "intent to deceive," a RICO plaintiff is required only to establish "'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension[.]'" *Id.* (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014)). Plaintiffs easily meet this requirement. As alleged, Defendants have orchestrated an illegal enterprise, engaged in a pattern of racketeering activity involving a "fraudulent scheme to increase revenue for the members of the enterprise." SAC ¶ 326. Nationstar uses an automated loan servicing platform to serially order property inspections through its affiliate Defendant Solutionstar, regardless of need or legality. *Id.* ¶¶ 12, 14, 16-18. Solutionstar then generates orders for inspections that are sent to third-party vendors who may or may not actually conduct an inspection of the borrower's property. *Id.* Solutionstar then artificially marks up the cost of the inspections before resubmitting them to Nationstar, who then charges the borrowers for the benefit of each member of the enterprise. *Id.* These allegations sufficiently demonstrate an intent to defraud. *See Weiner*, 2015 WL 4599427, at *10 (finding that mortgage statements which include marked-up fees for default-related services issued by defendants evidenced their intent to defraud).

### 2.     Plaintiffs' detailed allegations establish the existence of the enterprise.

To establish an association-in-fact enterprise, Plaintiffs need only allege that "both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Id.* at 551. Rather, Plaintiffs need only show the "ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Id.* at 552 (citation omitted); *see Boyle v. United States*, 556 U.S. 938, 946 (2009).

Citing just three paragraphs of the Second Amended Complaint, Defendants suggest that Plaintiffs have not pleaded facts showing "how [D]efendants were part of the enterprise, how the enterprise was organized, or how the members function as a 'continuing unit.'" Mot. at 14 (citing SAC ¶¶ 321-23). This puzzling argument ignores the more than fifty paragraphs in which Plaintiffs provide exactly these details. *See* SAC ¶¶ 24-44, 327-36 (detailing the enterprise), 337-61 (detailing the ongoing organization and its illegal activities).

First, Plaintiffs provide substantial allegations as to how each member participates in the enterprise separate from each company's affairs. *See id.* ¶¶ 32-39, 337-61. Nationstar abuses its role as a loan servicer by automatically ordering property inspections regardless of their need and legality. *See id.* ¶¶ 32-33, 327, 333-34. Solutionstar then acts in concert with Nationstar to hire property inspection vendors whose bills Solutionstar then marks up prior to remittance to Nationstar. *See id.* ¶¶ 32-33, 327, 334. And the property inspection vendors participate by accepting the orders and charging for inspections whether or not they actually occur. *Id.* ¶¶ 34, 327, 334. Plaintiffs explain in twelve subparagraphs how each Defendant "exert[s] substantial control over" the illegal scheme. *Id.* ¶ 334-35, 353. The members "direct[] and control[] the ongoing organization necessary to implement the scheme at meetings and through communications." *Id.* ¶ 336; *see id.* ¶¶ 337-61.

Second, Plaintiffs allege how the enterprise is organized. Though distinct legal entities, the members have created a "common communication network" through which they "share[] information on a regular basis" to order, bill and conduct "dubious," "unnecessary" and "fabricated" property inspections. *Id.* ¶¶ 32, 37-39, 327, 329. There are formal and informal agreements between the members, who use "systematic linkages to each other through corporate ties, contractual relationships, financial ties" to coordinate activities. *Id.* ¶¶ 330, 335. This organization facilitates the ongoing, illegal scheme.

Third, Plaintiffs allege how the members function as an ongoing unit. *Id.* ¶¶ 44, 327, 329-31, 337-61. The members have and continue to work in concert to generate unnecessary and improper property inspections through shared systems and through connections, as explained above. *Id.* ¶¶ 327, 332-35, 343, 350-61. This furthers the ongoing unit and sustains its practices. *See id.* And as to the unit's longevity, the Second Amended Complaint cites specific instances of the improper inspections charged to Plaintiffs from at least 2012 through 2016, as well as its ongoing nature. *Id.* ¶¶ 350, 361.

