UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENIO AND ROSA CONTRERAS, WILLIAM PHILLIPS, TERESA BARNEY, KEITH AND TERESA MARCEL, SHERLIE CHARLOT, JENNIE MILLER, and EDWIN YAGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; SOLUTIONSTAR, LLC (N/K/A XOME HOLDINGS LLC), a Delaware Limited Liability Company; and DOES 1 through 1000,<br><br>Defendants. | No. 2:16-cv-00302-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through this class action, Plaintiffs Eugenio and Rosa Contreras ("Contreras"), William Phillips ("Phillips"), Teresa Barney ("Barney"), Keith and Teresa Marcel ("Marcel"), Sherlie Charlot ("Charlot"), Colleen Ann O'Halloran ("O'Halloran"), Jennie Miller ("Miller"), and Edward Yager ("Yager"), individually and behalf of others similarly situated, seek relief from Defendants Nationstar Mortgage LLC ("Nationstar"), Solutionstar LLC ("Solutionstar"), and Does 1-1000, arising from fees assessed during

the course of the loan.  According to the operative Second Amended Complaint ("SAC"), both Nationstar and Solutionstar are subsidiaries of Nationstar Mortgage Holdings, Inc. Plaintiffs claim that Defendants unfairly and excessively charged them for distressed mortgage fees.  Specifically, Plaintiffs allege Defendants engaged in two schemes to generate unwarranted fees: an Inspection Fee Scheme and a Pay-to-Pay Scheme. Plaintiffs further allege that Nationstar orders these property inspections through its affiliate Solutionstar to unfairly mark-up charges to borrowers.

Presently before the Court is Defendants' Motion to Dismiss parts of the SAC (ECF No. 53).  Plaintiffs and Defendants filed timely oppositions and replies to the motion. ECF Nos. 56 and 57.  For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND

Plaintiffs allege that Nationstar and its affiliate, Solutionstar, participated in two general schemes: the "Inspection Fee Scheme" and the "Pay-to-Pay Scheme."  Plaintiffs Contreras, Phillips, Barney, Marcel, Charlot, and O'Halloran, on behalf of themselves, the nationwide classes, and their respective state-specific sub-classes, allege Nationstar used a computerized loan servicing platform that automatically ordered an inspection of the mortgaged property when a borrower defaulted on a loan.  Nationstar sent these orders to Solutionstar, who in turn paid a third party to perform the actual inspection so that Solutionstar could mark up the inspection fees charged to borrowers (the "Inspection Fee Scheme").  Plaintiffs Yager, Miller, and Charlot, also on behalf of themselves, the nationwide classes, and their respective state-specific sub-classes, further contend that Nationstar charged them a fee to make online or telephone payments (the "Pay-to-Pay

////

---

[1] Having determined that oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing in accordance with E.D. Local Rule 230(g).

Scheme"). Plaintiffs say this fee was charged only to defaulting borrowers or those who appeared to be at risk of default.

Specifically, Plaintiffs allege common law claims for breach of contract against Nationstar (Count I), breach of the implied covenant of good faith and fair dealing against Nationstar (Count II), and unjust enrichment against Nationstar (Count III). Plaintiffs' Complaint also alleges violations of: (1) Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.605, et seq. (Count IV); California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (Count V); (3) Rosenthal Fair Debt Collection Practices Act ( "Rosenthal Act"), Cal. Civ. Code § 1788, et seq. (Count VI); (4) Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1522, et seq. (Count VII); Florida's Unfair and Deceptive Trade Practices Act ("DUTPA"), Fla. Stat. § 501.201, et seq. (Count IX); Illinois' Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), 815 Ill. Comp. Stat. Ann. 505/2, et seq. (Count X); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), et seq. (Count XI).[2]

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

---

[2] The SAC does not re-allege Plaintiffs' original Count VIII (Massachusetts' Regulation of Business Practice and Consumer Protection Act) (labeled "Reserved" in Table of Contents), which is hereby DISMISSED with prejudice. Counts IV through XI are made against both Defendants, with the exception of Count VI which alleges violation of California's Rosenthal Act against Nationstar only.

