Laura R. Gerber, admitted *pro hac vice*
lgerber@kellerrohrback.com
Dean Kawamoto (Bar No. 232032)
dkawamoto@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

Thomas E. Loeser (Bar No. 202724)
toml@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
1301 2nd Ave #2000
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

**Attorneys for Plaintiffs**
*(Additional counsel on signature page)*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

EUGENIO AND ROSA CONTRERAS,
WILLIAM PHILLIPS, TERESA BARNEY,
KEITH AND TERESA MARCEL, SHERLIE
CHARLOT, and JENNIE MILLER, on behalf
of themselves and all others similarly situated,

                          Plaintiffs,

    v.

NATIONSTAR MORTGAGE LLC, a
Delaware Limited Liability Company;
SOLUTIONSTAR HOLDINGS LLC (N/K/A
XOME HOLDINGS LLC), a Delaware
Limited Liability Company; and
SOLUTIONSTAR FIELD SERVICES LLC, a
Delaware Limited Liability Company,

                          Defendants.

No. 2:16-cv-00302-MCE-JDP

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Date:     November 4, 2021
Time:    2:00 PM
Ctrm:    7
Judge:   Hon. Morrison C. England, Jr.

**REDACTED**

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND ....................................................... 1

       A.     The Plaintiffs. ............................................................. 1

       B.     The Defendants. ........................................................... 2

       C.     The Form Loan Documents at Issue in this Case. ................................. 3

       D.     The Property Inspection Scheme. ........................................... 4

              1.     Nationstar's Inspections Are Not Based on Individualized
                     Information............................................................. 5

              2.     Nationstar's Inspections Were Defective. ................................. 6

              3.     Nationstar's Invoicing System Was Also Automated. ........................ 6

              4.     The Mark-Up Scheme.................................................... 7

              5.     Nationstar Has Long Known That the Inspection Fee Scheme Is
                     Illegal. ............................................................... 8

       E.     The Pay-to-Pay Scheme. ................................................. 9

              1.     Pay-to-Pay Fees Require Homeowners to Make Large Up-Front
                     Payments Simply to Make Their Mortgage Payments. ........................ 9

              2.     Pay by Phone (IVR and Live Representative). ............................. 11

              3.     Online Repayment Fees.................................................. 12

              4.     Pay-to-Pay Fees Are Not Authorized by Contract. .......................... 12

II.     THE PROPOSED CLASSES ................................................... 13

       A.     Inspection Fee Classes. ................................................. 13

       B.     Pay-to-Pay Classes....................................................... 14

III.    ARGUMENT ............................................................... 15

       A.     Legal Standard. ......................................................... 15

       B.     The Putative Classes Satisfy Fed. R. Civ. P. 23(a)'s Four Requirements.......... 15

              1.     The Classes Are Sufficiently Numerous.................................. 15

      2.      Commonality Is Met Because the Claims Are Based on Uniform Practices. ........................................................................................ 16

            a.      Plaintiffs' RICO Claims Present Common Issues. .................... 16

            b.      Plaintiffs' Breach of Contract Claims Present Common Issues. .................................................................................. 17

            c.      Plaintiffs' State Consumer Protection Law Claims Present Common Issues. .......................................................... 17

      3.      Plaintiffs' Claims Satisfy the Typicality Requirement. ......................... 18

      4.      Plaintiffs and their Counsel Satisfy the Adequacy Requirement of Fed. R. Civ. P. 23(a). ........................................................................... 19

  C.      Common Questions of Law and Fact Predominate Under Fed. R. Civ. P. 23(b)(3). ............................................................................................... 20

      1.      Common Questions Predominate on the RICO Claims. ....................... 20

      2.      Common Questions Predominate on the Breach of Contract Claims. ................................................................................................. 21

      3.      Common Questions Predominate on the State Statutory Claims. .......... 24

            a.      California Unfair Competition Law. ........................................... 24

            b.      Florida Deceptive and Unfair Trade Practices Act. ................... 25

            c.      Illinois Consumer Fraud Act. .................................................... 26

            d.      Oregon Unfair Trade Practices Act. .......................................... 26

  D.      Plaintiffs' Damages Model Satisfies the Comcast Standard. ........................... 27

  E.      A Class Action Is the Superior Method for Resolving This Dispute Under Fed. R. Civ. P. 23(b)(3). ...................................................................... 28

  F.      Plaintiffs' Injunctive Claims May Be Certified Under Fed. R. Civ. P. 23(b)(2). ........................................................................................... 28

IV.    CONCLUSION ....................................................................................... 29

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*,
   No. 2:17-cv-01515, 2020 WL 3893395 (E.D. Cal. July 10, 2020)......................... 24, 25, 29
5

6

*Alvarez v. LoanCare LLC*,
   No. 20-21837, 2021 WL 184547 (S.D. Fla. Jan. 19, 2021)............................................. 18
7

8

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...................................................................................................... 20
9

10

*In re Arris Cable Modem Consumer Litig.*,
   327 F.R.D. 334 (N.D. Cal. 2018) .................................................................................. 25
11

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) .................................................................................. 17
12

13

*Blankenship v. Pushpin Holdings, LLC*,
   No. 14 C 6636, 2015 WL 5895416 (N.D. Ill. Oct. 6, 2015)..................................... 18, 26
14

15

*Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*,
   787 F. Supp. 2d 747 (N.D. Ill. 2011) ............................................................................ 26
16

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008) ...................................................................................................... 23
17

18

*Bueche v. Fid. Nat'l Mgmt. Servs., LLC*,
   No. 2:12-cv1-01114, 2014 WL 2468601 (E.D. Cal. June 2, 2014) ................................ 13
19

20

*Bureau of Consumer Fin. Prot. v. Nationstar Mortg. LLC*,
   No. 1:20-cv-3550 (D.D.C. Dec. 8, 2020) ....................................................................... 2
21

*Cassese v. Wash. Mut., Inc.*,
   255 F.R.D. 89 (E.D.N.Y. 2008) .................................................................................... 17
22

23

*Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*,
   545 F. Supp. 2d 768 (N.D. Ill. 2008)............................................................................. 26
24

25

*Chastain v. Union Sec. Life Ins. Co.*,
   No. CV 06-5885, 2008 WL 11333691 (C.D. Cal. May 6, 2008) ................................... 17
26

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 666 (S.D. Fla. 2011).................................................................................... 23

27

28

*Colquitt v. Mfrs. & Traders Tr. Co.*,
    144 F. Supp. 3d 1219 (D. Or. 2015).................................................................. 27

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................................... 15, 27

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010).................................................................... 22

*Davis v. Powertel, Inc.*,
    776 So. 2d 971 (Fla. Dist. Ct. App. 2000)..................................................... 29

*Deckers Outdoor Corp. v. Pac. Harbors, LLC*,
    No. 3:19-cv-01587, 2020 WL 5269437 (D. Or. Aug. 10, 2020) .................... 26

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) .................................................................... 23

*Feller v. Transamerica Life Ins. Co.*,
    No. 2:16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)............ 17, 23

*Garcia v. Nationstar Mortgage LLC*,
    No. 2:15-cv-01808 (W.D. Wash. filed Nov. 17, 2015) ................................ 15

*Gutierrez v. Wells Fargo Bank N.A.*,
    No. C 07-05923, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) ................. 28

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*,
    121 F.R.D. 664 (N.D. Ill. 1988) ................................................................... 17

*Herrejon v. Ocwen Loan Servicing, LLC*,
    980 F. Supp. 2d 1186 (E.D. Cal. 2013) ....................................................... 24

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013)................................................... 19, 20