These allegations are no less detailed than those the Ninth Circuit upheld in *Odom*. There, the Court found sufficient allegations that at Microsoft and Best Buy "formed a vehicle for the commission of at least two predicate acts of fraud" wherein they "transferr[ed] plaintiffs' personal and financial information from Best Buy to Microsoft [which] allowed Microsoft to activate plaintiffs' Internet accounts without their knowledge or permission." *Odom*, 486 F.3d at 552. The two unpublished cases on which Defendants rely are inapposite. *See* Mot. at 14 (citing *Stitt v. Citibank, N.A.*, No. 16-17008, 2018 WL 4090104 (9th Cir. Aug. 28, 2018), and *Ellis v. JPMorgan Chase & Co.*, No. 16-17005, 2018 WL 4090102 (9th Cir. Aug. 28, 2018)). In these virtually-identical and non-precedential memorandum dispositions, the court curtly concluded there were no "facts showing that any combination of [the defendant] entities existed together as a single unit with a common purpose." *Stitt*, 2018 WL 4090104, at *1; *see Ellis*, 2018 WL 4090102 at *1 (same); *see* 9th Cir. R. 36-3(a) ("Unpublished dispositions and

orders of this Court are not precedent[.]"). When one reads the allegations that Defendants have decided

to ignore, Plaintiffs' SAC suffers no such similar defects.[7]

### 3. Defendants' racketeering activity has proximately caused injury to Plaintiffs and the proposed nationwide class.

Defendants curiously assert Plaintiffs have not alleged proximate cause because "Plaintiffs allege

no facts suggesting they relied on what the[ir] billing statements said." Mot. at 15. This is untrue.

Plaintiffs allege that they reasonably relied on Nationstar's billing statements and on their purported

accuracy. SAC ¶ 184. Plaintiffs were unaware of the fraudulent nature of the property inspection

charges, and as such were under no independent duty to investigate the legality of the charges. See id. ¶¶

184, 355; Nelson v. Indevus Pharm., Inc., 142 Cal. App. 4th 1202, 1206 (2006) ("[A] plaintiff's duty to

investigate does not begin until the plaintiff actually has a reason to investigate."). Plaintiffs relied on

the bills to be complete and accurate. See SAC ¶ 184. But Defendants obscured the charges for the fees

on the bills and never disclosed that they were inflated and unnecessary. See id. ¶¶ 353, 359-60. Had

they been aware of Defendants' fraudulent activity and/or the mark-ups included in their monthly

mortgage statements, Plaintiffs would have challenged the fees and refused to pay them. See id. ¶ 360.

Plaintiffs and the proposed class have suffered harm as a direct result of the fraudulent and inflated fees

that Defendants have charged them in each billing statement (which Defendants admit can satisfy

---

[7] Plaintiffs alternatively allege that each Defendant together with its officers, employees, and agents qualify as an enterprise. SAC ¶¶ 323-24, 333. Such a single legal entity enterprise can exist so long as there is some "distinctness between the RICO defendant and the RICO enterprise." Cedric Kushner Promotions, Ltd. v. King (Kushner), 533 U.S. 158, 162 (2001) (citation omitted). For example, in Kushner, the Court held that "[a] corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern . . . of activity,'" can create an enterprise. 533 U.S. at 164-65 (citation omitted). Plaintiffs similarly allege that both Nationstar's executives, employees, and agents alone have used Nationstar to conduct the illegal property inspection scheme separate from its own affairs. SAC ¶¶ 323-24, 333-34, 337-61. The same allegations are made as to Solutionstar. See id. The individual actors are named as Does 1 through 1000. This is sufficient to show an enterprise. See, e.g., Kushner, 533 U.S. at 164-65; Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227 (7th Cir. 1997); Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 265 (3d Cir. 1995).

proximate causation—Mot. at 15), as well as Defendants' ongoing effort to cover up and conceal the fraud.

### 4.       Plaintiffs have sufficiently alleged a claim for conspiracy.

Because Plaintiffs have sufficiently stated a RICO claim under 18 U.S.C. § 1962(c), the conspiracy claim under 18 U.S.C. § 1962(d) is similarly sufficient. Additionally, Plaintiffs have alleged how each defendant has participated in the conspiracy. SAC ¶¶ 327-60. As the Ninth Circuit has held, a defendant "could be convicted of conspiracy under § 1962(d) for his role in a scheme . . . even though he neither committed nor agreed to commit the predicate acts that are required for a substantive violation of § 1962(c)." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004). This is an alternative basis for denying Defendants' motion, as they do not challenge these allegations.