3

47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.  Notice-and-Cure Provision

#### 1.  Plaintiffs Contreras and Phillips

This Court previously found that Nationstar was entitled to pre-suit notice and an opportunity to cure from Plaintiffs Contreras and Phillips and granted Plaintiffs leave to amend to allege compliance.  In response, Plaintiffs' attorneys sent two certified letters to Defendant's attorney, one on behalf of the Contreras and the other on behalf of Phillips ("Letters"); Plaintiffs have attached a copy of both Letters to the SAC.  See SAC Exs. 32-33.  The Letters, both dated August 15, 2017, provide:

> Pursuant to Section 20 of the Deed of Trust, which requires only a reasonable period to cure, [Plaintiffs] grant Nationstar Mortgage, LLC **10 days** from receipt of this letter to cure the contractual breaches and make [Plaintiffs], and the class they seek to represent, whole for such breaches.

Id.  According to Plaintiffs, they have not "received any response to the August 15 notice and cure letter or been provided any evidence of any cure."  SAC, ECF No. 50, at 33, 34.

Nationstar challenges the sufficiency of the notice, specifically pointing out that the Letters fail to allege which fees were wrongfully assessed or why.  The Court is not
5

persuaded by this argument from Nationstar.  The Letters refer to specific paragraphs in the original Complaint with corresponding factual allegations.  SAC Exs. 32-33.  In addition, Plaintiffs sent Nationstar notice and cure letters in response to the Court's order on Defendants' first Motion to Dismiss.  The Court has no doubt from these allegations that Nationstar was fully aware of the claims made by Plaintiffs Contreras and Phillips (i.e., that they were wrongfully charged property inspection fees).  Moreover, Nationstar is in the better position to identify the property inspection fees at issue since it controls the underlying records.  Finally, if there was any room for confusion Nationstar could have requested clarification from Plaintiffs within the 10-day period provided in the Letters but failed to do so.  Accordingly, Nationstar's motion to dismiss Contreras and Phillips' causes of action on grounds of insufficient notice is DENIED.[3]

### B. Plaintiff Phillips' Arizona Consumer Fraud Act Claim[4]

Phillips alleges that Nationstar, as the originator of his loan, violated the ACFA by making misleading statements related to the origination and sale of that loan to Phillips.  SAC, ECF No. 50, at 61.  "The elements of a private cause of action under the [ACFA] are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury."  Dunlap v. Jimmy GMC of Tucson, Inc., 136 Ariz. 338, 342 (App. 1983).  "'Sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed

---

[3] The Court also declines to grant Defendants' Motion with respect to Plaintiffs Barney, Marcel, O'Halloran, and Yager.  This Court previously found that Defendants were not entitled to notice and an opportunity to cure with respect to these individuals.  By way of their instant Motion, Defendants ask that this Court revisit that decision based on an intervening unpublished Ninth Circuit decision, Giotta v. Ocwen Loan Servicing, LLC, 706 F. App'x 421 (9th Cir. 2017).  Defendants do not even attempt to articulate how the issuance of this decision warrants reconsideration under the applicable standards, however, especially given the fact that it is non-binding authority.

[4] This Court previously granted Defendants' Motion to Dismiss Phillips' claim against Solutionstar for failing to allege "that Solutionstar was involved in the origination or 'sale' of the loan or that Solutionstar took any part in selling other merchandise to [Phillips]." Contreras v. Nationstar LLC, Case No. 2:16-cv-00302-MCE-EFB, 2017 WL 3438769, at *4 n.5 (E.D. Cal. Aug. 10, 2017).  Because Plaintiffs' factual allegations in the SAC are identical to the Complaint and FAC, there is no need to revisit this issue, and this cause of action is DISMISSED without leave to amend as to Solutionstar.

restriction imposed as part of a previous sale." Ariz. Rev. Stat. § 44-1521(7). "'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate, or services." Id. § 44-1521(5).

In support of this claim Phillips alleges that "at the time of origination, Nationstar promised that any default-related charges would be 'reasonable or appropriate.'" Pls. Opp'n to Defs.' Mot. Dismiss, ECF No. 56, at 16. Specifically, according to Phillips, "Nationstar led consumers to believe that the property inspection fees were required by the Lender and appropriately priced, when in reality Nationstar was charging inflated fees for unnecessary property inspections that were not required by the Lender or permitted by law." SAC, ECF No. 50, at 61. Phillips contends that "each time Defendants order and bill [him] for unreasonable inspections, they have made a new 'sale of merchandise' by means of false and misleading statements." Pls.' Opp'n to Defs. Mot. Dismiss, ECF No. 56, at 16.