*Hubbard v. RCM Techs. (USA), Inc.*,
    No. 19-cv-06363, 2020 WL 6149694 (N.D. Cal. Oct. 20, 2020) ................. 16

*Huyer v. Wells Fargo & Co.*,
    295 F.R.D. 332 (S.D. Iowa 2013) .......................................................... 1, 17, 18

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012)................................................................... 27

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004)................................................................ 21, 23

*Kleiner v. First Nat. Bank of Atlanta*,
    97 F.R.D. 683 (N.D. Ga. 1983)................................................................ 22, 23

*Klopfenstein v. Fifth Third Bank*,
    No. 1:12cv851, 2021 WL 1439659 (S.D. Ohio Mar. 26, 2021) ...................... 22

*Leszczynski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997) ................................................................ 23

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................ 23, 27

*Lindell v. Synthes U.S.A.*,
    No. 11-cv-02053, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014)...................... 27

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................ 28

*McFadden v. Nationstar Mortg. LLC*,
    No. 20-cv-166, 2021 WL 3284794 (D.D.C. July 30, 2021)........................ 25

*McKiver v. Murphy-Brown, LLC*,
    980 F.3d 937 (4th Cir. 2020) .................................................................... 1

*In re Med. Capital Sec. Litig.*,
    No. SAML 10-2145, 2011 WL 5067208 (C.D. Cal. July 26, 2011).............. 22

*Mortimore v. FDIC*,
    197 F.R.D. 432 (W.D. Wash. 2000)............................................................ 23

*Rhodeman v. Ocwen Loan Servicing, LLC*,
    No. EDCV 18-2363, 2020 WL 4727289 (C.D. Cal. July 30, 2020)............. 24

*Seekamp v. It's Huge, Inc.*,
    No. 1:09-CV-00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ............. 22

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ........................................................ 17, 23, 24

*B.K. ex rel. Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) .................................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................ 20

*U.S. v. Roggy*,
    76 F.3d 189 (8th Cir. 1996) ...................................................................... 21

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
219 F.R.D. 661 (D. Kan. 2004) ............................................................... 22

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ................................................................... 28

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................... 16, 20

*Weiner v. Ocwen Fin. Corp.*,
No. 2:14-cv-02597 (E.D. Cal. Sept. 29, 2017), ECF No. 102 .............. 1, 17, 24, 29

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ................................................................. 27

**RULES**

Fed. R. Civ. P. 23(a) ................................................................... 15, 19, 20

Fed. R. Civ. P. 23(b) .......................................................................... *passim*

**STATUTES**

18 U.S.C. § 1961(1) ......................................................................... 17

18 U.S.C. § 1961(3) ......................................................................... 16

18 U.S.C. § 1961(4) ......................................................................... 17

18 U.S.C. § 1962(c) ......................................................................... 16

18 U.S.C. § 1964(c) ......................................................................... 16

15 U.S.C § 1692(e-f) ......................................................................... 25

815 Ill. Comp. Stat. § 505/2 .......................................................... 15, 29

Cal. Bus. & Prof. Code § 17200 ................................................ 14, 15, 24

Cal. Civ. Code § 1788.17 ................................................................. 25

Fla. Stat. § 501.201 ................................................................... 14, 15

Or. Rev. Stat. § 646.605 ............................................................. 14, 27

Or. Rev. Stat. § 646.638 .................................................................. 29

**OTHER AUTHORITIES**

1 William B. Rubenstein, *Newberg on Class Actions* § 3:29, Westlaw (5th ed. database updated June 2021)...................................................................................................... 19

7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1764 n.4, Westlaw (3d ed. database updated Apr. 2021) ................................................................. 19

Olger C. Twyner III, *Federal Rule of Civil Procedure 23(a)(3) Typicality Requirement: The Superfluous Prerequisite to Maintaining a Class Action*, 42 Ohio St. L.J. 797 (1981) .......................................................................................................................... 19

1    This case is about the shabby—and illegal—way Nationstar treated homeowners struggling to

2    make their payments and keep their homes. As such, it is a typical creditor-debtor dispute, but it is also

3    much more than that. In the United States homeownership is a major part of citizenship, and "whether

4    a home borders a golf course or a dirt road, it is a castle for those who reside in it. It is where children

5    play and grow, friends sit and visit, and a life is built." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937,

6    982–83 (4th Cir. 2020) (J. Wilkinson concurring). This Court has already rejected Defendants' attempt

7    to dismiss this case as to the named Plaintiffs. But unless this case is also certified as a class action, the

8    wrongs at issue here will go unaddressed, and any victory the Plaintiffs achieve will be a pyrrhic one.

9    This Memorandum in Support of Plaintiffs' Motion for Class Certification is in three parts. In

10    Section I, Plaintiffs review the factual record on Defendants' two mortgage servicing schemes at issue

11    in this case, inspection fees and pay-to-pay fees, both as a matter of public record and as developed by

12    discovery to date in this case. In Section II, Plaintiffs identify the specific classes and subclass to be

13    certified. In Section III, they explain that this case, like similar cases involving mortgage servicing

14    misconduct, in this district, *e.g.*, Memorandum & Order, *Weiner v. Ocwen Fin. Corp.*, No. 2:14-cv-

15    02597-MCE-DB (E.D. Cal. Sept. 29, 2017), ECF No. 102, and elsewhere, *e.g.*, *Huyer v. Wells Fargo

16    & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013), easily meets the requirements for certification.

16                        **I.        FACTUAL BACKGROUND**

17    **A.        The Plaintiffs.**

18    The eight named Plaintiffs in the matter, Eugenio and Rosa Contreras, William Phillips, Teresa

19    Barney, Keith and Teresa Marcel, Sherlie Charlot, and Jennie Miller are all homeowners who have

20    experienced bouts of economic hardship over the past decade but who have lived in their homes

21    continuously, struggling to keep current on their mortgages. Their home loans have all been serviced

22    by Nationstar Mortgage LLC ("Nationstar"). Each of these homeowners has been improperly charged

23    for numerous property inspections. Many of these homeowners have also been forced to pay additional

24    pay-to-pay fees in order to make payments to Nationstar on their mortgages online, or over the

25    telephone.

26

27

28

**B.      The Defendants.**

Nationstar is the largest non-bank servicer of residential mortgage loans in the United States. Third Am. Class Action Compl. ("TAC") ¶ 4, ECF No. 114. Solutionstar Holdings LLC and Solutionstar Field Services LLC (without distinction, "Solutionstar") are affiliates of Nationstar involved in the misconduct at issue. *Id.* ¶ 56; Defs.' Answer ¶ 56, ECF No. 115. During the relevant time period, Nationstar—now rebranded as "Mr. Cooper"—experienced six-fold growth of its business through a series of acquisitions. In 2012 it serviced 617,000 loans with an unpaid principal balance of $85 billion and by late 2020 it serviced 3.5 million loans with an unpaid balance of $626 billion. Ex.[1] 5 at NSM_011856; Ex. 6 at 3. Like most mortgage loan servicers, Nationstar contracts with lenders to provide payment-processing, collection, and other client services related to home loans, especially those in default. TAC ¶ 26. But Nationstar does not principally rely on revenue from timely principal and interest payments paid by "up-to-date" borrowers on "producing" loans. *Id.* ¶¶ 9, 26. Instead, it generates profits by collecting ancillary fees it charges to borrowers that have defaulted or missed loan payments. *Id.* ¶ 7. These lucrative fees are, generally, charged to borrowers for "default-related services" like property inspections or "convenience" fees for paying their mortgage over the phone or online. *Id.* ¶¶ 9, 26. Nationstar's business model allows it to operate on razor-thin margins for servicing performing loans, while earning outsized profits on borrowers in default. *Id.* ¶ 27.