### B.       Plaintiffs Contreras and Phillips have provided adequate pre-filing notice which Nationstar has ignored.

Without citing any legal standard, Nationstar insists that it has not received pre-filing notice showing the "fees plaintiffs allege were wrongfully assessed or why." Mot. at 5. This is incorrect.

Because the deeds do not define the level of notice needed, Rule 8's "notice pleading" standard properly applies. *See* SAC Ex. 1, § 15 (stating that notice must be in writing); Ex. 2, § 15 (same); Ex. 1, § 20 (notice requirement); Ex. 2, § 20 (same). Under Rule 8, notice will be adequate if it provides plausible factual allegations describing the entitlement to relief. *Bell*, 550 U.S. at 555 n.3, 570. This aligns with common definitions of the term "notice." *See, e.g.*, *Scott v. Cont'l Ins. Co.*, 44 Cal. App. 4th 24, 29 (1996) (noting the propriety of using a dictionary to define the "ordinary" meaning of terms). The dictionary defines "notice" to mean "[a] formal announcement, notification, or warning[.]" Notice, *American Heritage Dictionary* (5th ed. 2017). And Black's Law Dictionary explains that notice will be given if Nationstar "(1) has actual knowledge of it; (2) has received information about it; (3) has reason

to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording." Notice, *Black's Law Dictionary* (10th ed. 2014).

More than a year ago Plaintiffs Contreras and Phillips provided Defendants notices sufficient to satisfy Rule 8 or any common understanding of the term "notice." Plaintiffs provided letter notices that incorporated the detailed complaint. *See* SAC Exs. 32-33. Plaintiffs then filed the First Amended Complaint (FAC) in August 2017, containing yet more detailed allegations. Defendants have received notice of specific factual allegations explaining when Contreras and Phillips fell behind on payments, how they were charged property inspection fees, and why the charges were improper. *See* Compl. ¶¶ 10-18, 35-98; *see also* FAC ¶¶ 118-29, 350. The notices also explain the applicable date range and why any more details are already in Nationstar's own billing records. *See* Compl. ¶¶ 93-98; FAC ¶¶ 118-29, 350.[8] Defendants cannot legitimately claim this is not adequate notice, given that the Court found these same core allegations to satisfy both Rule 8 *and* Rule 9. MTD Order at 7, 13;[9] *Bell*, 550 U.S. at 555 n.3, 570. Yet in the intervening fifteen months, Nationstar has done nothing to cure its unlawful conduct.

The primary case on which Nationstar relies fails to provide any basis for dismissal. *See* Mot. at 5 (citing *Hill v. Nationstar Mortg. LLC*, No. 15-60106, 2016 WL 3950029 (S.D. Fla. Feb. 11, 2016)). *Hill* is inapposite for two reasons. First, the pre-suit notices in *Hill* stated only that "*future* property inspections" were unreasonable and did not identify any reasons why the existing fees were improper. 2016 WL 3950029, at *1 (emphasis added). Second, the court in *Hill* had earlier dismissed all of the

---

[8] To the extent that Nationstar claims that Plaintiffs needed to identify the date of each wrongly charge fee, that information is well within Nationstar's own knowledge and control. *See* Mot. at 5. As a loan servicer who should maintain detailed billing records, Nationstar cannot plausibly claim that it lacks access to records sufficient to identify all of the property inspections at issue. And as alleged, all of the property inspections charged to these borrowers were improper, and the range of dates are provided. SAC ¶¶ 118-29, 350.

[9] While the Court has not fully determined whether these specific allegations against Nationstar meet Rule 8, it has found Plaintiff Contreras' substantively-identical allegations against Solutionstar sufficient to satisfy both Rule 8 and Rule 9. MTD Order at 7.

plaintiffs' claims against Nationstar without finding *any* of them adequately alleged under Rule 8 or Rule 9. *Id*. Here, by contrast, the Court has already found the core allegations concerning the property inspection fee scheme and Plaintiff Contreras' claims against Solutionstar to satisfy both Rule 8 and Rule 9. And the notices here do not simply say that future inspection fees are improper. Instead, they identify past improper fees and the reasons why they are impermissible. *Hill* is not on point.