The Court disagrees. Phillips' claim that Nationstar made a "false" promise to charge reasonable fees does not relate to the sale of merchandise, but instead to actions taken on behalf of merchandise previously purchased. Accordingly, Nationstar's motion to dismiss Phillips' ACFA claim is GRANTED with leave to amend.

### C.  Plaintiff Yager's Rosenthal Act Claim

Defendants seek to dismiss as time barred Yager's Rosenthal Act claim to the extent it challenges the Pay-to-Pay scheme.[5] The statute of limitations for private claims under both the FDCPA and the Rosenthal Act is one year from the date of the violation. 15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f); Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 939 (9th Cir. 2009). The Court previously dismissed Yager's instant claim with leave to amend because the relevant fees were charged outside of that one-year period, and Yager failed to set forth any factual basis supporting the conclusion that

////

---

[5] Defendant's Motion to Dismiss challenges only Yager's claim pertaining to the Pay-to-Pay Scheme, not the Property Inspection Scheme.

he was entitled to equitable tolling. Contreras v. Nationstar LLC, Case No. 2:16-cv-00302-MCE-EFB, 2017 WL 3438769, at *6 (E.D. Cal. Aug. 10, 2017).

"Equitable tolling is extended only sparingly by the courts, and it is generally awarded in two situations: (1) where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or (2) where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Wilson v. Gordon & Wong Law Group, P.C., Case No. 2:13-cv-00609, 2013 WL 6858975 (E.D. Cal. Dec. 24, 2013) (internal citation and quotation marks omitted). According to Yager, equitable tolling applies "where Nationstar continues to hide the true nature and extent of the Pay-to-Pay fee scheme." Pls.' Opp'n to Mot. Dismiss, ECF No. 56, at 19. Yager also now argues that the one-year statute of limitations is subject to the discovery rule, which provides that the limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action," in this case when Yager consulted with legal counsel. Mangum, 575 F.3d at 940.

In the SAC, Yager avers that although he was "informed at the time of making payment that he would be charged a 'convenience fee' for paying via phone, he was not informed that this fee was only applicable to borrowers who had missed payments, were at risk of default or were in default." Id. Yager's monthly bill statements only show an "undefined 'fee' of $9.95." Id. Accordingly, Yager contends he did not learn the purpose behind the fees until late 2015 after he consulted with counsel and "received a detailed transaction history (not provided as part of the normal course of Nationstar's servicing of Yager's loan) obtained in advance of this litigation in December 2015." Id.

Yager's argument is not well taken. First, the one-year limitations period began when Yager was charged the fees in January 2013, not when he obtained legal advice in December 2015. Norgart v. Upjohn Co., 21 Cal. 4th 383, 398 n.2 (1999) (Under the discovery rule, "the fact that an attorney has not yet advised [plaintiff] does not postpone commencement of the limitations period."). Second, Yager still fails to allege facts

8

sufficient to show the potential applicability of the equitable tolling doctrine. His claim that he did not learn the purpose of the fees until he consulted counsel is not an excusable delay sufficient to invoke this Court's application of equitable tolling. Indeed, nothing in the SAC indicates that Yager was "induced or tricked by [Defendant's] misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Accordingly, Defendant's motion to dismiss Yager's Rosenthal Act cause of action on statute of limitations grounds is again GRANTED with one final leave to amend.

### D. Civil RICO Violations

"Under 18 U.S.C. § 1962(c), it is unlawful 'for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.' 'Racketeering activity' is defined as a number of 'generically specified criminal acts as well as the commission of one of a number of listed predicate offenses.'" Dotson v. Metrociti Mortg., CIV. S-10-3484 KJM, 2011 WL 3875997 (E.D. Cal. Aug. 31, 2011) (quoting Sosa v. DirectTV, Inc., 437 F.3d 923, 939 (9th Cir. 2006)). Although § 1962 defines the crime, a plaintiff must seek civil remedies for RICO violations if he has been "injured in his business or property by reason of a violation of [§] 1962." 18 U.S.C. § 1964(c).