Infamous for its repeated settlements with regulators,[2] Nationstar preys upon homeowners at a time of vulnerability. When a homeowner defaults on a mortgage loan by missing one or more

---

[1] "Ex." numbers refer to the exhibits attached to the Declaration of Laura R. Gerber in Support of Plaintiffs' Motion for Class Certification ("Gerber Decl."), attached hereto.

[2] *E.g.*, Ex. 5 ($5 million in penalties and $5 million in donations for various violations of state banking law); *Attorney General Frosh Settles with Nationstar Mortgage LLC, the Largest Non-Bank Mortgage Servicer* (May 14, 2018), https://www.marylandattorneygeneral.gov/press/2018/051418.pdf (refund of $1,000,000 in illegal inspection fees); *Memorandum of Understanding* (Dec. 3, 2020), https://www.justice.gov/ust/file/nationstar_mou.pdf/download ($40.68 million in credits for various errors in bankruptcy loan servicing practices); Stipulated Final Judgment & Order, *Bureau of Consumer Fin. Prot. v. Nationstar Mortg. LLC*, No. 1:20-cv-3550 (D.D.C. Dec. 8, 2020), ECF No. 3, https://files.consumerfinance.gov/f/documents/cfpb_nationstar-mortgage-llc-dba-mr-cooper_stipulated-final-judgment-and-order_2020-12.pdf ($91 million settlement for mishandling foreclosures).

payments, but then continues to pay hundreds or even thousands of dollars every month toward the mortgage to keep from falling further behind, Nationstar pounces. Rather than taking only the steps required to protect lenders' interests while borrowers work themselves back to being current with their mortgages, Nationstar instead saddles homeowners with unnecessary and illegal property inspection fees and additional charges just to pay their mortgage. These two practices—the property inspection scheme and the pay-to-pay scheme—are at the heart of this case.

**C.    The Form Loan Documents at Issue in this Case.**

Virtually all mortgage loans originated in the United States use either the standardized Federal National Mortgage Association ("Fannie Mae") or Federal Home Loan Mortgage Corporation ("Freddie Mac") security instrument (the "Fannie/Freddie Mortgage") or the Federal Housing Authority ("FHA") security instrument (the "FHA Mortgage"). This is because at origination, the originating bank or lender must use these forms in order to have the possibility of selling the mortgage to Fannie Mae or Freddie Mac, which are the largest holders of mortgages in the United States.[3] Plaintiffs Contreras', Phillips, Barney, and Marcels' all have deeds of trust or mortgages utilizing the standard Fannie/Freddie Mortgage. Plaintiffs Charlot and Miller have mortgages utilizing the standard FHA Mortgage. The class members which Plaintiffs seek to represent all have mortgages that either utilize the Fannie/Freddie Mortgage or the FHA Mortgage.[4] Neither the Fannie/Freddie Mortgage nor the FHA Mortgage authorize the charges Nationstar imposed through the property inspection scheme or the pay-to-pay scheme.

---

[3] When the mortgage loan is sold in the secondary market, for example to Fannie/Freddie, or to private investors through a Mortgage Backed Security ("MBS"), the Servicing Rights are separated from the principal and interest income stream rights, and the Servicing Rights are either retained by the originating lender or acquired by a loan servicer such as Nationstar. TAC ¶ 6. The "Loan Servicer" "collects Periodic Payments due under the Note and . . . Security Instrument and performs other mortgage loan servicing obligations." *E.g.*, Ex. 7 at 11 (¶ 20); Ex. 8 at 11 (¶ 20). The Loan Servicer's duties and obligations are clearly filled in and defined by the Fannie Mae or Freddie Mac written Seller/Servicer Guidelines (the "Guidelines") when the loan is sold to those entities.

[4] *See* Ex. 7 (Deed of Trust of Eugenio and Rosa Contreras); Ex. 8 (Deed of Trust of William Phillips and his late wife, Melva Phillips); Ex. 9 (Deed of Trust of Teresa Barney); Ex. 10 (Mortgage of Keith and Teresa Marcel); Ex. 11 (Mortgage of Sherlie Charlot); Ex. 12 (Mortgage of Jennie Miller).

**D.     The Property Inspection Scheme.**

Nationstar improperly added to Plaintiffs' indebtedness by ordering repeated, unnecessary drive-by inspections of Plaintiffs' properties after they fell behind in their mortgage payments. Nationstar then assessed the costs of the unneeded inspections to Plaintiffs. Property inspection fees for borrowers in default are a significant profit center for Nationstar as a loan servicer. ███████████

████████████████████████████████████████████

██████████████████████.

But conducting such inspections and charging them to the borrower is permitted *only* when they are necessary, reasonable, or appropriate in an individual case to protect the lender's interest in the property. *E.g.*, Ex. 9 at 7–8 (¶ 9); Ex. 11 at 4 (¶ 7). ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ Nationstar is incentivized to do whatever is demanded by these insurers or investors because it earns billions of dollars in servicing fees from these loans. Ex. 6 at 38.

But whether Nationstar is acting at the direction of the investors or not, it is the mortgage note instrument executed by borrowers (rather than Nationstar's agreements with the investors or insurers) that must provide the legal justification for Nationstar's authority to bill borrowers for these inspections, and these instruments do not give the servicer carte blanche to bill for inspections. *E.g.*, Ex. 9 at 7–8 (¶ 9); Ex. 11 at 4 (¶ 7). But that is just what Nationstar does—its automated systems indiscriminately schedule inspections every 25-35 days whenever a borrower is delinquent for more than 45 days. This process has resulted in the assessment of tens of millions of dollars in unnecessary property inspection fees for borrowers.

1. **Nationstar's Inspections Are Not Based on Individualized Information.**



1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████.

3     **2.**      **Nationstar's Inspections Were Defective.**

4      Even though Nationstar was quick to order inspections, and charge homeowners for them, it

5 had little interest in the quality of the inspections themselves. ████████████████████

6 ██████████████████████████████████████████████████

7 ███████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████

11     ████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ███████████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ██████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ██████████████████████████████████████

19 ████████████████████████████████████████████

20 ██████████

21     **3.**      **Nationstar's Invoicing System Was Also Automated.**

22     ██████████████████████████████████████

23 ███████████████████████████████████████████████████

24 ███████████████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████████

28

████████████████████████████████████████████████

████████████████████████ The property inspection fees on these statements are deliberately obscured and misleading. They are described, inter alia, as, "lender paid expenses", "fees", and "property inspections" and do not indicate the date the inspection was performed. *See* Ex. 24; ██

███████████████████████████████████████████

██████████████████████████████ Thus, Nationstar not only generated orders for inspections without consideration of any individualized information, but it also billed for the inspections in a non-individualized, automatic, and uniformly inscrutable manner.

**4.      The Mark-Up Scheme.**

██████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

████████████████████.

There is substantial class-wide evidence that proves the illegal scheme. ████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████ With this scheme, Solutionstar unabashedly preyed on the most vulnerable borrowers, and increased its own profits, █████████████████████████



**5.      Nationstar Has Long Known That the Inspection Fee Scheme Is Illegal.**

Nationstar's inspection fee scheme has been the subject of repeated federal and state investigations and settlements, providing Nationstar with plenty of warning and guidance on how to change its practices. Nationstar however refuses to turn off the spigot of its illicit profits or make the necessary corrections.