Nationstar's citation to three other cases is also unhelpful because none of them discusses what constitutes sufficient pre-suit notice. *Giotta v. Ocwen Fin. Corp.*, No. 15-620, 2016 WL 4447150, at *6 (N.D. Cal. Aug. 24, 2016) (rejecting defendants' argument that the notice and cure provision applied in the first instance and providing no discussion of what constitutes sufficient pre-suit notice); *Jackson v. Atl. Sav. of Am.*, No. 13-5755, 2014 WL 4802879, at * 6 (N.D. Cal. Sept. 26, 2014) (no discussion of sufficiency of pre-suit notice); *Hollowell v. All. Bancorp, Inc.*, No. 10-1658, 2011 WL 2884801 (N.D. Cal. July 19, 2011) (same). Nationstar has received adequate notice.

## C.     As the Court has already held, Plaintiffs Barney, Marcel, and Yager need not provide Nationstar pre-suit notice.

The Court has already ruled that Plaintiffs Barney, Marcel, and Yager do not have to provide Defendants an opportunity to cure before filing suit. MTD Order at 8-12. Based on one paragraph of a non-precedential, unpublished decision, Nationstar[10] asks the Court to reconsider its decision. *See* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent[.]").

The unremarkable order on which Nationstar newly and improperly relies does not announce a new legal standard. *See* Mot. at 5-7 (citing *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421 (9th Cir. 2017)). The *Giotta* order affirms this Court's reasoning. As this Court held, "successors and assignees of the lender are benefitted by the notice-and-cure provision and are entitled to invoke it."

---

[10] Defendants again fail to argue that Solutionstar is entitled to benefit from the notice and cure provision of the deeds of trust. Defendants' motion is thus limited to Nationstar, only. *See also* MTD Order at 7 ("[N]owhere does Solutionstar claim it was a successor or assignee of the lender.")

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
SECOND AM. COMPL. IN PART - 13

MTD Order at 6. This is consistent with the terse holding in *Giotta* that the notice provision applied to the lender's assignee of servicing rights. 706 F. App'x at 422. Nationstar tries to manufacture tension between these decisions. It claims this Court held that the notice provision only applies "to borrowers whose loans are allegedly **owned** by Nationstar." Mot. at 6 (emphasis added). This is incorrect. Like *Giotta*, this Court held that any lender's assignee could invoke the notice and cure provision: "a lender's successors and assignees would receive the benefits of the contract—including the notice and cure provision—**without exception**[.]" MTD Order at 6 (emphasis added). *Giotta* provides no new standard or basis for dismissal.

Defendants also incorrectly claim that *Giotta* stands for the proposition that any servicer is automatically an assignee of the lender entitled to pre-suit notice. *See* Mot. at 6. But the Ninth Circuit made no such pronouncement in its non-precedential order. Instead, the court found the notice provision applied because "the record" contained an *express assignment* from the lender to the defendant servicer. *Giotta*, 706 F. App'x at 422. In contradistinction, this Court was "not convinced . . . that either Nationstar or Solutionstar are assignees of the lenders with respect to the mortgages of . . . Barney, Yager . . . and Marcels [and] Defendants are therefore not entitled to notice and an opportunity to cure with respect to those Plaintiffs." MTD Order at 6.[11] Nothing has changed. "The salient question" remains "whether Defendants are successors or assignees of the lender for each Plaintiff's mortgage." *Id.* But Nationstar continues not to argue or identify that it is the lender's assignee—the irreducible minimum to invoke the notice-and-cure provision. *See id.* at 5-6.[12] Instead Defendants argue that

---

[11] Indeed, this Court provided a detailed analysis as to Plaintiffs Barney, Marcel, and Yager and why there was no basis on which to find Nationstar to be the lenders' assignee. MTD Order at 8, 10, 12.