To state a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3 through a pattern (4) of racketeering activity, establishing that (5) the defendant caused injury to the plaintiff's business or property. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (internal quotations omitted). Here, the parties dispute whether Plaintiffs have adequately pleaded the following elements: (1) enterprise, (2) pattern of racketeering activity, and (3) proximate cause.

////

////

9

### 1. Enterprise

For RICO purposes, the term "enterprise" contemplates two variants. 18 U.S.C. § 1961(4); United States v. Turkette, 452 U.S. 576, 581-82 (1981). First, an enterprise can be "any individual, partnership, corporation, association, or other legal entity." Id. Second, and alternatively, an enterprise can also be present with respect to "any union or group of individuals associated in fact although not a legal entity." Id. Here, the parties primarily dispute whether Defendants constitute an "enterprise" under the second category, known as an "associated-in-fact" enterprise.[6]

To prove an associated-in-fact enterprise, a plaintiff must allege: (1) "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) "an ongoing organization, either formal or informal," and (3) that "the various associates function as a continuing unit." Odom, 486 F.3d at 552-53. "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." Id. at 551.

According to Plaintiffs, "[t]he Nationstar Property Inspection Enterprise is an ongoing, continuing group or unit of persons and entities associated together for the common purpose of limiting costs and maximizing profits of the otherwise independent members of the enterprise by conducting unfair, illegal and excessive property inspections whether they are needed or not, and collecting unearned and marked-up fees in the process, facilitated through the use of the mails and wires of the United States." SAC, ECF No. 50, at 68. Additionally, Plaintiffs assert the ongoing organization consists of a "common communication network for ordering, billing for, and conducting the property inspections" and that "every property inspection ordered by Nationstar is issued through an automated and computerized loan-servicing platform that communicates through the interstate wires directly to a similar servicing-platform at

---

[6] Plaintiffs alternatively allege that "each Defendant together with its officers, employees, and agents qualify as an enterprise" because the property inspection scheme was conducted separately from the Defendants' own affairs. Pls.' Opp'n to Mot. Dismiss, ECF No. 56, at 10 n.7. The Court finds that Plaintiffs have failed to allege any facts finding that each individual entity acted as an enterprise for RICO purposes, so Plaintiffs' alternative argument is DISMISSED with final leave to amend.

Solutionstar, which issues a similar order to third party inspection vendors and/or property inspectors who use the same communication network to issue confirmations that inspections have been completed, whether they have or not." Id. at 70. Lastly, Plaintiffs allege the enterprise functions as an ongoing unit "with the purpose of furthering the Inspection Fee RICO Scheme." Id. at 71.

Defendants assert that Plaintiffs have only presented conclusory allegations, failing to provide any facts showing "how defendants were part of the enterprise, how the enterprise was organized, or how the members function as a 'continuing unit.'" Mot. Dismiss, ECF No. 53-1, at 14. As Plaintiffs point out in their Opposition, however, Defendants overlook specific factual allegations in the earlier portion of the SAC outlining Defendants' alleged Inspection Fee RICO Scheme. Pls. Opp'n to Mot. Dismiss, ECF No. 56, at 8. Specifically, Plaintiffs aver that: (1) "Nationstar began to conduct the Inspection Fee RICO Scheme by using an automated loan-servicing platform that automatically triggers orders for property inspections whether or not they are needed or permitted under the terms of Nationstar's agreements"; (2) Solutionstar "accept[s] Nationstar's automated property inspection orders, automatically adding a mark-up to the price of the inspections and, in turn, automatically issuing its own inspection orders that are sent to a third party inspection vendors and/or property inspectors"; and (3) the "property inspection vendors and/or property inspectors further implement and execute Defendants' scheme by accepting Solutionstar's excessive and marked-up property inspection orders and automatically report 'completed' property inspections, whether or not an inspection actually occurred." SAC, ECF No. 50, at 11. Therefore, the Court concludes that Plaintiffs' RICO claim adequately pleads the existence of an associated-in-fact RICO enterprise.