E.     **The Pay-to-Pay Scheme.**

       1.     **Pay-to-Pay Fees Require Homeowners to Make Large Up-Front Payments Simply to Make Their Mortgage Payments.**

       Nationstar further preyed upon homeowners by requiring them to pay Nationstar fees in addition to principal simply to make their home loan payments. This was especially true for borrowers who had fallen on hard times, had uneven income flows, and needed to wait until the last minute to make their payments. In those instances, borrowers needed to make their mortgage payments online or over the phone to ensure they were processed on time. ███████████████████

       ███████████████████████████████████████████████████████████████████

       ███████████████████████████████████████████████████████████████

       ███████████████████████████████████ Nationstar adds these fees to the balance of borrowers' mortgages during the transaction and considers revenue from pay-to-pay fees to be an additional profit center for its servicing business. ███████████████████████████████

       ███████████████████████████████████████████████████████████████████████

       ███████████████████████████████████████████████████████████████████████

       ███████████████████████████████████████████████████████████████████████

       ████████████████████████████████████████████████████████████████████.

1 ███████████████████████████████████████████████████

2 ████████████████.

3      The fees charged by Nationstar to borrowers for making payments are well in excess of the

4 costs to Nationstar in processing such payments. A breakdown of the fees charged to Nationstar by

5 Western Union (Nationstar's payment processor) reveals miniscule unit cost per transaction when

6 measured against the pay-to-pay fee charged to the customer. ████████████████████

7 ███████████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11     ████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ████████████████████████████████ ██████████

14 ███████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 █████████████████████ ███████████████████████████

17 ─────────────────────────

18 [5] ███████████████████████████████████████████████

19 ███████████████████████████████████████████████████

20 ████████████████████████████████████.

21 [6] █████████████████████████████████████████

22 [7] The Consumer Financial Protection Bureau became so concerned about the burgeoning pay by phone
fee business models that it issued a Compliance Bulletin. *CFPB Compliance Bulletin 2017-01* (July 31,

23 2017), https://files.consumerfinance.gov/f/documents/201707_cfpb_compliance-bulletin-phone-pay-
fee.pdf. The Bureau says that such payments cannot be misleading or deceptive and describes a

24 violation as "[*f*]*ailing to disclose the prices of all available phone pay fees when different phone pay
options carry materially different fees.*" *Id.* at 2. The Bureau goes on to criticize the practice of solely

25 relying on phone representatives to fully explain the fees, and notes "the phone representatives may
fail to inform consumers of the material price difference between available options." *Id.* Written notice

26 to consumers with full disclosure would have mitigated this practice. Plaintiffs never received any

27 adequate written notice of such fees, and Nationstar has failed to produce any such documents
indicating they were disclosed to anyone else.

28

**2.      Pay by Phone (IVR and Live Representative).**

In other words, the customer had better pay the IVR fee, or she will be burdened with a bigger fee if she wants to speak with a person. This conduct lies at the heart of the CFPB's concern, *see supra* note 7, about the failure to disclose all the payment options to the customer.

There is no further description of the nature of the fee provided to the borrowers. Nor are the borrowers presented with alternate free payment options (such as the pay by text option that utilized the very same phone system) or the option to request a fee waiver, which Nationstar claims its customer service representatives may provide to callers.

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Plaintiffs all state they were never given any options for

payment, let alone an explanation of the basis for the fee. TAC ¶¶ 158, 167, 171. ██████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████ .

**3.    Online Repayment Fees.**

When making online repayments, Plaintiffs were charged undisclosed "fees" of $9.95.

Nationstar's practices regarding when this fee would be imposed on borrowers shifted over time.

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

Nationstar never fully disclosed the nature of such fees to Plaintiffs or to any of their customers, as

confirmed by the New York State Department of Financial Services, whose servicing examination

found that Nationstar failed to maintain a schedule of fees on its website. Ex. 5 at NSM_011859 (¶ 20);

████████████████████████████████████████████████

██████████

**4.    Pay-to-Pay Fees Are Not Authorized by Contract.**

Nationstar's pay-to-pay scheme entailed at least four parts: (1) unilaterally imposing the pay-to-

pay fees in the first instance; (2) failing to fully disclose the nature of the pay-to-pay fees; (3) failing to

disclose the availability of free alternatives; and (4) charging fees vastly in excess of the actual cost of

processing the telephone or online transactions. None of this is authorized by the relevant contract

documents. The Fannie Mae and Freddie Mac standard form contracts provide "[l]ender may not

charge fees that are . . . prohibited . . . by Applicable Law." Ex. 9 at 10 (¶ 14). The FHA contract

phrases the prohibition differently, but to the same effect: "Lender may collect fees and charges authorized by the Secretary." Ex. 11 at 5 (¶ 8).

## II.   THE PROPOSED CLASSES[8]

### A.   Inspection Fee Classes.

Plaintiffs seek certification of five inspection fee classes: the "National Inspection Fee Class"; the "Mark-Up Subclass"; and three statewide classes asserted under state law, the "California, Florida, and Oregon Inspection Fee Classes."[9]

As to the National Inspection Fee Class, Plaintiffs Eugenio and Rosa Contreras, William Phillips, Teresa Barney, Keith and Teresa Marcel, and Sherlie Charlot seek damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of the following class:

> All Nationstar customers in the United States whose mortgage contracts for residential properties use the Fannie Mae/Freddie Mac uniform instrument or the Federal Housing Administration model forms, and who, according to Nationstar's records, between February 1, 2014 and October 31, 2016, were billed for one or more property inspections for property inspections automatically ordered by Nationstar as a result of a late payment of their mortgage.

The Mark-Up Subclass consists of members of the National Inspection Fee Class who were not only billed Nationstar's standard property inspection fee, but, as described above, were *also* billed the undisclosed six-dollar mark-up. Plaintiffs Sherlie Charlot and Keith and Teresa Marcel are the class representatives for the Mark-up Subclass, defined as follows:

> All members of National Inspection Fee Class who, according to Nationstar's records, between February 1, 2014 and October 31, 2016, were assessed a six-dollar mark-up for one or more property inspections automatically ordered by Nationstar as a result of a late payment of their mortgage.

---

[8] While the class definitions proposed here vary from the classes proposed in Plaintiffs' TAC, ECF No. 114, this Court and the parties are not bound by class definitions proposed in a complaint. *See Bueche v. Fid. Nat'l Mgmt. Servs., LLC*, No. 2:12-cv1-01114 JAM EFB, 2014 WL 2468601, at *2 (E.D. Cal. June 2, 2014).

[9] The state classes are not subclasses of the National Inspection Fee Class because the class period for the state classes is longer than that for the national class.

The statewide inspection fee classes are brought under each state's relevant consumer protection law.[10] The classes are narrower than the National Inspection Fee Class in that they concern property located in the states of California, Florida, and Oregon, but broader in that Plaintiffs seek not only damages, but an injunction, and the class period is considerably longer. The class definition is:

> All Nationstar customers in the United States whose residential properties securing their loans serviced by Nationstar are located in [California, Florida, and Oregon] and whose mortgage contracts use the Fannie Mae/Freddie Mac uniform instrument or the Federal Housing Administration model forms and who, according to Nationstar's records, between February 12, 2012[11] and the present, were billed for one or more property inspections automatically ordered by Nationstar as a result of a late payment of their mortgage.

The class representatives are Plaintiffs Eugenio and Rosa Contreras (California), Sherlie Charlot (Florida), and Teresa Barney (Oregon) respectively.

**B.    Pay-to-Pay Classes.**

Plaintiffs seek certification of four pay-to-pay classes, the "National Pay-to-Pay Class," and three statewide classes, the "California, Illinois, and Florida Pay-to-Pay Classes."[12] As to the national class, Plaintiffs Eugenio and Rosa Contreras, William Phillips, Teresa Barney, Keith and Teresa Marcel, Sherlie Charlot, and Jennie Miller seek damages for breach of contract for:

> All Nationstar customers in the United States with residential properties securing their loans and whose mortgage contracts use the Fannie Mae/Freddie Mac uniform instrument or the Federal Housing Administration model forms and who were charged one or more fees in order to make an online or telephonic payment to their Nationstar account between February 12, 2013, and the present.

The statewide pay-to-pay classes are brought under the relevant consumer protection laws of California, Florida, and Illinois.[13] Like the statewide inspection fee classes, these classes are narrower than the national class because they concern property located only in the three states, but broader in

---

[10] These are: Cal. Bus. & Prof. Code § 17200 *et seq.*; Fla. Stat. § 501.201 *et seq.*; Or. Rev. Stat. § 646.605 *et seq.*

[11] The class period for the Oregon inspection fee subclass, as set out in the Notice of Motion, filed concurrently, is a shorter time period from February 12, 2015, to the present.

[12] The state classes are not subclasses of the National Pay-to-Pay Class because the class period for the California and Florida state classes is longer than that for the national class.

[13] These are: Cal. Bus. & Prof. Code § 17200 *et seq.*; Fla. Stat. § 501.201 *et seq.*; 815 Ill. Comp. Stat. § 505/2 *et seq.*

1  that Plaintiffs seek not only damages, but an injunction, and the class period is therefore considerably

2  longer.

> All Nationstar customers in the United States whose residential properties securing their
> loans serviced by Nationstar are located in [California, Florida, or Illinois] and whose
> mortgage contracts use the Fannie Mae/Freddie Mac uniform instrument or the Federal
> Housing Administration model forms and who were charged one or more fees in order to
> make an online or telephonic payment to their Nationstar account between February 12,
> 2012[14] and the present.

The representatives for the statewide pay-to-pay classes are Plaintiffs Eugenio and Rosa

Contreras (California), Sherlie Charlot (Florida), and Jennie Miller (Illinois), respectively.[15]

### III.   ARGUMENT

**A.   Legal Standard.**

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. To satisfy Rule

23(a), class plaintiffs must show: "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of

the representative parties are typical of the claims or defenses of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to

the prerequisites of Rule 23(a), plaintiffs seeking class certification must also satisfy one of the

provisions of Fed. R. Civ. P. 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs

here move for certification under Rule 23(b)(3) as to the national and statewide damages classes and

Rule 23(b)(2) as to the statewide statutory injunctive relief classes.

**B.   The Putative Classes Satisfy Fed. R. Civ. P. 23(a)'s Four Requirements.**

    **1.   The Classes Are Sufficiently Numerous.**

In general, classes are sufficiently numerous when they are comprised of 40 or more members.

*See Hubbard v. RCM Techs. (USA), Inc.*, No. 19-cv-06363-YGR, 2020 WL 6149694, at *1 (N.D. Cal.

Oct. 20, 2020). ████████████████████████████████████████

████████████████████████████████████████████████████

---

[14] The class period for the Illinois inspection fee class, as set out in the Notice of Motion, filed
herewith, is a shorter time period from February 12, 2013, to the present.

[15] Excluded from all the pay-to-pay classes described above are any settlement class members in
*Garcia v. Nationstar Mortgage LLC*, No. 2:15-cv-01808-TSZ (W.D. Wash. filed Nov. 17, 2015).

1

2 ████████████████████████████████████ The numerosity requirement is

3 easily met.

      **2.**    **Commonality Is Met Because the Claims Are Based on Uniform Practices.**

4

5       To satisfy the commonality requirement, "[e]ven a single [common] question will do," *Wal-*

6 *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation omitted). However, "[w]hat matters to

7 class certification . . . is not the raising of common 'questions'—even in droves—but rather, the

8 capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the

9 litigation." *Id.* at 350 (citation omitted). The inspection fee plaintiffs assert two theories of liability,

10 RICO and state consumer protection statutes; the pay-to-pay plaintiffs also assert two theories: breach

11 of contract and state consumer protection statutes. In both factual settings and under both theories of

12 liability, common answers to common questions, factual and legal, will drive the resolution of this

13 litigation.

      **a.**    **Plaintiffs' RICO Claims Present Common Issues.**

14

15       Plaintiffs and class members' claims all rise or fall on the resolution of a single common

16 question: whether Defendants' inspection fee scheme was unlawful. To prevail on their RICO claims

17 for the National Inspection Fee classes, Plaintiffs must establish that (1) Defendants violated 18 U.S.C.

18 § 1962(c), (2) the violation caused an injury, and (3) damages. *See* 18 U.S.C. § 1964(c). To prove a

19 violation of Section 1962(c), Plaintiffs must show that (i) Defendants are "person[s]" as defined in 18

20 U.S.C. § 1961(3); (ii) Nationstar and Solutionstar conducted or participated in the complained of

21 conduct; (iii) Nationstar's and Solutionstar's participation in the conduct is part of an enterprise as

22 defined in 18 U.S.C. § 1961(4); and (iv) Defendants' participation in the enterprise was performed

23 through a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(4), (1)(B).

24

25       All of these are classic common issues. *See, e.g.*, *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528,

26 544 (N.D. Cal. 2015) (certifying similar loan processing RICO class); *Huyer v. Wells Fargo & Co.*,

27

28

295 F.R.D. 332, 347-48 (S.D. Iowa 2013) (same); Memorandum & Order, *Weiner v. Ocwen Fin. Corp.*, No. 2:14-cv-02597-MCE-DB (E.D. Cal. Sept. 29, 2017), ECF No. 102 (same). Common questions of law and fact are present as to the claims of the RICO classes because a finding in Plaintiffs' favor would extend to the entire class. Defendants' practices were based on uniform policies and procedures and the legality of the inspection fee scheme can be determined from this uniform, class-wide evidence.

> ### b.    Plaintiffs' Breach of Contract Claims Present Common Issues.

The members of the National Pay-to-Pay Class are parties to one of two contracts, the FHA contract or the Fannie/Freddie contract. As explained above, neither contract provides for pay-to-pay fees. Unilaterally charging those fees on top of the monthly mortgage amount breached the contracts as surely as unilaterally changing the monthly mortgage amount, the due date, or any other material term of the mortgage. Many courts have recognized that cases involving black-and-white breaches of form contracts present common issues. *See, e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *Cassese v. Wash. Mut., Inc.*, 255 F.R.D. 89, 96 (E.D.N.Y. 2008); *Chastain v. Union Sec. Life Ins. Co.*, No. CV 06-5885 ABC (FFMx), 2008 WL 11333691, at *3 (C.D. Cal. May 6, 2008); *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS-AJW, 2017 WL 6496803, at *6–7 (C.D. Cal. Dec. 11, 2017) (collecting cases).

> ### c.    Plaintiffs' State Consumer Protection Law Claims Present Common Issues.

Plaintiffs seek certification of six state classes based on state consumer protection statutes: the California, Florida, and Oregon Inspection Fee Classes; and the California, Florida, and Illinois Pay-to-Pay Classes ("State Classes"). Each of these statutes targets unfair business practices like Defendants' conduct here. Despite some differences between the consumer protection statutes of the relevant states, Plaintiffs' allegations are based on the same factual predicates:

- ***As to the Inspection Fee State Classes.*** Defendants uniformly ordered and charged class members for property inspections; they did so without first determining a borrower's

individual circumstances and deceived customers regarding the fees; and Defendants'
conduct violated the consumer protection statutes of California, Florida, and Oregon.

- ***As to the Pay-to-Pay State Classes.*** Defendants charged class members pay-to-pay fees;
  Defendants' policy of charging pay-to-pay fees for mortgage payments made over the
  phone and online was uniform and deceptive; and Defendants' conduct violated the state
  consumer protection statutes of California, Florida, and Illinois.

Accordingly, the common questions of whether Defendants' inspection fee and pay-to-pay fee

practices constitute violations of the respective state consumer protection statutes present common

issues of law and fact under Fed. R. Civ. P. 23(a). Many courts have recognized that cases based on

consumer protection laws like these are naturals for class certification. *See, e.g.*, *Alvarez v. LoanCare*

*LLC*, No. 20-21837-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *13 (S.D. Fla. Jan. 19, 2021)

(common contention that charging processing fees for mortgage payments is unlawful under FDUTPA

"may have glued together the classes' members"); *Blankenship v. Pushpin Holdings, LLC*, No. 14 C

6636, 2015 WL 5895416, at *15 (N.D. Ill. Oct. 6, 2015) (denying defendants' request to strike class

allegations as to plaintiffs' Illinois Consumer Fraud Act unfairness claims where "Plaintiffs have

alleged a series of Common Allegations that, if proven to be true . . . could meet the commonality

requirement for certification of the class."); *Huyer*, 295 F.R.D. at 339 (California UCL) ([T]his case

. . . involves an allegation concerning a policy that was applied uniformly to all class members. Thus

. . . the common question of whether this policy constitutes a . . . UCL violation is certainly amenable

to a common answer, which will drive the resolution of this litigation.").

### 3. Plaintiffs' Claims Satisfy the Typicality Requirement.

To satisfy Fed. R. Civ. P. 23(a)(3)'s typicality requirement, Plaintiffs' claims must be

"reasonably coextensive with those of absent class members; they need not be substantially identical."

*B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 969–70 (9th Cir. 2019) (citation omitted). As many courts

have observed, the typicality requirement adds little to the preceding requirement of commonality or

following requirement of adequacy. *See generally* 7A Charles Alan Wright et al., *Federal Practice and*

*Procedure* § 1764 n.4, Westlaw (3d ed. database updated Apr. 2021) (collecting cases).[16] A "plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:29, Westlaw (5th ed. database updated June 2021). Plaintiffs' claims and injuries are typical of the claims and injuries suffered by the classes: they were unlawfully charged by Nationstar for inspection fees and pay-to-pay fees. Whether these charges were unlawful is a question of law, which is common to all class members, and Plaintiffs' conduct is irrelevant. The plaintiffs here have no idiosyncratic claims or defenses; they all easily meet the requirement of typicality.

> **4.    Plaintiffs and their Counsel Satisfy the Adequacy Requirement of Fed. R. Civ. P. 23(a).**

The test for adequacy turns on two questions: "(1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (internal quotations and citation omitted). Neither Plaintiffs nor Class Counsel have any such conflicts with the proposed classes and subclass. All eight named plaintiffs are simply Nationstar customers who have struggled to make their mortgage payments and were charged by Nationstar for unlawful inspection fees and pay-to-pay fees, and they seek the same category and scale of damages. They have no claims against each other and no other grievances against Nationstar. Plaintiffs have also demonstrated that they will prosecute this action vigorously; each has participated in the litigation as an active, informed litigant, and as they explain in their declarations,[17] they will do work to protect the interests of the class with due regard for their duties as class representatives. Fed. R. Civ. P. 23(a)(4).

---

[16] One commentator has even concluded that the typicality requirement is superfluous. Olger C. Twyner III, *Federal Rule of Civil Procedure 23(a)(3) Typicality Requirement: The Superfluous Prerequisite to Maintaining a Class Action*, 42 Ohio St. L.J. 797 (1981).

[17] *See* Declarations of Eugenio and Rosa Contreras, William Phillips, Teresa Barney, Keith and Teresa Marcel, Sherlie Charlot, and Jennie Miller, filed concurrently herewith.

As to the other element of the adequacy inquiry, proposed class counsel are well-known national class action firms, well qualified to handle this representation and they have the considerable resources to vigorously prosecute this case to completion. Proposed counsel have included their attorney and firm resumes to demonstrate to this Court that they are competent class counsel. Ex. 1; Ex. 2.

## C.      Common Questions of Law and Fact Predominate Under Fed. R. Civ. P. 23(b)(3).

Plaintiffs' claims not only raise common questions, as explained above, those issues will predominate over any individual issues, thus satisfying Fed. R. Civ. P. 23(b)(3). While the predominance inquiry "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,'" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351), courts ought not "engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. To assess predominance, courts compare the common questions to the individual questions, but there is no requirement that common questions predominate for each element of the claim. *See id.* at 469 ("Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof." (internal quotations and citation omitted) (emphasis in original)); *accord Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Furthermore, while the predominance inquiry is comparative in nature, it is not "bean counting," *High-Tech*, 985 F. Supp. 2d at 1187, and courts must also make a "qualitative assessment" as to the magnitude and importance of the common and uncommon issues. *See id.*

### 1.      Common Questions Predominate on the RICO Claims.

At this point in the analysis, the issue is not whether Defendants in fact violated RICO, nor even whether the RICO claim involves common issues (already addressed above), but instead whether common issues will *predominate* in resolving those questions. Plaintiffs will necessarily establish by common evidence that Defendants are RICO persons, constitute an "enterprise" as defined in the RICO statute, and that Nationstar and Solutionstar conducted or participated in the affairs of the enterprise through acts indictable as mail and wire fraud. *See U.S. v. Roggy*, 76 F.3d 189, 192 (8th Cir. 1996) (affirming mail fraud conviction based on conduct of mailing invoices). This proof will not vary

1    among class members. Common questions regarding RICO elements "tend to predominate over all but

2    the most complex individualized issues." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258-59 (11th Cir.

3    2004) (abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639

4    (2008)).

5           Common issues will also predominate with respect to class members' damages. As explained

6    above, *see supra* Section I.D, Defendants automatically ordered and charged class members for

7    property inspections without any prior determination that the inspections were reasonable, appropriate,

8    or necessary to protect the lender's interest in the respective property—then universally represented to

9    borrowers that the fees for those unlawful, default-related inspections were valid "lender paid

10   expenses" in their mortgage statements. Every mortgage statement, which included an amount for an

11   inspection, or for a marked-up inspection, is a violation of RICO because those amounts were unlawful

12   and Nationstar misrepresented its authority to recover those amounts from borrowers. In other words,

13   Defendants' policies were applied uniformly to all class members, and the type of information

14   provided on the mortgage statements was uniform across all class members.

15          This is sufficient to establish predominance; determining Nationstar's liability here will not

16   require a case-by-case analysis of whether property inspections were properly conducted. Instead, the

17   evidence will show that charging fees for inspections of class members' homes was always unlawful

18   where Defendants' failed to first determine whether those inspections were reasonable, appropriate, or

19   necessary—that is, it was the uniform and indiscriminate application of Defendants' illegal policy

20   across the class, rather than the breach of individual contracts between Nationstar and plaintiffs, that

21   violated RICO and injured each class member. In the end, if the inspection fees (or the marked up

22   inspection fees) are determined to be unlawful, then Defendants defrauded Plaintiffs and class

23   members through the use of mortgage statements that listed those unlawful charges. The outcome will

24   be determined on a class-wide basis without any individual inquiry.

25          **2.      Common Questions Predominate on the Breach of Contract Claims.**

26          As with the RICO predominance analysis, the issue at this stage of the litigation is not the

27   merits of the underlying claim, but whether common issues will predominate in resolving whether

28

Nationstar breached its contracts with Plaintiffs. In certifying nationwide breach of contract classes, courts consistently rule that common issues predominate in class actions alleging breach of standardized form contracts—and that "class members' understanding of a term in a standard form agreement generally has no bearing on Fed. R. Civ. P. 23(b)(3)'s predominance requirement":

> The Court begins with the common sense principle, stated in the Restatement (Second) of Contracts, that standardized agreements should be "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." § 211(2). The contracts at issue are contracts of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties.

*Klopfenstein v. Fifth Third Bank*, No. 1:12cv851, 2021 WL 1439659, at \*4–5 (S.D. Ohio Mar. 26, 2021) (citation omitted) (certifying nationwide class). "This approach has been followed by numerous federal courts when presented with class claims based on the breach of a form contract," *id.* at \*5 (collecting cases), and thus "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983).[18]

---

[18] In addition to the cases cited *supra* Section III.B.2.b, *see generally Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 (LEK/DRH), 2012 WL 860364, at \*11 (N.D.N.Y. Mar. 13, 2012) ("[A]ctions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action.") (citation omitted); *In re Med. Capital Sec. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at \*3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts."); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (finding "extent of any variations in state contract law" insufficient to defeat to defeat commonality and certifying nationwide breach of contract class); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) (finding predominance and certifying class to resolve claims for breach of "standard form contracts"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37–38 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment.") (citing extensive authority); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such . . . . '[T]he application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform.' . . . Whether the [contract] has been breached appears to be a pure and simple question of contract interpretation which should not vary from state to state.") (quoting *Kleiner*, 97 F.R.D. at 692, 694).

In some cases, the relevant contract doctrines vary slightly from state to state, and thus the states may be grouped into a few subsets. *E.g.*, *Steinberg*, 224 F.R.D. at 78 (grouping the states into four categories on certain issues). In most cases, however, the issues are so clear cut that it is obvious that the terms of the contract and the facts of the breach are absolutely uniform, and no grouping is required. *E.g.*, *Feller*, 2017 WL 6496803, at *6 (rejecting need to analyze possible differences in state law at certification stage); *Mortimore v. FDIC*, 197 F.R.D. 432, 436 (W.D. Wash. 2000) (rejecting need for "a fifty state analysis of contract interpretation"; *Klay*, 382 F.3d at 1262–63 ("a breach is a breach is a breach").[19]

This case falls into the latter category—no grouping of states is necessary. The only contract issues presented are uniform throughout the United States. In all fifty states for a breach of contract, a plaintiff must show: (1) the existence of a valid contract; (2) the defendant's non-performance and (3) damages. *See* Ex. 53 (listing elements for the fifty states, D.C., Guam, Puerto Rico, and Virgin Islands). The first two elements will be proven with common evidence of (1) the two uniform contract provisions at issue and (2) Nationstar's conduct imposing the fees. As to the third element, variation in damages proof does not require a finding that individual issues predominate.[20] Even if the court were to decide that the minimal differences between some states' contract law required separate treatment of one of the three issues, that can be resolved, as it was in *Steinberg*, by creation of appropriate subclasses.

[19] *Klay* was abrogated in part on other grounds in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), and the district court ultimately did not certify the class because of factual, not legal, variations. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011).

[20] *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). In any event, in this case even proof of damages is an entirely common question. The amount each class member was charged for their right to use the pay-to-pay facility is based on the means of payment, and maintained in Nationstar's system of record, LSAMS. ████████████████████████████████████████████████████████████████████████████████████████████ *See also* Memorandum & Order, *Weiner v. Ocwen Fin. Corp.*, No. 2:14-cv-02597-MCE-DB (E.D. Cal. Sept. 29, 2017), ECF No. 102 (certifying class, noting that class-wide damages were to be computed by such a calculation).

1

### 3. Common Questions Predominate on the State Statutory Claims.

2

Plaintiffs seek certification of the State Classes for their damages claims under the consumer

3

protection laws of California, Florida, and Oregon for Defendants' Inspection Fee Scheme and

4

California, Florida, and Illinois for Nationstar's Pay-to-Pay Scheme (Plaintiffs also seek injunctive

5

relief under these state statutes; certification of those claims is addressed below in Section III.F). The

6

theories of liability for the State Inspection Fee and State Pay-to-Pay Classes are subject to common

7

proof and implicate predominantly common questions of fact and law that justify certification of the

8

State Classes.

9

### a. California Unfair Competition Law.

10

Under the California Unfair Competition Law ("UCL"), "unfair competition shall mean and

11

include any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

12

The case law defines the statute's three prongs—unlawful, unfair, or fraudulent— as follows:

13

14

- **Unlawful.** An unlawful business practice is one which violates any state or federal law. *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013).

15

16

17

- **Unfair.** The courts define unfair practices broadly to include practices which are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rhodeman v. Ocwen Loan Servicing, LLC*, No. EDCV 18-2363 JGB (KKx), 2020 WL 4727289, at *6 (C.D. Cal. July 30, 2020) (citation omitted).

18

19

20

- **Fraudulent.** This prong does not require common-law fraud, only that "members of the public are likely to be deceived by the business practice or advertising at issue." *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395, at *9 (E.D. Cal. July 10, 2020) (citation omitted).

21

The California Inspection Fee Class should be certified under all three prongs of the UCL.

22

First, Defendants' Inspection Scheme is unlawful under RICO. Second, the scheme is an unfair

23

business practice because Defendants ordered and charged for property inspections without regard to

24

individual borrower status or circumstances. Third, class members were necessarily deceived by the

25

unlawful and unfair inspection fee scheme because Nationstar uniformly did not disclose the nature of

26

the fees, and misrepresented to borrowers that the inspections were "lender paid expenses".

27

28

The California Pay-to-Pay Fee Class can also be certified under all three prongs of the UCL. First, the scheme is unlawful under federal and California law, specifically the Federal Debt Collection Practices Act ("FDCPA"), the Rosenthal Act, and the common law breach of the duty of good faith and fair dealing.[21] Mem. & Order at 10, ECF No. 19; *Aerojet Rocketdyne*, 2020 WL 3893395, at *9 (breach of duty of good faith and fair dealing provides predicate for unlawful prong). It is also unfair because the harm to Plaintiffs caused by Nationstar's practice of inflating payment processing fees outweighed any benefit to Nationstar. Finally, it meets the fraudulent prong because Nationstar failed to disclose the basis for these fees, representing them as "E-Pay Fees" or "fees", failed to disclose free options, and failed to disclose that they were charging fees vastly in excess of the actual costs of processing the transactions.[22]

### b.    Florida Deceptive and Unfair Trade Practices Act.

A Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") "claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *McFadden v. Nationstar Mortg. LLC*, No. 20-cv-166-EGS-ZMF, 2021 WL 3284794, at *6 (D.D.C. July 30, 2021) (citation omitted). Deceptive acts are ones that are likely to mislead consumers, with the "[l]ikelihood to mislead based on how a 'consumer acting reasonably in the circumstances' would respond." *Id*. (citation omitted). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. (citation omitted).

Nationstar's Pay-to-Pay Scheme is an unfair and deceptive practice under the FDUTPA. As explained above, the question of whether this scheme is deceptive is subject to common proof because it is based on a reasonable person standard. So too is the determination of whether this scheme constitutes an unfair practice because the inquiry is entirely based on Nationstar's uniform conduct.

---

[21] 15 USC §§ 1692e, 1692f(1); Cal. Civ. Code § 1788.17.

[22] As to this last prong, Plaintiffs will make this showing on a class-wide basis because the inquiry is based on a reasonable person standard, *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018); no individualized inquiries into each Class Member will be necessary.

1  Defendants' Inspection Fee Scheme is also an unfair practice and is subject to common proof for the

2  same reason.

3              c.       **Illinois Consumer Fraud Act.**

4          The Illinois Consumer Fraud Act requires the Illinois Pay-to-Pay Class to establish the

5  following five elements: a deceptive act or unfair practice occurred, the defendant intended for plaintiff

6  to rely on the deception, the deception occurred in the course of conduct involving trade or commerce,

7  the plaintiff sustained actual damages, and the damages were proximately caused by the defendant's

8  deception. *Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, at *6 (N.D. Ill.

9  Oct. 6, 2015). Like an unfair practice under the California UCL and the FDUTPA, courts will consider

10  the following when determining whether a business practice is unfair: "(1) whether the practice offends

11  public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it

12  causes substantial injury to consumers." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr.,*

13  *Series 2003-1*, 787 F. Supp. 2d 747, 751 (N.D. Ill. 2011) (citation omitted). "Conduct is oppressive

14  only if it imposes a lack of meaningful choice or an unreasonable burden on its target." *Centerline*

15  *Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008). This claim is

16  subject to common proof because the Pay-to-Pay Scheme was applied uniformly to class members and

17  as described above, it was designed to mislead Plaintiffs and class members into believing that they

18  had no choice but to use methods of payment which imposed inflated processing fees.

19              d.       **Oregon Unfair Trade Practices Act.**

20          Private persons may bring an action under the Oregon Unfair Trade Practices Act ("UTPA") if

21  they have suffered an "ascertainable loss of money or property, real or personal, as a result of another

22  person's willful use or employment of a method, act or practice declared unlawful" under the statute.

23  *Deckers Outdoor Corp. v. Pac. Harbors, LLC*, No. 3:19-cv-01587-YY, 2020 WL 5269437, at *5 (D.

24  Or. Aug. 10, 2020). Accordingly, to state a claim under the UTPA Plaintiff must establish: (1) a

25  defendant engaged in an unconscionable act or unfair practice, (2) causation, (3) damages, and (4)

26  willfulness by Defendant. *Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or.

27  2015). Engaging in "unconscionable tactics" constitutes an actionable violation and is defined as

28

"[k]nowingly [permitting] a customer to enter into a transaction from which the customer will derive no material benefit; [and/or permitting] a customer to enter into a transaction with knowledge that there is no reasonable probability of payment of the attendant financial obligation in full by the customer when due." Or. Rev. Stat. § 646.605(9)(b)–(c). Like the California Inspection Fee Class, the Oregon Inspection Fee Class will prove their Oregon UTPA claim on a class-wide basis because Defendants uniformly applied their Inspection Fee practices to class members and this practice conferred no benefit on Plaintiffs. Further, willfulness is entirely based on Defendants' conduct and thus individual issues will not predominate. Or. Rev. Stat. § 646.605(10) ("A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation.").

**D.    Plaintiffs' Damages Model Satisfies the Comcast Standard.**

In order to establish predominance under Fed. R. Civ. P. 23(b)(3), Plaintiffs are required to show that "damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. Plaintiffs are not required to calculate damages for all class members in order for the class to be certified. Instead, "so long as the damages can be determined and attributed to . . . [P]laintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes U.S.A.*, No. 11-cv-02053-LJO-BAM, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014); *see also Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012) ("The amount of damages is invariably an individual question and does not defeat class action treatment.") (citation omitted); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). At class certification, plaintiffs need only propose a valid method for calculating class wide damages such that the trier of fact would be able to accurately calculate damages. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Plaintiffs' damage calculations are simple and straightforward: the amount of fees charged to the borrower's accounts for the inspections should be refunded and the amount of pay-to-pay fees that were charged to borrowers' accounts and not waived should be refunded. Plaintiffs seek the amount of the improper and unlawful charges. The identity of the class members and the amounts attributable to

each of them can be identified from ████████████████████████████████

████████████████ *see also* Exs. 3, 4.  Courts routinely accept similar damages calculations in

certifying classes. *See Gutierrez v. Wells Fargo Bank N.A.*, No. C 07-05923 WHA, 2008 WL 4279550,

at *17 (N.D. Cal. Sept. 11, 2008) (based upon Wells Fargo's extensive use and maintenance of

computerized account information, there was reliable data to determine class damages.)

**E.    A Class Action Is the Superior Method for Resolving This Dispute Under Fed. R. Civ. P. 23(b)(3).**

Fed. R. Civ. P. 23(b)(3) also requires that "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "A class action is the

superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace,*

*Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). There is no "realistic alternative" in a case like this one,

in which the class members number in the tens of thousands, but their individual claims rarely exceed

$100. *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Here, as in

most consumer class actions, a class action is not only superior to other methods of litigating this

dispute, but also it is the only method.[23]

**F.    Plaintiffs' Injunctive Claims May Be Certified Under Fed. R. Civ. P. 23(b)(2).**

Finally, Plaintiffs seek injunctive relief as to the claims of the respective State Classes.

Specifically, "Plaintiffs and the Class, individually and on behalf of the public, seek an order []

enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices." *See, e.g.*,

TAC ¶ 258. Each of the state's statutes expressly permits forward-looking injunctive relief. *See, e.g.*,

*Aerojet Rocketdyne*, 2020 WL 3893395, at *5 (California UCL) (upholding request for prospective

---

[23] As to both predominance and superiority, Fed. R. Civ. P. 23(b)(3) lists four factors as "pertinent": the class members' possible "interests in individually controlling . . . the actions"; other "litigation concerning the controversy already by . . . class members"; the "desirability or undesirability of concentrating the litigation in particular forum"; and "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All of these factors militate in favor of certification under Fed. R. Civ. P. 23(b)(3). The amounts in dispute for individuals are too small to warrant individual control of individual actions. Although similar cases have been litigated concerning mortgage servicing practices, this controversy is not being litigated elsewhere. The Eastern District of California is an ideal forum for this case because the lead plaintiffs live in this district and Nationstar conducts business here. And this is a typical consumer class action; this court has managed many similar cases, and will encounter no particular difficulties in managing this one.

1  injunctive relief); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. Dist. Ct. App. 2000) ("[A]n

2  aggrieved party may pursue a claim for declaratory or injunctive relief under the [Florida Deceptive

3  and Unfair Trade Practices] Act."); Or. Rev. Stat. § 646.638(5); 815 Ill. Comp. Stat. § 505/10a. In any

4  event, Rule 23(b)(2) itself authorizes injunctive relief where "the party opposing the class has acted or

5  refused to act on grounds that apply generally to the class, so that final injunctive relief or

6  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

7  23(b)(2). That is this case exactly. *See generally* Memorandum & Order at 13, *Weiner v. Ocwen Fin.*

8  *Corp.*, No. 2:14-cv-02597-MCE-DB (E.D. Cal. Sept. 29, 2017), ECF No. 102 (quoting Fed. R. Civ. P.

9  23(b)(2)) (certifying injunctive class under California's Unfair Competition law).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed

Classes, appoint the named Plaintiffs as class representatives, and appoint Class Counsel.

DATED: September 22, 2021

By /s/ *Laura R. Gerber*
Laura R. Gerber, admitted *pro hac vice*
lgerber@kellerrohrback.com
Dean Kawamoto (Bar No. 232032)
dkawamoto@kellerrohrback.com
Derek W. Loeser, admitted *pro hac vice*
dloeser@kellerrohrback.com
Rachel E. Morowitz, admitted *pro hac vice*
rmorowitz@kellerrohrback.com
Gretchen S. Obrist, Of Counsel, admitted *pro hac vice*
gobrist@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Ave, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384

Thomas E. Loeser (Bar No. 202724)
toml@hbsslaw.com
Nick Styant-Browne, *admitted pro hac vice*
nick@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO L.L.P.**
1301 Second Avenue, Suite 2000

Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

***Attorneys for Plaintiffs***