[12] Defendants rely on *Smith v. Flagstar Bank, FSB*, No. 18-2350, 2018 WL 3995922, at *4 (N.D. Cal. Aug. 21, 2018), a case that lacks any persuasive application. Without citing any allegations or evidence, the court in *Smith* concluded that the servicer was an assignee of the lender. This renders the case factually inapplicable. And to the extent the case cites *Giotta* for the proposition that a loan servicer is always an assignee of the lender, that reading misconstrues *Giotta*. There must be evidence that the servicer is the lender's assignee. MTD Order at 6; *Giotta*, 706 F. App'x at 422.

because "Nationstar is the servicer of all the Fannie/Freddie Plaintiffs' loans [it] is thus entitled to the benefit of pre-suit notice regardless of whether or not it also owned the loans." Mot. at 6. This applies the wrong standard under this Court's existing order and *Giotta*. Nationstar must show it is the lender's assignee. *See* MTD Order at 5-6. Defendants have not done so and their argument thus fails.

Even if Nationstar had shown it was a lender's assignee—which it hasn't—provision of notice would be futile. Nationstar has been on notice of Barney's, Marcel's, and Yager's claims since they were filed in 2016. And as to Contreras and Phillips, Nationstar continues to claim it has not received sufficient notice despite having received notices that contain allegations that the Court found sufficient under Rules 8 and 9. Nationstar has never attempted to cure any of the harms alleged and provides no evidence in its motion that it intends to do so as to Plaintiffs Barney, Marcel, and Yager.[13]

**D.    Phillips has properly alleged a claim under the Arizona Consumer Fraud Act.**

Defendants' practice of charging Phillips for fraudulent and inflated property inspections violates the Arizona Consumer Fraud Act ("ACFA"). Defendants claim that Phillips has not alleged a necessary element of the claim—a "sale of merchandise." Mot. at 2. This argument mischaracterizes the law and ignores Phillips' factual allegations.

"The elements of a private cause of action under the [ACFA] are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342 (Ct. App. 1983). The ACFA, which is to be construed liberally, defines "merchandise" broadly to include "real estate or services." Ariz. Rev. Stat. § 44-1521(5); *State of Ariz. ex rel. Woods v. Sgrillo*, 176 Ariz. 148, 149 (Ct. App. 1993) (discussing the ACFA's "breadth" in defining the term "merchandise" and holding that consumer information constituted merchandise). The term "merchandise" also includes the

---

[13] Should the Court conclude that Nationstar is entitled to notice and an opportunity to cure, Plaintiffs Barney, Marcel, and Yager seek leave to provide such notice.

origination of a mortgage loan because money given from the lender qualifies as merchandise. *Villegas v. Transamerica Fin. Servs., Inc.*, 147 Ariz. 100, 102-03 (Ct. App. 1985); *Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*, No. 09-2079, 2010 WL 1759453, at *4 (D. Ariz. Apr. 30, 2010).

Defendants have sold Phillips "merchandise" in two ways under the ACFA.

*First*, because Nationstar is the original lender on Phillips' mortgage and deed of trust, it made a sale of "merchandise" when it lent money to Phillips. *See Villegas*, 147 Ariz. at 102-03. This Defendants do not dispute. Mot. at 7 & n.2. As part of that sale, Nationstar promised that any charges throughout the life of the loan would be "reasonable." *See* SAC Ex. 2, § 9. By charging Phillips for unreasonable inspections, Nationstar has broken that promise—making its initial promise "false" and actionable under the ACFA. Defendants wrongly suggest that because the inspections occurred after origination, they are unrelated to the original sale of merchandise. Mot. at 7-8. But this argument ignores that at the time of origination, Nationstar promised that any default-related charges would be "reasonable or appropriate." SAC Ex. 2, § 9. This promise binds Nationstar throughout the life of the loan, not just at the time of origination. To hold otherwise would render the promise meaningless.

*Second*, each time Defendants order and bill Phillips for unreasonable inspections, they have made a *new* "sale of merchandise" by means of false and misleading statements. The property inspections qualify as "merchandise" because the statute explicitly defines the term to include "services," like property inspections. Ariz. Rev. Stat. § 44-1521(5). Each act of billing, demanding and collecting money for services constitutes a sale, which under the ACFA means broadly any exchange of merchandise "for any consideration." *Id.* § 44-1521(7). Defendants argue that the inspections Nationstar orders "do not result in the sale or advertisement of any new merchandise" to Phillips. Mot. at 7-8. This is incorrect. Nationstar "sells" the property inspection service each time it orders the inspections and bills Phillips. *See id.* at 11 (admitting the billing statements identify the property inspection charges).

And each such sale violates of the ACFA by misrepresenting and omitting material facts about the fraudulent and misleading nature of the property inspections. *Dunlap*, 136 Ariz. at 342.

Defendants insinuate that Phillips seeks to hold them vicariously liable. Mot. at 8. This is incorrect. Because the ACFA contains no privity requirement, a plaintiff may sue all defendants who have participated in the conduct. *See Leist v. Acad. Mortg. Corp.*, No. 16-314, 2016 WL 1593815, at *5 (D. Ariz. Apr. 20, 2016). Phillips sues Defendants because they participated in the actionable, fraudulent and deceptive conduct, which is permitted under the ACFA. Both cases on which Defendants rely merely suggest that entities who do not participate in the underlying misrepresentations and fraud cannot be liable under the ACFA.[14] Mot. at 6; *Fleck v. Am. Home Mortg. Servicing, Inc.*, No. 10-8256, 2012 WL 1622649, at *3 (D. Ariz. May 9, 2012) (dismissing an ACFA claim against a loan servicer because it was not shown to have participated in the fraud or deception); *Castle v. Barrett-Jackson Auction Co.*, 229 Ariz. 471, 473 (Ct. App. 2012) (affirming dismissal of claims against an auction-provider who had not participated in any of the underlying deception or fraud). These cases are inapposite. Both Nationstar and Solutionstar are alleged to have participated in the property inspection scheme. *See* Mot. at 8 (admitting Nationstar orders property inspections through Solutionstar); SAC ¶¶ 11-18, 24-42, 281-82.

---

[14] The cases cited in Defendants' footnote 3 also fail to support Defendants' position. They merely reinforce the irrelevant point that the offer of a possible loan modification or the repossession of collateral does not qualify as a sale of merchandise. *Rich v. BAC Home Loans Servicing LP*, No. 11-511, 2014 WL 7671615, at *10 (D. Ariz. Oct. 9, 2016) *aff'd sub nom. Rich v. Bank of Am., N.A.*, 666 F. App'x 635 (9th Cir. 2016) (communications about a potential loan modification was not a sale of merchandise); *Devore v. Nationstar Mortg. LLC*, No. 14-8063, 2015 WL 12426151, at *8 (D. Ariz. Mar. 11, 2015) (same); *Davis v. Bank of Am. Corp.*, No. 12-1059, 2012 WL 3637903, at *5-6 (D. Ariz. Aug. 23, 2012) (promise to comply with a modification program is not sale of merchandise where there was no money exchange or services provided); *Walker v. Gallegos*, 167 F. Supp. 2d 1105, 1108 (D. Ariz. 2001) (alleged repossession of collateral too attenuated from the original sale to qualify as a sale of merchandise).

**E.       Yager timely filed his Rosenthal Act claim linked to his Pay-to-Pay fee scheme claims.**

Under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Yager must have brought his claims within one year of the alleged violation. Cal. Civ. Code § 1788.30(f); MTD Order at 10 (citing 15 U.S.C. §§ 1692e, 1692f(1) and Cal. Civ. Code § 1788.17). The one-year period of accrual is subject to the discovery rule. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988); *see also Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (applying the discovery rule to Fair Debt Collection Practices Act ("FDCPA") claims). This means that the statute of limitations "begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly*, 44 Cal. 3d at 1110; *see also Wilson v. Gordon & Wong Law Grp., P.C.*, No. 13-609-MCE-KJN, 2013 WL 6858975, at *5 (E.D. Cal. Dec. 24, 2013) (noting that "the FDCPA limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action") (citations omitted)).

Yager timely filed his Pay-to-Pay fee claims within one year of discovering or having reason to know that the Pay-to-Pay fees were improper and unlawful. The wrongdoing at issue here is Nationstar's unauthorized, deceptive and impermissible practice of charging only those in or at risk of default for making telephonic or online payments. *See* SAC ¶¶ 20-21, 276. As the Court has recognized, this scheme is adequately alleged to be misleading and undisclosed to borrowers. *See* MTD Order at 9, 13-14. So while Yager knew in January 2013 he was charged a convenience fee for paying over the phone, he was unaware and had no reason to suspect that the Pay-to-Pay fees were unevenly and improperly assessed to distressed borrowers. SAC ¶¶ 172, 175. This fact was never disclosed on Yager's billing statements, which failed to identify which fees were associated with telephonic payments. *Id.* ¶ 173. It was not until late 2015 when Yager consulted with counsel that he had reason to know that Nationstar charged him these fees only because he had missed mortgage payments. *Id.* ¶¶ 173-74. And Nationstar

has not identified any publicly-available information that Yager somehow ignored in the interim. Yager filed suit within one year of the claim accruing under the discovery rule.

Even if the statute began to accrue earlier, Yager is entitled to equitable tolling. Equitable tolling may apply "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Wilson*, 2013 WL 6858975, at *5 (citation omitted). Equitable tolling applies precisely to this case where Nationstar continues to hide the true nature and extent of the Pay-to-Pay fee scheme. At no time prior to Yager filing suit did Nationstar make him aware that the telephonic payment fees he paid were only applicable to distressed borrowers. None of the bills he received contained this information, SAC ¶ 172, and none identified which charges were even related to telephonic payments. *Id.* ¶ 173. This deceptive pattern of conduct kept hidden the misconduct, and Yager should not be penalized for not uncovering the misconduct earlier. *See* MTD Order at 9, 13-14 (recognizing the alleged scheme as misleading and undisclosed). Yager's claims should be equitably tolled and decided on the merits.[15]

As Defendants' acknowledge, Yager's Rosenthal Act is based only in part on the Pay-to-Pay fee scheme. He also brings the claim as to the property inspection scheme. Defendants have not challenged those claims. *See* Mot. at 8; SAC ¶¶ 270-77 (alleging violations of the Rosenthal Act premised on both the Pay-to-Pay *and* Property Inspection fee schemes). This is not surprising given that the property inspection fees are part of an ongoing and continuing violation, and Yager filed suit within one year of the last violation. FAC ¶ 350 (noting a property inspection fee charged on December 2, 2015); *see Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009) (applying the continuing violation doctrine to Rosenthal Act violation). Defendants have waived any challenge to these claims.

---

[15] Plaintiffs note that Defendants have not challenged Plaintiffs Miller and Charlot's Pay-to-Pay fee scheme claims.

## V.    CONCLUSION

Defendants have cobbled together a series of attacks on Plaintiffs' Second Amended Complaint. But not one raises a colorable basis for dismissal. Plaintiffs' robust and detailed allegations supporting their RICO claim comply with the heightened pleading requirements of Rule 9. Both Plaintiffs Contreras and Phillips have exhausted the notice-and-cure provision of their deeds of trust and have satisfied all procedural hurdles. The notice-and-cure provision continues not to apply to Plaintiffs Barney, Marcel, and Yager. And Plaintiff Phillips has properly made out an ACFA claim, while Yager's Pay-to-Pay fee scheme Rosenthal Act claim is timely filed. The motion to dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED this  29th day of November, 2018.

By /s/ Ian Mensher
    Derek W. Loeser, admitted *pro hac vice*
    dloeser@kellerrohrback.com
    Dean Kawamoto (Bar No. 232032)
    dkawamoto@kellerrohrback.com
    Gretchen S. Obrist, admitted *pro hac vice*
    gobrist@kellerrohrback.com
    Ian Mensher, admitted *pro hac vice*
    imensher@kellerrohrback.com
    **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Tel: (206) 623-1900
    Fax: (206) 623-3384

    Thomas E. Loeser (Bar No. 202724)
    toml@hbsslaw.com
    **HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
    1301 Second Avenue, Suite 2000
    Seattle, WA 98101
    Tel: (206) 623-7292
    Fax: (206) 623-0594

    ***Attorneys for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 29, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn sent notice to all counsel of record.

<u>/s/ Ian Mensher</u>
Ian Mensher