### 2. Pattern of Racketeering Activity

Racketeering activity includes any act which is indictable under certain provisions of Title 18 of the United States Code. See 18 U.S.C. § 1961(1)(b); McAnelly v. PNC Mortg., Case No. 2:10-CV-02754-MCE, 2011 WL 6260537 (E.D. Cal. Dec. 15, 2011).

"The term 'racketeering activity' . . . includes the predicate acts of mail fraud, wire fraud and obstruction of justice.'" Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010). Plaintiffs allege that Defendants engaged in mail and wire fraud in violation of RICO by "transmit[ting] mortgage statements demanding payment for marked-up and unreasonable property inspection fees." Pls.' Opp'n Mot. Dismiss, ECF No. 56, at 5.

"Fraudulent acts that form the alleged pattern of racketeering activity" must be pleaded with particularity, pursuant to Rule 9(b). Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir. 1993). When alleging fraud, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Id. at 672; see also Schreiber Distrib. Co., 806 F.2d at 1401 ("[T]he pleader must state the time, place, and specific content of the false representations as well as the parties to the misrepresentation.").

This Court concludes that the requisite specificity has been met for pleading purposes here. Plaintiffs contend that "through mail and wires, Defendants provided mortgage invoices, loan statements, payoff demands, or proofs of claims to Plaintiffs, affirmatively demanding that they pay fraudulent and marked-up fees for default-related services." SAC, ECF No. 50, at 75. While Defendants contend Plaintiffs should have provided more detail with respect to dates and charges, Plaintiffs point out that Defendants are much better suited to providing that information. Despite this, Plaintiffs have nonetheless identified multiple dates and charges in relation to the property inspection fees in question. Id. at 75-76. The Court thus concludes that Plaintiffs have adequately pleaded the requisite predicate acts.

### 3. Proximate Cause

"The fifth element [of injury to plaintiff's business or property] has two subparts: the plaintiff must show that the injury was proximately caused by the conduct and that he

12

has suffered a concrete financial loss." Myers v. Encore Credit, CIV S-11-1714 KJM, 2012 WL 4511033 (E.D. Cal. Sept. 30, 2012) (citing Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083, 1086 (9th Cir. 2002). The main point of contention here is whether Plaintiffs' injuries were proximately caused by Defendants' conduct. The central question for evaluating proximate cause under a RICO claim is whether the alleged violation led directly to the harm suffered. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). Defendants argue that Plaintiffs do not provide any facts "suggesting they relied on what the billing statements said" or that they even "read the communications" pertaining to the alleged predicate acts. Mot. Dismiss, ECF No. 53-1, at 15.

      The Court finds that Plaintiffs have stated a plausible claim for relief under Rule 8. Rule 8 requires that a pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. Plaintiffs have provided a factual basis sufficient to show that they may be entitled to relief based on the injuries caused by Defendants' conduct. Specifically, Plaintiffs aver: "Had the members of the Nationstar Property Inspection Enterprise disclosed the true nature of the fees for default-related services, Plaintiffs would have been aware of the mark-up, and would have challenged Defendants' unlawful fee assessments or would not have paid them." SAC, ECF No. 50, at 79. Plaintiffs also allege "they reasonably and justifiably relied on Defendants to comply with applicable consumer law and contractual obligations . . . [and any] investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants' activities." Id. at 43. Lastly, Plaintiffs allege their injury is "paying excessive and inflated fees charged in connection with the property inspections and/or property inspection services described herein, which can make it impossible for homeowners to become current on their loan and drive them further into default." Id. at 79. Therefore,

////

the Court finds that Plaintiffs have sufficiently pleaded proximate cause. Given the foregoing, Defendants' motion to dismiss Plaintiffs' RICO claim is DENIED.

### E. Conspiracy Under RICO

Plaintiffs also allege, under 18 U.S.C. § 1962(d), a conspiracy to violate the general RICO violations already set forth above. Defendants argue the conspiracy claim fails because it depends primarily on the success of its assertion that Plaintiffs have failed to allege a substantive RICO violation under § 1962(c). The Court finds Plaintiffs' allegations, as discussed above, are sufficient so the motion to dismiss the conspiracy claim is DENIED as well.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 53, is GRANTED in part and DENIED in part consistent with the foregoing. Not later than twenty (20) days following the date this Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint. If no amended complaint is timely filed, the causes of action dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated: February 14, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE